**RUSING LOPEZ & LIZARDI, P.L.L.C.**
6363 North Swan Road, Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800
Facsimile: (520) 529-4262

Mark D. Lammers; mdlammers@rllaz.com
State Bar No. 010335

*Liaison Counsel for Lead Plaintiff Movant Samuel Scarborough*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Arias Larmay, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>Ammo, Inc., Fred W. Wagenhals, Jared R. Smith, and Robert D. Wiley,<br><br>Defendants. | Case No. 2:24-cv-02619-DJH<br><br>**SAMUEL SCARBOROUGH'S MEMORANDUM OF LAW IN OPPOSITION TO THE COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL** |

Lead Plaintiff Movant Samuel Scarborough ("Scarborough") submits this memorandum of law in opposition to the four other motions for appointment as lead plaintiff and approval of lead counsel filed by other putative class members (Dkt. Nos. 15, 16, 18, 19). Scarborough should be appointed as lead plaintiff and his selection of counsel should be approved because Scarborough has the largest financial interest in the relief sought by the class and is otherwise adequate to represent the class.

## I. INTRODUCTION

Five movants (including one movant group) filed competing motions for appointment as lead plaintiff and approval of lead counsel pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). The motions were filed by Scarborough (Dkt. No. 17); Dirgesh Patel ("Patel," Dkt. No. 15); Dmitry Cherches and Irene Zvagelsky ("Cherches and Zvagelsky," Dkt. No. 19.); Cary Sommerville ("Sommerville," Dkt. No. 18); and Shelly Barrile ("Barrile," Dkt. No. 16). However, Sommerville and Barrile have since effectively abandoned their motions by filing responses conceding that other movants have larger financial interests than Sommerville and Barrile. *See* Dkt. No. 21, 27.

With respect to the lead plaintiff determination, the question presently before the Court is which of these movants is the "most adequate plaintiff"—*i.e.*, the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA directs courts to appoint the "most adequate plaintiff" as lead plaintiff and provides a rebuttable presumption that the most adequate plaintiff is the plaintiff or movant with the "largest financial interest in the relief sought by the class" who otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure (hereinafter "Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only by a showing that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). If the presumption is not rebutted, the presumptively most adequate plaintiff should be appointed as lead plaintiff. *Id.*

1

As demonstrated *infra*, Scarborough has the largest financial interest in the relief sought by the class—having $897,478 in recoverable losses. While Cherches and Zvagelsky claim to have a larger loss than Scarborough ($1,468,882, Dkt. No. 20-1), their loss is significantly inflated because they include unrecoverable stock losses on shares they sold before the alleged corrective disclosure in this action. When such stock losses are properly excluded, Cherches and Zvagelsky's stock loss is revealed to be just $466,874. Moreover, Cherches and Zvagelsky claim to have a gain of $631,464 on options contracts they sold during the class period. Their options gain completely offsets (and then some) their potentially recoverable stock losses, rendering them "net gainers." As such, Scarborough has the largest financial interest.

Moreover, even if Cherches and Zvagelsky had a larger financial interest than Scarborough (they do not) Cherches and Zvagelsky should be disqualified because they are net gainers, they engaged in extensive short selling of call options contracts, and nearly all of their stock losses are ultimately attributable to their put options contract sales. These three issues render them atypical, inadequate, and subject to unique defenses.

Since Scarborough has the largest financial interest and otherwise satisfies the relevant requirements of Rule 23, he is the presumptively "most adequate plaintiff" to be appointed as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii). Since the presumption has not been (and cannot be) rebutted, Scarborough should be appointed as lead plaintiff and his selection of counsel should be approved. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class.").

## II.    SCARBOROUGH IS THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFF TO BE APPOINTED AS LEAD PLAINTIFF

Scarborough satisfies all three requirements to be the presumptively most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). First, he filed a timely motion for appointment as lead plaintiff. *See* Dkt. No. 17; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa). Second, he satisfies the requirements of Rule 23, as demonstrated in his memorandum of

2

points and authorities in support of his lead plaintiff motion. *See* Dkt. No. 17 at 6-8; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Finally, as explained, *infra*, Scarborough has the largest financial interest in the relief sought by the class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### A.    Scarborough Has The Largest Financial Interest

Since the PSLRA does not mandate any particular method for determining which movant has the largest financial interest in the relief sought by the class, district courts are free to choose any methodology that is "both rational and consistently applied." *See In re Cavanaugh,* 306 F.3d 726, 730 n.4 (9th Cir. 2002). In light of this, courts tend to apply the following four factors in making the financial interest determination (the "*Lax-Olsten* factors"): (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs. *See Tenneson v. Nikola Corp.*, No. 23-cv-02131, 2024 WL 905244, at *5 (D. Ariz. Feb. 29, 2024). "The fourth factor, approximate losses suffered, is often provided the greatest weight." *Id.*

To calculate losses, "[c]ourts in the Ninth Circuit have commonly applied one of two methods": the last in, first out (or "LIFO") method, or the "retained shares method." *Id.* With the LIFO method "the last stocks acquired are assumed to be the first sold." Moreover, "[f]ollowing the Supreme Court's opinion in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), some courts have also excluded losses from stock trades that occurred prior to a defendant's disclosure of fraud, because such losses do not stem from any misrepresentation." *Id.* Specifically, *Dura* held that losses on shares purchased and then sold prior to any corrective disclosure are not recoverable because the loss is not caused by the alleged fraud. *See Dura*, 544 U.S. 336, 342 ("[I]f . . . the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.").

While *Tenneson* recognizes that "some courts" have applied *Dura* to exclude pre-disclosure sales (sometimes called "in and out transactions") from the LIFO loss calculation, it is more accurate to state that the large majority of courts nationwide that have addressed

the issue have applied *Dura* to exclude pre-disclosure sales from the LIFO loss calculation. *See Stephens v. Maplebear Inc.*, 2024 WL 3262617, at *3 (N.D. Cal. July 1, 2024) ("[F]ollowing the Supreme Court's holding in *Dura* . . . district courts have generally excluded losses incurred from pre-disclosure stock sales."); *Peters v. Twist Bioscience Corp.*, 2023 WL 4849431, at *4 (N.D. Cal. July 28, 2023) ("District courts also . . . give effect to the Supreme Court's guidance in *Dura*" by "excluding losses incurred from pre-disclosure stock sales"); *Peacock v. Dutch Bros, Inc.*, 2023 WL 4976814, at *4 (S.D.N.Y. Aug. 3, 2023) ("[T]he LIFO methodology excludes losses incurred from 'in-and-out' transactions."); *Skeels v. Piedmont Lithium Inc.*, 2022 WL 1236797, at *4 (E.D.N.Y. Feb. 4, 2022) ("Courts in this Circuit, thus, apply *Dura* to adjust LIFO calculations by removing any losses arising from securities bought and sold before the defendant's corrective disclosure.") (collecting cases); *Rodriguez v. DraftKings Inc.*, 2021 WL 5282006, at *5 (S.D.N.Y. Nov. 12, 2021) ("[T]he LIFO methodology excludes 'in-and-out' trades.").

Under the second method courts in the Ninth Circuit typically apply—the retained shares method—the Court "determines how many shares were purchased during the class period" and then "retained at the end of the class period," and determines "the net loss of only those shares." *Tenneson*, 2024 WL 905244, at *5. The retained shares method works best when there is only one alleged corrective disclosure—which is the case here. *See id.* (the retained shares method "works best where there is a 'relatively constant fraud premium through the class period'"); Dkt. No. 1 ¶¶ 41-42 (identifying the single corrective disclosure). Notably, since this action alleges only one corrective disclosure, the retained shares method and the LIFO method (excluding sales prior to the corrective disclosure) yield the same figures and therefore can be used interchangeably.

While most courts favor loss, some courts in the Ninth Circuit have also considered the second factor, retained shares, to be determinative of financial interest. *See, e.g.*, *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) (concluding net shares purchased should be used to determine financial interest); *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1108 (N.D. Cal. 2001) ("Under this approach, the number

of net shares purchased during the class period is determinative."). The retained shares method is particularly favored in cases like this one where there is only one alleged corrective disclosure (*see* Dkt. No. 1 ¶¶ 41-42) because it can be assumed that there was a consistent "fraud premium" during the class period and therefore that "all shares would have been inflated," and therefore damaged, "to the same extent." *Network Associates*, 76 F. Supp. 2d at 1027.

Regardless of which loss calculation is used, Scarborough has the largest financial interest as measured by the two most important of the four factors:

| Movant | Gross Shares Purchased | Net Shares Purchased | Net Expenditure | LIFO Loss[1] |
|---|---|---|---|---|
| Scarborough | 283,163 | **210,274** | $1,176,816 | **$897,478** |
| Patel | 128,590 | 85,008 | $635,437 | $587,182 |
| *Cherches* | *674,161* | *57,800* | *$1,225,718* | *$168,806* |
| *Zvagelsky* | *113,300* | *108,200* | *$461,393* | *$298,068* |
| Total | 787,461 | 166,000 | $1,687,110 | $466,874[2] |
| Sommerville | 309,821 | 56,000 | $140,906 | $89,281 |
| Barrile | 5,000 | 5,000 | $29,415 | $23,116 |

As such, Scarborough has the largest financial interest as measured by the weight of the four factors courts typically consider, and therefore has the largest financial interest.

**B.    Cherches and Zvagelsky Overstated Their Financial Interest**

While Cherches and Zvagelsky claim to have a combined loss of $1,468,882 in their initial motion papers (*see* Dkt. No. 20-1), their loss is significantly overstated because it includes substantial losses on stock sold prior to the corrective disclosure in this action.

---

[1] Excluding losses on pre-disclosure sales.

[2] Cherches and Zvagelsky's stock loss here does not include the substantial proceeds they received by selling call options and put options during the class period. *See* Dkt. No 20-1 at 1 (reporting a $631,464 gain attributable to selling options contracts). If included, their options gains entirely offset their potentially recoverable loss on stock, and result in a total net gain. In addition to having a smaller loss than Scarborough, Cherches and Zvagelsky's status as "net gainers" is disqualifying. *See In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 308 (S.D. Ohio 2005) ("[C]ourts usually reject these so-called net gainers as lead plaintiffs, opting instead for net losers that will have less trouble proving damages.").

Specifically, as illustrated in the chart above, Cherches bought 674,161 shares, gross, during the class period, but sold the vast majority of them prior to the corrective disclosure, holding only 57,800 shares at the end of the class period. *See* Dkt. No. 20-1 (Cherches and Zvagelsky's loss chart, showing Cherches zeroed out his stock in Account 1 and held only 57,800 shares in Account 2 by the end of the class period corrective disclosure). Any losses associated with the shares sold prior to the corrective disclosure are not tied to the fraud in this case, are not recoverable, and are not properly included in Cherches' potential recovery. *See Tenneson*, 2024 WL 905244, at *5; *Maplebear*, 2024 WL 3262617, at *3. When losses from the in and out transactions are properly excluded, Cherches' loss is only $168,806, which is much smaller than Scarborough's loss of $897,478, as illustrated in the above chart.

\*      \*      \*

Since Scarborough has the largest financial interest, filed a timely motion, and is otherwise adequate to represent the class, Scarborough is the presumptively most adequate plaintiff to be appointed as lead plaintiff.

## III. THE PRESUMPTION THAT SCARBOROUGH IS THE MOST ADEQUATE PLAINTIFF HAS NOT BEEN REBUTTED

The lead plaintiff presumption may be rebutted only upon "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

### A. Scarborough Is Adequate

No proof has been presented that Scarborough would be inadequate or subject to unique defenses. In fact, there is no plausible basis to assert that Scarborough is inadequate. Scarborough is a sophisticated individual. *See* Dkt. No. 17 at 8 (Scarborough "recently sold his general contracting company in 2019, and is now working as an estimator for a roofing company"). As such, Scarborough should be appointed as lead plaintiff, and no other movant is entitled to consideration. *See Cavanaugh*, 306 F.3d at 732 ("The statutory process is sequential: The court must examine potential lead plaintiffs one at a time, starting with the

6

one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical.").

### B.    Cherches and Zvagelsky Are Inadequate

Even if Cherches and Zvagelsky had a larger financial interest than Scarborough (they do not), Cherches and Zvagelsky should be disqualified because they are atypical, inadequate, and subject to unique defenses for at least three reasons. First, as noted *supra*, p.5 n.2, Cherches and Zvagelsky are net gainers because the proceeds they received from selling options contracts during the class period swamp their potentially recoverable stock losses. *See Cardinal Health*, 226 F.R.D. at 308 (disqualifying a net gainer); *Scheller v. Nutanix, Inc.*, 2021 WL 2410832, at *6 (N.D. Cal. June 10, 2021) ("Courts have generally declined to appoint net sellers and net gainers as lead plaintiffs.").

Second, Cherches and Zvagelsky extensively sold call options short. *See* Dkt. No. 20-1 at 2-10 (loss chart, listing dozens of call options transactions, every instance of which, the "purchased date" falls after the "sales date"). A call option seller makes money if the company's share price falls or otherwise stays below the option strike price. Extensively betting against a company by short selling as Cherches and Zvagelsky did here is disqualifying because it leads to unique reliance-based defenses. *See Critical Path*, 156 F. Supp. 2d at 1109-10 ("[t]he fraud-on-the-market theory, the premise of which is that the market price accurately reflects publicly available information, is central to securities actions" and "short sales raise the question of whether the seller was actually relying on the market price, and the class is not served by its representative coming under such scrutiny"). As such, Cherches and Zvagelsky should be disqualified.

Third, nearly all the shares Cherches and Zvagelsky were holding at the end of the class period were acquired through forced purchases resulting from put options contracts Cherches and Zvagelsky had earlier sold. *See* Dkt. No. 20-1 at 2-10 (loss chart listing dozens

7

of put option sales).[3] When Cherches and Zvagelsky sold put options, the buyer of the option obtained the right to force Cherches and/or Zvagelsky to purchase shares of AMMO for the strike price on or before the expiration date. Here, almost all the 57,800 shares Cherches was holding at the end of the class period were purchased for $2.50 per share as a result of put options exercised against him. *See* Dkt. No. 20-1 at 5 (listing stock purchases between December 20, 2022 and June 12, 2024, all but 6,000 shares of which were for $2.50 per share). Similarly, all of Zvagelsky's stock purchases were purchased for $5.00 or $2.50 per share as a result of put options exercised against her. *See* Dkt. No. 20-1 at 8. The fact that nearly all of Cherches and Zvagelsky's losses are a result of put option sales and not open market stock purchases renders them inadequate, atypical, and subject to unique defenses. *See Di Scala v. ProShares Ultra Bloomberg Crude Oil*, 2020 WL 7698321, at *4 (S.D.N.Y. Dec. 28, 2020) (disqualifying movant "whose losses overwhelmingly reflect his sale of put options" because it raises questions about "whether losses arising from [his] <u>sale</u> of put options would qualify him as member of a class of 'all investors who <u>purchased or otherwise acquired</u> UCO securities" and "whether [he] was motivated by the same market incentives as class members who traded shares on the open market") (emphasis in original). As such, Cherches and Zvagelsky should be disqualified.

*   *   *

Since Scarborough is the presumptively most adequate plaintiff, and the presumption has not been rebutted, he should be appointed as lead plaintiff.

**IV.   SCARBOROUGH'S SELECTION OF COUNSEL SHOULD BE APPROVED**

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Glancy Prongay & Murray

---

[3] Put options transactions are identified in Cherches and Zvagelsky's loss chart with a "P" followed by an expiration date and the option strike price. For example, "P 20230217 2.5" is a put option contract that expires on February 17, 2023, with a strike price of $2.50. The strike prices tend to be round numbers. In this case the relevant strike prices on the put options Cherches and Zvagelsky sold were $5.00 and $2.50.

LLP and Rusing Lopez & Lizardi, PLLC have the expertise, resources, and experience needed to effectively conduct this litigation. *See* Dkt. Nos. 17-5, 17-6 (Glancy Prongay & Murray LLP and Rusing Lopez & Lizardi, PLLC firm résumés). Accordingly, Scarborough's selection of Glancy Prongay & Murray LLP as lead counsel and Rusing Lopez & Lizardi, PLLC as liaison counsel for the class should be approved.

## V.    CONCLUSION

For the foregoing reasons, Scarborough respectfully requests that the Court grant his motion and enter an Order: (1) appointing Scarborough as lead plaintiff; (2); approving his selection of Glancy Prongay & Murray LLP as lead counsel and Rusing Lopez & Lizardi, PLLC as liaison counsel for the class; and (3) denying the competing motions.

DATED:  December 13, 2024

Respectfully submitted,

By:  */s/ Mark D. Lammers*

Mark D. Lammers
**RUSING LOPEZ & LIZARDI, P.L.L.C.**
6363 N. Swan Road Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800
Email: mdlammers@rllaz.com

*Liaison Counsel for Lead Plaintiff Movant Samuel Scarborough and Proposed Liaison Counsel for the Class*

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Charles Linehan
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email:  rprongay@glancylaw.com
         clinehan@glancylaw.com
         prajesh@glancylaw.com

*Counsel for Lead Plaintiff Movant Samuel Scarborough and Proposed Lead Counsel for the Class*

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
2121 Avenue of the Stars, Suite 800
Century City, CA 90067
Telephone: (310) 914-5007

*Additional Counsel*