Gary Gotto (No. 007401)
**KELLER ROHRBACK L.L.P.**
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
ggotto@kellerrohrback.com
Telephone: (602) 248-0088
Facsimile: (602) 248-2822

*Counsel for Movants Dmitry Cherches and*
*Irene Zvagelsky and Proposed  Liaison Counsel*
*for the Class*

[Additional counsel on signature page]

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| Arias Larmay, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>Ammo, Inc., Fred W. Wagenhals, Jared R. Smith, and Robert D. Wiley,<br><br>Defendants. | Case No. CV-24-02619-PHX-DJH<br><br>Hon. Diane J. Humetewa<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION OF DMITRY CHERCHES AND IRENE ZVAGELSKY FOR APPOINTMENT AS CO-LEAD PLAINTIFFS AND APPROVAL OF SELECTION OF COUNSEL** |

MEMORANDUM OF POINTS AND AUTHORITIES
CV-24-02619-PHX-DJH

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ....................................................................................1

II.  ARGUMENT .........................................................................................................1

   A.   CHERCHES AND ZVAGELSKY HAVE NOT INFLATED THEIR FINANCIAL INTEREST ..........................................................................................1

   B.   CHERCHES AND ZVAGELSKY ARE NOT ATYPICAL, INADEQUATE, OR SUBJECT TO UNIQUE DEFENSES ..........................................................5

      1.   Cherches and Zvagelsky's Profits on Options Transactions Do Not Exceed Their Losses on Stock Transactions ................................................5

      2.   Cherches and Zvagelsky's Sale of Call Options Does Not Subject Them to Unique Defenses .................................................................................6

      3.   Cherches and Zvagelsky's Options Transactions Do Not Render Them Inadequate, Atypical, and Subject to Unique Defenses ..............................7

      4.   Cherches Is Not a Day Trader ...................................................................10

III. CONCLUSION .....................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bensley v. FalconStor Software, Inc.*,
    277 F.R.D. 231 (E.D.N.Y. 2011) ............................................................................... 10

*Bodri v. Gopro, Inc.*,
    No. 16-CV-00232-JST, 2016 WL 1718217 (N.D. Cal. Apr. 28, 2016) ..................................... 3

*City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*,
    No. 20-CV-10360 (AJN), 2021 WL 396343 (S.D.N.Y. Feb. 4, 2021) .................................... 2

*Cook v. Allergn PLC*,
    8 Civ. 12089 (CM) *et al.*, 2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019) .............................. 3

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 336 (2005) ..................................................................................... 2, 3, 4, 6

*Esfandiari v. Edgio Inc.*,
    No. CV-23-00691-PHX-DJH, 2023 WL 7282299 (D. Ariz. Nov. 3, 2023) .......................... 8

*Goldstein v. Puda Coal, Inc.*,
    827 F. Supp. 2d 348 (S.D.N.Y. 2011) ........................................................................ 8

*Hall v. Medicis Pharm. Corp.*,
    No. CV08-1821PHX-GMS, 2009 WL 648626 (D. Ariz. Mar. 11, 2009) ............................. 8

*In re Adobe Sys., Inc. Sec. Litig.*,
    139 F.R.D. 150 (N.D. Cal. 1991) ............................................................................. 8

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) ............................................................................. 1, 5

*In re Scientific-Atlanta, Inc. Secs. Litig.*,
    571 F. Supp. 2d 1315 (N.D. Ga. 2007) ..................................................................... 7

*In re WatchGuard Sec. Litig.*,
    No. C05-678JLR, 2005 WL 8188936 (W.D. Wash. July 13, 2005) .................................... 4

*Luo v. Spectrum Pharms., Inc.*,
    No. 21-cv-01612, 2022 WL 2985939 (D. Nev. July 28, 2022) ........................................ 4

*Nicolow v. Hewlett Packard Co.*,
No. 12-05980 CRB, 2013 WL 792642 (N.D. Cal. Mar. 4, 2013) ...................................... 1, 3

*Nursing Home Pension Fund v. Oracle Corp.*,
No. C01-00988 MJJ, 2006 WL 8071391 (N.D. Cal. Dec. 20, 2006) ................................. 7, 8

*Rodriguez v. DraftKings Inc.*,
21 Civ. 5739 (PAE) *et al.*, 2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021) ........................... 10

**Statutes**

15 U.S.C. § 78u-4 ..................................................................................................................... 1

Private Securities Litigation Reform Act of 1995 .................................................................... 1

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................................... 1

Movants Cherches and Zvagelsky[1] respectfully submit this Reply Memorandum of Points and Authorities in further support of their motion for appointment as Co-Lead Plaintiffs and approval of their selection of counsel (Dkt. No. 19).

## I.    PRELIMINARY STATEMENT

As discussed at length in their moving and opposition briefs, Cherches and Zvagelsky are the presumptive "most adequate" plaintiffs because their substantial loss of approximately ***$1.47 million*** in connection with the alleged fraud is larger than any competing movant's, and they satisfy Rule 23's typicality and adequacy requirements.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).  However, Scarborough and Barrile oppose Cherches and Zvagelsky's appointment as Co-Lead Plaintiffs, arguing that they "inflated" their financial interest and are variously "atypical, inadequate, and subject to unique defenses" because purportedly (1) their profits on options transactions exceed their losses on stock transactions, (2) they short sold call options, (3) they incurred losses on stock attributable to sales of put options, and (4) Cherches is a "day trader" with an "in and out trading pattern[.]'" *See* Dkt. Nos. 27, 29.  These arguments uniformly fail.

## II.    ARGUMENT

### A.    CHERCHES AND ZVAGELSKY HAVE NOT INFLATED THEIR FINANCIAL INTEREST

Cherches and Zvagelsky's financial interest (*i.e.*, investment loss) is properly accounted for under the last-in, first-out ("LIFO") accounting methodology.  Although the PSLRA does not prescribe a specific method for determining financial interest, the Ninth Circuit has stated that courts "may select accounting methods that are both rational and consistently applied." *In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002).  "The weight of authority puts the most emphasis on the competing movants' estimated losses, using a [LIFO] methodology." *Nicolow*

---

[1] All capitalized terms herein are defined in Cherches and Zvagelsky's motion and moving or opposition briefs, unless otherwise indicated.  *See* Dkt. Nos. 19, 30.

*v. Hewlett Packard Co.*, No. 12-05980 CRB, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013).

Here, Cherches and Zvagelsky's LIFO losses total approximately $1.47 million. *See* Dkt. No. 20-1. No one has argued otherwise, nor argued that a competing movant has incurred larger losses on a LIFO basis. Rather, Scarborough and Barrile claim that Cherches and Zvagelsky "inflated" their financial interest by including "unrecoverable" losses in their loss calculation that were incurred in connection with "in-and-out" transactions—*i.e.*, shares purchased and sold before any corrective disclosure. Dkt. No. 27 at 1; Dkt. No. 29 at 2, 5-6. In support, they rely on cases that cited *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), at the PSLRA's lead plaintiff appointment stage and found that "[a]ny losses associated with the shares sold prior to the corrective disclosure are" unrecoverable and should be excluded from a movant's loss calculation. Dkt. No. 29 at 6; *see also* Dkt. No. 27 at 1. Accordingly, because "Cherches bought 674,161 shares, gross, during the class period, but sold the vast majority of them prior to the corrective disclosure," Cherches's losses are purportedly lower than he has claimed, and Cherches and Zvagelsky's total loss purportedly amounts to "$466,874".[2] Dkt. No. 29 at 5-6.

This argument is unavailing. As a threshold matter, Scarborough's belated embrace of *Dura* in his opposition is highly suspect given that, in his initial motion papers, he included in his own loss calculations losses incurred on the same type of in-and-out transactions that he now insists must be excluded. *See* Dkt. No. 17 at 5; Dkt. No. 17-4. "[C]ourts are especially skeptical of a movant who initially presents one position in their opening brief and switch[es] to another in their opposition after a new movant comes in alleging a greater loss." *City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*, No. 20-CV-10360 (AJN), 2021 WL 396343, at *4

---

[2] It is unclear how Scarborough derived a loss of $466,874 for Cherches and Zvagelsky from the purported *Dura*-derived loss methodology espoused in his opposition brief, and counsel for Cherches and Zvagelsky were unable to arrive at this figure when applying Scarborough's *Dura*-derived loss methodology as described in his opposition brief.

MEMORANDUM OF POINTS AND AUTHORITIES
CV-24-02619-PHX-DJH

(S.D.N.Y. Feb. 4, 2021); *see also, e.g.*, *Bodri v. Gopro, Inc.*, No. 16-CV-00232-JST, 2016 WL 1718217, at *3 (N.D. Cal. Apr. 28, 2016) ("Only after the parties filed their opening briefs, and the parties were made aware of how their respective motions would fare under [LIFO], did [movant] argue that the more appropriate measure of greatest financial stake was the 'retained shares' methodology . . . . This fact alone counsels in favor of adopting the LIFO methodology[.]").[3]

Here, in his initial motion papers, Scarborough claimed a loss of $911,917.41 under a LIFO methodology. *See* Dkt. No. 17 at 5; Dkt. No. 17-4. In his opposition brief, however, apparently after seeing that Cherches and Zvagelsky claimed a larger LIFO loss, Scarborough abandoned this figure, claiming instead "$897,478 in recoverable losses" under a LIFO methodology purportedly derived from *Dura* and its progeny, while also advocating, for the first time, two other methods for assessing financial interest—namely, (i) the so-called "retained shares" loss methodology and (ii) abandoning loss entirely and comparing financial interest based purely on retained shares. *See* Dkt. No. 29 at 2-5. Scarborough's change in tack is a transparently self-serving attempt to lay claim to the "largest financial interest" in this litigation by any means necessary. This Court should reject his belatedly adduced arguments and assess the competing movants' investment losses on a straightforward LIFO basis, which is ***precisely*** what Scarborough advocated for in the first place.

Moreover, "the appropriateness of employing *Dura* analysis at the lead plaintiff stage is subject to considerable dispute[,]" as it requires courts to conduct a merits analysis necessitating expert opinion and otherwise consider factors not yet clear at this stage. *Cook v. Allergn PLC*, 8 Civ. 12089 (CM) *et al.*, 2019 WL 1510894, at *3 (S.D.N.Y. Mar. 21, 2019) (declining to apply

---

[3] *See also Nicolow*, 2013 WL 792642, at *4 (denying motion where movant "made no reference to net shares purchased or a retained shares calculation in its opening motion" and "shift[ed] its argument only after [a competing movant] came forward with larger LIFO losses").

*Dura* principles at the lead plaintiff appointment stage); *see also Luo v. Spectrum Pharms., Inc.*, No. 21-cv-01612, 2022 WL 2985939, at *3 (D. Nev. July 28, 2022) (rejecting application of *Dura*-derived loss-causation methodology at lead plaintiff appointment stage); *In re WatchGuard Sec. Litig.*, No. C05-678JLR, 2005 WL 8188936, at *4 n.6 (W.D. Wash. July 13, 2005) (same, noting "[t]he Supreme Court recognized . . . that numerous factors may affect the price of a security" and "did not suggest that a court should guess about the effect of these as-yet-unknown factors in selecting a lead plaintiff, nor did it consider the issue").

Here, the Complaint in the Action does ***not*** simply allege that Class members were harmed ***only*** by the corrective disclosure currently pleaded in the Complaint, but rather, more broadly, that investors were harmed by Defendants' false and misleading statements during the Class Period. Further, following Lead Plaintiff appointment, the initial Complaint will likely be superseded in short order by an Amended Complaint that may identify additional corrective disclosures that precede the corrective disclosure currently alleged. Indeed, a review of AMMO's stock chart during the Class Period strongly suggests that additional corrective disclosures occurred. From the start of the Class Period on August 19, 2020 until mid-2021, AMMO's stock price was largely on an upward trajectory, ultimately reaching a Class Period high on June 30, 2021. However, for the next three years and three months—that is, for 78.9% of the over-four-year-long Class Period—AMMO's stock price steadily declined, ultimately closing at $1.52 per share on September 24, 2024, the last day of the Class Period. *See* Reply Declaration of Jeremy A. Lieberman in Further Support of Motion ("Lieberman Reply Decl."), Ex. A. The downward trajectory in AMMO's share price clearly reflects, *inter alia*, the market's reaction to negative disclosures regarding the Company's business and operations, some of which are no doubt related to the fraud alleged in this litigation. Applying a *Dura*-derived methodology at this stage would thus myopically focus only on the currently alleged corrective disclosure, while disregarding the

broader theory of loss caused by the Defendants' alleged fraud.

Accordingly, the Court should assess financial interest pursuant to the straightforward LIFO methodology that the competing movants applied in their initial motion papers, under which Cherches and Zvagelsky lost approximately $1.47 million, while Scarborough lost only $911,917.41.

**B.    CHERCHES AND ZVAGELSKY ARE NOT ATYPICAL, INADEQUATE, OR SUBJECT TO UNIQUE DEFENSES**

### 1.    Cherches and Zvagelsky's Profits on Options Transactions Do Not Exceed Their Losses on Stock Transactions

Scarborough and Barrile both argue that Cherches and Zvagelsky are atypical, inadequate, and subject to unique defenses because their profits on options investments are purportedly larger than their recoverable losses on stock investments. *See* Dkt. No. 27 at 2; Dkt. No. 29 at 5 n.2, 7. Barrile does not explain her rationale (*see* Dkt. No. 27 at 2), while Scarborough points to the $631,464 gain in options that Cherches and Zvagelsky noted in their damages analysis (*see* Dkt. No. 20-1 at *2), comparing this figure to the $466,874 loss on stock that he calculated for Cherches and Zvagelsky based on his purported *Dura*-derived methodology. *See* Dkt. No. 29 at 5 n.2.

Scarborough and Barrile are wrong. In assessing financial interest, courts should "select accounting methods that are both rational ***and consistently applied***." *Cavanaugh*, 306 F.3d at 730 n.4 (emphasis added). In arguing that Cherches and Zvagelsky are "net gainers," Scarborough applies a purported *Dura*-derived methodology to their stock transactions (which in any event is premature, as discussed *supra* at pp. 3-5), but does ***not*** apply the same methodology to their options transactions. Rather, Scarborough compares apples to oranges, by using the lower, "*Dura*-compliant" loss figure in calculating Cherches and Zvagelsky's stock losses, but continuing to use the $631,464 figure for the profits from their option sales, as calculated in

MEMORANDUM OF POINTS AND AUTHORITIES
CV-24-02619-PHX-DJH

5

Cherches and Zvagelsky's initial motion papers on a simple LIFO basis. *See* Dkt. No. 20-1. Consistently applying **either** Scarborough's belated "*Dura*" methodology **or** a simple LIFO methodology to **both** stock **and** options transactions, rather than mixing and matching, Cherches and Zvagelsky's stock losses significantly exceed their options profits—by a margin of $1,468,882 on a LIFO basis, and by a margin of $453,152 on Scarborough's purportedly *Dura*-derived methodology.[4] *See* Lieberman Reply Decl., Ex. B.

### 2. Cherches and Zvagelsky's Sale of Call Options Does Not Subject Them to Unique Defenses

Next, Scarborough argues that because "Cherches and Zvagelsky extensively sold call options short",[5] they "[e]xtensively bet[] against [AMMO]", which "is disqualifying because it leads to unique reliance-based defenses." Dkt No. 29 at 7. Scarborough is wrong again. As a threshold matter, Scarborough's description of these transactions as "[selling] call options short" is inaccurate and appears designed to make the transactions at issue appear more esoteric. Cherches and Zvagelsky did not "[sell] call options short". They simply sold call options. Moreover, Cherches and Zvagelsky did **not** "[e]xtensively bet[] against [AMMO.]" Rather, they primarily held a "long" position on their AMMO investments, meaning, like other Class members, they invested in AMMO securities in the expectation that the Company's stock price would remain stable or rise, in good-faith reliance on Defendants' positive statements during the

---

[4] When calculated consistently with what Cherches and Zvagelsky's counsel understands to be Scarborough's purported *Dura*-derived loss methodology, Cherches and Zvagelsky's profits on options total $13,722. However, as noted *supra* in footnote 2 herein, Cherches and Zvagelsky's counsel were unable to reproduce a loss of $466,874 on Cherches and Zvagelsky's stock transactions using Scarborough's purported *Dura*-derived loss methodology.

[5] A call option is a contract conveying the right to buy a certain amount of stock at a certain price (the "strike price") within a certain time. A put option is a contract conveying the right to sell a certain amount of stock at a strike price within a certain time. If a stock price falls below the strike price of a put option sold, the put option's seller is forced to by the stock at the strike price.

Class Period.  *See In re Scientific-Atlanta, Inc. Secs. Litig.*, 571 F. Supp. 2d 1315, 1330 (N.D. Ga. 2007) (finding options investor typical, having purchased in reliance "on the integrity of the price of the underlying stock").  Cherches and Zvagelsky acquired ***705,400*** shares of AMMO stock from the sale of put options at various points between January 24, 2022 and February 21, 2023—well before the end of the Class Period.  *See* Dkt. Nos. 20-1, 20-2.  Then, instead of selling the large amount of stock assigned to them through the sale of put options, they continued to hold most of that stock well into the Class Period and ultimately held ***166,000*** shares through the end of the Class Period, thereby indicating that they were ***long*** on AMMO stock.  *See id.*  Moreover, Cherches purchased an additional ***82,009*** shares of AMMO stock on the open market—*i.e.*, not pursuant to the sale of put options—during the Class Period at various points between January 12, 2022 and June 12, 2024.  *See id.*  Accordingly, in the context of the predominantly long position that Cherches and Zvagelsky held on AMMO securities during the Class Period, the sale of call options does not constitute a bet against AMMO stock, as Scarborough contends.  Rather, it indicates that, when Cherches and Zvagelsky sold call options, they were merely investing on the expectation that AMMO's stock price would not rise past a certain threshold, thereby employing a common strategy to hedge against investment losses that ultimately totaled around $1.47 million.  *See Nursing Home Pension Fund v. Oracle Corp.*, No. C01-00988 MJJ, 2006 WL 8071391, at *8 (N.D. Cal. Dec. 20, 2006) (finding that even if plaintiff "made a profit . . . over the Class Period" "by selling short call options," that "fails to establish that he suffered no injury" where he also "made several ordinary purchases of common stock based on [the company]'s alleged" fraud and certifying said plaintiff as class representative).

### 3.    Cherches and Zvagelsky's Options Transactions Do Not Render Them Inadequate, Atypical, and Subject to Unique Defenses

Scarborough further argues that because "nearly all the shares Cherches and Zvagelsky were holding at the end of the class period were acquired through forced purchases resulting from

put options contracts [they] had earlier sold" and that because these "losses are a result of put option sales and not open market stock purchases", they are "inadequate, atypical, and subject to unique defenses." Dkt No. 29 at 7-8.

This argument ignores the Class definition and is at odds with a wide breadth of case law. The inquiry for typicality is whether "'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Esfandiari v. Edgio Inc.*, No. CV-23-00691-PHX-DJH, 2023 WL 7282299, at \*2 (D. Ariz. Nov. 3, 2023) (quoting *Hall v. Medicis Pharm. Corp.*, No. CV08-1821PHX-GMS, 2009 WL 648626, at \*3 (D. Ariz. Mar. 11, 2009)). Here, the Complaint expressly defines the putative Class as consisting "of persons and entities that purchased ***or otherwise acquired*** AMMO ***securities***"— that is, not merely stock—"between August 19, 2020 and September 24, 2024, inclusive". Dkt. No. 1 ¶ 1 (emphases added). "Put options are securities for the purpose of the securities laws". *Hall*, 2009 WL 648626, at \*5. Moreover, courts routinely appoint as lead plaintiffs movants who incurred losses as a result of options investments, including through sales of put options. *See, e.g.*, *id.* at \*4-6 (appointing option holder as Lead Plaintiff instead of common stock purchaser); *Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 355, 357 (S.D.N.Y. 2011) (appointing movant group that included seller of put options as lead plaintiff where "the focus of the typicality analysis [was] . . . whether the same or similar injuries arose out of or were caused by Defendants' alleged wrongful course of conduct" (internal quotation marks omitted)). Further, "courts typically treat both stockholders and options holders as members of the same plaintiff class" (*Hall*, 2009 WL 648626, at \*5 (collecting cases))), and courts across the country have certified options investors as class representatives on behalf of options and stock investors. *See Oracle*, 2006 WL 8071391, at \*8 (finding the sale of call options in conjunction with the purchase of common stock was not atypical of the class); *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150,

155 (N.D. Cal. 1991) (finding the typicality requirement satisfied where "the value of options is directly related to the value of common stock").

Here, Cherches and Zvagelsky purchased or otherwise acquired AMMO securities—namely, both stock and options—during the Class Period, and therefore fall squarely within the Class definition. *See* Dkt. No. 1 ¶ 1. Moreover, as a result of selling AMMO put options, they were ultimately obligated to acquire shares of AMMO stock at a loss. Specifically, Cherches and Zvagelsky sold put options with strike prices of $5.00 and $2.50, meaning that when AMMO's stock price fell below these prices prior to the contract's expiration date, they were obligated to buy AMMO shares from their contractual counterparty at the strike price, which was at that time above the market price for AMMO stock. Naturally, when Cherches and Zvagelsky made these investment decisions (between December 28, 2021 and February 2, 2023, a period of time when AMMO stock traded as high as $6.06 per share), they did so in the expectation that AMMO's stock price was unlikely to fall below these strike prices. Their Class Period investment decisions, made while the Defendants' false and misleading statements were alleged to have artificially inflated the Company's share price, thus reflected a bullish investment thesis with respect to the Company's prospects. Yet when the Defendants' alleged fraud was ultimately revealed, AMMO's share price fell precipitously. The sharp drop in AMMO's share price pushed it below the strike price for Cherches and Zvagelsky's put options, enabling their counterparties to exercise their right to sell their AMMO shares at above-market prices, thus causing Cherches and Zvagelsky to incur significant investment losses when they purchased AMMO shares at above-market prices to fulfill their contractual obligations. Their claims are thus typical of any other Class member, each of whom likewise claims to have lost money on their investments in AMMO securities as a result of the Defendants' alleged fraud.

### 4.     Cherches Is Not a Day Trader

Finally, Barrile argues that "Cherches's [purported] in and out trading pattern and large number of transactions during the Class Period indicates he is a 'day trader,' which raises 'serious concerns' about his typicality and can subject him to unique defenses." Dkt. No. 27 at 2. Cherches is not a day trader with a "pattern" of in-and-out trading. Day trading involves rapidly buying and selling securities within a single day to capitalize on small price movements, often opening and closing a position in a company's securities within hours, minutes, or seconds, and rarely maintaining overnight positions, closing out entirely before the market closes.[6] A primary concern with appointing a day trader as a lead plaintiff is that a day trader is "vulnerable to attacks that he did not rely on the market price in trading [the subject securities], which could 'sever[] the link between the alleged misrepresentation and . . . [the investor's] decision to trade at a fair market price.'" *Rodriguez v. DraftKings Inc.*, 21 Civ. 5739 (PAE) *et al.*, 2021 WL 5282006, at \*10 (S.D.N.Y. Nov. 12, 2021) (second alteration in original) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 248 (1988)). Courts have also declined to appoint day traders whose in-and-out trading activity resulted in their selling all of their securities prior to the alleged corrective disclosures, thus raising unique defenses related to loss causation. *See Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 241 (E.D.N.Y. 2011) (denying motion by investor who sold all subject securities before the fraud was revealed, finding that "a *total* in-and-out trader . . . may be unable to demonstrate loss causation" (emphasis added)).

Here, Cherches was in-and-out—that is, he bought into and then exited his position in AMMO securities—in *only one* of his two accounts, Account 1, during the Class Period. *See* Dkt. Nos. 20-1, 20-2. Moreover, Cherches was only in-and-out in that account exactly *once*

---

[6]  *See What Is Day Trading?*, Investopedia (updated Nov. 19, 2024), https://www.investopedia.com/articles/trading/05/011705.asp#toc-what-is-day-trading.

during a Class Period that spans **over four years** (*see* Dkt. No. 1 ¶ 1). *See* Dkt. Nos. 20-1, 20-2. Accordingly, Cherches does not exhibit a "pattern" of in-and-out trading, as Barrile asserts (Dkt. No. 27 at 2), because he was not rapidly buying and selling securities within a single trading day and frequently opening and closing his position. *See* Dkt. Nos. 20-1, 20-2. As such, Cherches cannot reasonably be characterized a day trader.[7]

## III.  CONCLUSION

For the foregoing reasons, Cherches and Zvagelsky respectfully request that the Court issue an Order: (1) appointing them as Co-Lead Plaintiffs for the Class; and (2) approving their selection of Pomerantz and BG&G as Co-Lead Counsel and Keller Rohrback as Liaison Counsel for the Class.

Dated:  December 20, 2024

Respectfully submitted,

*/s/ Gary Gotto*

Gary Gotto (No. 007401)
**KELLER ROHRBACK L.L.P.**
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
ggotto@kellerrohrback.com
Tel.: (602) 230-6322

*Counsel for Movants Dmitry Cherches and Irene Zvagelsky and Proposed Liaison Counsel for the Class*

**POMERANTZ LLP**
Jeremy A. Lieberman (admitted *pro hac vice*)
J. Alexander Hood II (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100

---

[7] Curiously, Barrile failed to levy the same argument against Scarborough, apparently endorsing Scarborough's motion (*see* Dkt. No. 27 at 1-2) despite the fact that Scarborough was in-and-out *five* times in his "Account 3" during the Class Period. *See* Dkt. No. 17-4 at *3.

Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein (admitted *pro hac vice*)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Counsel for Movants Dmitry Cherches and Irene Zvagelsky and Proposed Co-Lead Counsel for the Class*

CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Gary Gotto
Gary Gotto

MEMORANDUM OF POINTS AND AUTHORITIES
CV-24-02619-PHX-DJH

13