# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Arias Larmay,

        Plaintiff,

v.

AMMO Incorporated, et al.,

        Defendants.

No. CV-24-02619-PHX-DJH (ESW)

**REPORT
AND RECOMMENDATION**

**TO THE HONORABLE DIANE J HUMETEWA, UNITED STATES DISTRICT JUDGE:**

This securities class action, filed on behalf of investors who purchased or acquired AMMO, Inc. ("AMMO") securities between August 19, 2020 and September 24, 2024, alleges that Defendants made fraudulent statements that misrepresented AMMO's financial reporting and operations in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5.

Pending before the Court are four competing Motions seeking the appointment of lead plaintiff filed by (i) Shelly Barrile ("Barrile") (Doc. 16); (ii) Samuel Scarborough ("Scarborough") (Doc. 17); (iii) Cary Sommerville ("Sommerville") (Doc. 18); and (iv) Dmitry Cherches ("Cherches") and Irene Zvagelsky ("Zvagelsky") (Doc. 19).[1] Barrile,

---

[1] A fifth movant, Dirgesh Patel, also filed a "Motion for Appointment as Lead Plaintiff" (Doc. 15), but withdrew it on December 13, 2024 (Doc. 28).

Scarborough, Sommerville, Cherches, and Zvagelsky are collectively referred herein as "Movants." The District Judge referred the Motions (Docs. 16-19) to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rules 72.1 and 72.2 (Doc. 34). Defendants do not oppose the Motions (Docs. 22-26). Barrile, Scarborough, Cherches, and Zvagelsky submitted Responses (Docs. 27, 29, 30) and Replies (Docs. 31-33) addressing the competing requests. Sommerville filed a Notice of Non-Opposition (Doc. 21). For the reasons set forth herein, the undersigned recommends that the Court grant Cherches and Zvagelsky's Motion (Doc. 19) to appoint them as Co-Lead Plaintiffs and approve their selection of counsel.

## I. LEGAL STANDARDS

The Private Securities Litigation Reform Act of 1995 ("PSLRA") governs the appointment of a lead plaintiff in this action. *See* 15 U.S.C. § 78u-4(a)(3). Within twenty days of filing the complaint, the plaintiff must publish a notice advising class members of the action, its claims, and the class period. § 78u-4(a)(3)(A)(i). Within sixty days from the notice's publication, any member of the purported class may move the Court to serve as lead plaintiff of the purported class. *Id.* The PSLRA directs courts to consider any motion to serve as lead plaintiff by the later of (i) ninety days after the date of the notice's publication or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B)(i) &(ii).

The PSLRA creates a rebuttable presumption that the "most adequate plaintiff" is the person or group of persons that: (i) has either filed the Complaint or made the motion for appointment of lead counsel in response to the publication of notice; (ii) has the "largest financial interest" in the relief sought by the class; and (iii) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption is rebuttable only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff (i) will not fairly and adequately protect the interests of the class or (ii) is subject to unique defenses that render such plaintiff incapable of adequately representing the class. 15 U.S.C. § 78u-

4(a)(3)(B)(iii)(II).

## II. DISCUSSION

### A. Movants' Motions (Docs. 16-19) are Timely

The Complaint (Doc. 1) was filed on September 27, 2024, and notice was published via Business Wire on September 30, 2024. (Doc. 16-3.) On November 29, 2024, Movants timely filed their Motions (Docs. 16-19) within sixty days of the notice's publication.

### B. Cherches and Zvagelsky have the Largest Financial Interest

"The PSLRA does not specify how to assess which movant has the largest financial interest, and the Ninth Circuit has left it to the district courts to 'select accounting methods that are both rational and consistently applied' in making this determination." *Ishak v. WM Tech., Inc.*, No. 2:24-CV-08959-ODW (PVCX), 2025 WL 791270, at *3 (C.D. Cal. Mar. 11, 2025) (quoting *In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002)). The Court "may select accounting methods that are both rational and consistently applied." *In re Sonthalia*, No. 22-70044, 2022 WL 3445815, at *1 (9th Cir. Aug. 17, 2022). Courts often assess financial interest using factors such as shares purchased, net shares retained, funds expended, and losses suffered, with losses typically given the most weight. *See Nicolow v. Hewlett Packard Co.*, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) (noting that the "Ninth Circuit has declined to endorse a particular method, instructing only that 'the court may select accounting methods that are both rational and consistently applied.'") (quoting *Cavanaugh*, 306 F.3d at 730).

Here, the undersigned concurs with Cherches and Zvagelsky that in determining which Movant has the largest financial interest, it is appropriate to focus on approximate losses calculated via the last-in, first-out ("LIFO") methodology, as it is rational, consistently applied, and aligns with Ninth Circuit precedent. *See In re Cavanaugh*, 306 F.3d at 730 n. 4 ("[T]he district court must calculate each potential lead plaintiff's financial interest in the litigation. In so doing, the court may select accounting methods that are both rational and consistently applied.").

Sommerville has filed a Notice of Non-Opposition conceding that he does not have the largest financial interest. (Doc. 21.) The remaining Movants claim the following financial losses in their initial motions:

　　　1. Barrile: $23,000 (Doc. 16 at 2);

　　　2. Scarborough: $911,917.41 (Doc. 17 at 6);[2] and

　　　3. Cherches and Zvagelsky: $1,468,882 (Doc. 19 at 7).

Cherches and Zvagelsky calculated their losses of $1,468,882 using the LIFO methodology. (Doc. 19 at 7; Doc. 33 at 5.)  Barrile and Scarborough argue that Cherches and Zvagelsky's loss is inflated by including shares purchased and sold before AMMO's September 24, 2024 corrective disclosure. (Docs. 27 at 2; Doc. 29 at 4-7) Barrile and Scarborough contend that such losses are unrecoverable under *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005). (Docs. 27 at 2; 29 at 4-7.) In *Dura*, the Supreme Court held that a plaintiff must plead and prove that the defendant's misrepresentation proximately caused the plaintiff's economic loss, rather than merely showing that a security was purchased at an artificially inflated price. *Id.* at 346.

The undersigned is unpersuaded by Barrile and Scarborough's argument for several reasons. First, the LIFO methodology used by Cherches and Zvagelsky is both "rational and consistently applied" for calculating financial interest at this stage of litigation. *See Cavanaugh*, 306 F.3d at 730. Courts in the Ninth Circuit "tend to use a last in, first out ('LIFO') methodology." *Luo v. Spectrum Pharms., Inc.*, No. 2:21-CV-01612-CDS-BNW, 2022 WL 2985939, at *3 (D. Nev. July 28, 2022).  The law does not "require this Court to apply *Dura* to adjust a prospective plaintiff's alleged loss prior to the dismissal stage of a lawsuit." *Id.*

Second, the undersigned agrees with Cherches and Zvagelsky (Doc. 33 at 7-9) that applying *Dura* principles at the lead plaintiff appointment stage is premature because it

---

[2] In his Response to Cherches and Zvagelsky's Motion (Doc. 19), Scarborough changed his position and argues that his loss is $897,478. (Doc. 29 at 6.)  Scarborough asserts in his Response that Cherches losses are $168,806, Zvagelsky's losses are $298,068, Sommerville's losses are $89,281, and Barrile's losses are $23,116. (*Id.*)

would require a merits-based analysis inappropriate before discovery has commenced. As the court in *Luo* explained, "the analysis under *Dura* (specifically, limiting Plaintiffs' claims to those caused by the fraud rather than total economic loss potentially caused by other events on the market) cannot be rationally or consistently applied at the lead-plaintiff stage of the lawsuit." *Id.* at \*4. An expansive view of damages at this stage "benefits members of the putative class and prevents a rift between class members who may seek or assert entitlement to a greater amount of damages than those sought by the lead plaintiff." *Id.* at \*7 n.3.

Third, as Cherches and Zvagelsky note (Doc. 33 at 7), Scarborough initially calculated his own losses using the LIFO methodology in his Motion (Doc. 17 at 6). Scarborough shifted to advocating for a *Dura*-based exclusion of certain losses in his Response (Doc. 29 at 4) opposing Cherches and Zvagelsky's Motion (Doc. 19). Courts are skeptical of movants who "shift[] to another [position] in their opposition after a new movant comes in alleging a greater loss." *Luo*, 2022 WL 2985939, at \*3.

Using the LIFO methodology, which is both rational and consistently applied, Cherches and Zvagelsky have losses of approximately $1,468,882. As this loss is significantly larger than the other Movant's losses, the undersigned finds that Cherches and Zvagelsky have the largest financial interest in this action.

### C. Cherches and Zvagelsky Satisfy Rule 23

Having established that Cherches and Zvagelsky have the largest financial interest, the next step under the PSLRA is to determine whether they "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) sets forth four prerequisites for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. At the lead plaintiff appointment stage, courts focus primarily on the last two requirements: typicality and adequacy. *See Smilovits v. First Solar, Inc.*, No. 12-cv-555, 2012 WL 3002513, at \*3 (D. Ariz. July 23, 2012) (noting that only typicality and adequacy are relevant to the selection of lead plaintiff). The first two requirements—numerosity and commonality—are more

appropriately addressed at the class certification stage. If Cherches and Zvagelsky satisfy the typicality and adequacy requirements, then they are entitled to the rebuttable presumption that they are the "most adequate plaintiffs" to represent the class. At this stage, the Court "must rely on the presumptive lead plaintiff's complaint and sworn certification" because "there is no adversary process to test the substance of those claims." *Cavanaugh*, 306 F.3d at 730.

### 1. Typicality

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation and citation omitted).

The class definition encompasses all who "purchased or otherwise acquired" AMMO securities between August 19, 2020 and September 24, 2024. (Doc. 1 ¶ 1.) Like other class members, Cherches and Zvagelsky acquired AMMO at prices allegedly inflated by Defendants' misrepresentations, incurring substantial losses. (Doc. 19 at 6-7.) Barrile and Scarborough contend that Cherches and Zvagelsky's options transactions, including selling call options and losses from put option exercises, render them atypical or subject to unique defenses. (Docs. 27 at 3; Doc. 29 at 8-9.) They also argue that Cherches's alleged day trading further undermines their typicality. (Docs. 27 at 3; Doc. 29 at 9.) However, courts consistently hold that options holders are typical in securities class actions when their losses arise from the same alleged fraud as stockholders. *Hall v. Medicis Pharm. Corp.*, No. CV08-1821PHX-GMS, 2009 WL 648626, at *4-6 (D. Ariz. Mar. 11, 2009) (explaining that "courts typically treat both stockholders and options holders as members of the same plaintiff class"); *Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 355-57 (S.D.N.Y. 2011) (holding that an investor who traded in both stock and options, including selling put options, was typical of the class because the claims arose from the same alleged fraudulent conduct as other class members' claims).

Cherches and Zvagelsky maintained a predominantly "long" position, acquiring 705,400 AMMO shares through put option exercises and 82,009 shares via open-market purchases during the Class Period, and retained 166,000 shares at the period's end. (Doc. 33 at 10-11.)

The undersigned agrees with Cherches and Zvagelsky that this reflects a "bullish investment thesis" reliant on Defendants' alleged misrepresentations. (Doc. 33 at 13.) The undersigned also agrees that Cherches and Zvagelsky's put option losses are typical, as they were obligated to purchase AMMO stock at above-market strike prices ($5.00 and $2.50) due to Defendants' alleged misrepresentations, which artificially inflated prices before the stock fell below these thresholds after AMMO made corrective disclosures. (*Id.*) The undersigned does not find that Cherches's single in-and-out transaction in one account over four years constitutes day trading. (*Id.* at 14.) The undersigned finds that Cherches and Zvagelsky satisfy the typicality requirement.

### 2. Adequacy

To satisfy the condition of "adequacy" under Rule 23, it must be shown that: "(1) the proposed lead plaintiff's interests are in common with, and not antagonistic to, those of the class; and (2) proposed lead plaintiff's counsel are qualified, experienced, and generally able to conduct the litigation." *Schonfield v. Dendreon Corp.*, No. C07-800MJP, 2007 WL 2916533, at *4 (W.D. Wash. Oct. 4, 2007). Representation by a lead plaintiff is adequate when class counsel "is qualified and competent to prosecute the action vigorously, and the representative does not have 'antagonistic or conflicting interests with the unnamed members of the class.'" *In re Wrap Techs., Inc. Sec. Exch. Act Litig.*, No. CV-20-8760, 2021 WL 71433, at *3 (C.D. Cal. Jan. 7, 2021) (quoting *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

There is no indication in the record that Cherches and Zvagelsky have an interest antagonistic with the interests of the unnamed members of the class. Their Certifications and Joint Declaration affirm their commitment to the Class and shared belief in the merits of this action and desire to achieve the best possible result for the Class. (Doc. 20-2 at 2-

3, 9-10; Doc. 20-4.) Their counsel—Pomerantz LLP, Bronstein, Gewirtz & Grossman, LLC, and Keller Rohrback L.L.P.—have extensive securities litigation experience, including Pomerantz LLP's $3 billion *Petrobras* settlement and Keller Rohrback's local expertise. (Doc. 19 at 12-13; Doc. 20-5, 20-6, 20-7.)

Appointing Cherches and Zvagelsky as Co-Lead Plaintiffs is appropriate, as their collaboration enhances class representation. The undersigned is persuaded that Cherches and Zvagelsky's combined loss of $1,468,882 million, with Cherches individually incurring a loss of $1.15 million (Doc. 20-1), exceeds other Movant's losses and will ensure vigorous advocacy on behalf of the Class. Courts frequently appoint co-lead plaintiffs when one member's loss surpasses others and their relationship fosters cohesion. *In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001) (upholding the appointment of a group of three pension funds as lead plaintiff, noting that their shared institutional structure and substantial financial interest supported their ability to cohesively represent the class); *Petrie v. Elec. Game Card, Inc.*, No. SACV10-0252DOCRNBX, 2010 WL 2292288, at *2 (C.D. Cal. June 4, 2010) (appointing a group where a married couple had the largest loss); *In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1721JM(POR), 2004 WL 5159061, at *5, *10 (S.D. Cal. Jan. 5, 2004) (appointing a group where one member had the largest loss).

As siblings, Cherches and Zvagelsky's pre-existing relationship and Joint Declaration (Doc. 20-4), which details their investment experience, joint discussions, and PSLRA understanding, distinguish their group from artificially aggregated ones. *See Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 533 (N.D. Cal. 2009) (approving co-lead plaintiffs where one member's loss independently met the largest stake requirement). The undersigned finds that Cherches and Zvagelsky satisfy the adequacy requirement.

### D. Rebuttal of Presumption

The presumption of most adequate plaintiff may be rebutted "only by proof that the presumptively adequate plaintiff 'will not fairly and adequately protect the interests of the class' or 'is subject to unique defenses that render such plaintiff incapable of

adequately representing the class.'" *Lomingkit v. Apollo Educ. Grp. Inc.*, No. CV-16-00689-PHX-DLR, 2016 WL 3345514, at *2 (D. Ariz. June 16, 2016) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)). Speculation is "insufficient to rebut the lead plaintiff presumption[.]" *Armour v. Network Associates, Inc.*, 171 F.Supp.2d 1044, 1054 (N.D. Cal. 2001).

The undersigned finds that no Movant has rebutted the presumption that Cherches and Zvagelsky are the most adequate plaintiffs. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Barrile and Scarborough's arguments about options profits and day trading are speculative. Cherches and Zvagelsky's stock losses of $2,100,266 (calculated using the LIFO methodology) exceed their options profits of $631,464 (calculated using the LIFO methodology), which undermines claims that Cherches and Zvagelsky are net gainers. (Doc. 33 at 9; Doc. 33-3 at 2.) The undersigned concurs that their call option sales do not render Cherches and Zvagelsky atypical or subject to unique defenses as the call options were a hedging strategy, not a bet against AMMO. *See, e.g.*, *Nursing Home Pension Fund v. Oracle Corp.*, 2006 WL 8071391, at *8 (N.D. Cal. Dec. 20, 2006) (finding that selling call options did not render a plaintiff atypical); *Rodriguez v. DraftKings Inc.*, 2021 WL 5282006, at *10 (S.D.N.Y. Nov. 12, 2021) (noting that limited in-and-out trading, unlike extensive day trading, does not necessarily subject a plaintiff to unique defenses undermining reliance on market price); *Chauhan v. Intercept Pharms.*, No. 21 Civ. 36 (LJL), 2021 WL 235890, at *6 (S.D.N.Y. Jan. 25, 2021) (rejecting a defense that short selling severed reliance, as the plaintiff's strategy relied on the integrity of the market price).

### E. Approval of Counsel

The PSLRA authorizes lead plaintiffs to select counsel, subject to Court approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). The undersigned recommends that the Court approve Pomerantz LLP and Bronstein, Gewirtz & Grossman, LLC as Co-Lead Counsel and Keller Rohrback L.L.P. as Liaison Counsel, based on their demonstrated expertise. (Doc. 20-5, 20-6, 20-7.)

### III. CONCLUSION

For the foregoing reasons,

**IT IS RECOMMENDED** that the Court **GRANT** Cherches and Zvagelsky's "Motion for Appointment as Co-Lead Plaintiffs and Approval of their Selection of Counsel" (Doc. 19).

**IT IS FURTHER RECOMMENDED** that the Court approve Cherches and Zvagelsky's selection of counsel, with Pomerantz LLP and Bronstein, Gewirtz & Grossman, LLC appointed as co-lead counsel and Keller Rohrback L.L.P. as liaison counsel for the class.

**IT IS FURTHER RECOMMENDED** that the Court **DENY** Barrile's "Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel" (Doc. 16).

**IT IS FURTHER RECOMMENDED** that the Court **DENY** Scarborough's "Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel" (Doc. 17).

**IT IS FURTHER RECOMMENDED** that the Court **DENY** Sommerville's "Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel" (Doc. 18).

This Report and Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this Report and Recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or

judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 8th day of May, 2025.

_____
Eileen S. Willett
United States Magistrate Judge