**RUSING LOPEZ & LIZARDI, P.L.L.C.**
6363 North Swan Road, Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800
Facsimile: (520) 529-4262

Mark D. Lammers; mdlammers@rllaz.com
State Bar No. 010335

*Liaison Counsel for Lead Plaintiff Movant
Samuel Scarborough*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Arias Larmay, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>Ammo, Inc., Fred W. Wagenhals, Jared R. Smith, and Robert D. Wiley,<br><br>Defendants. | Case No. 2:24-cv-02619-DJH<br><br>**SAMUEL SCARBOROUGH'S OBJECTIONS PURSUANT TO FED. R. CIV. P. 72(a) TO THE REPORT AND RECOMMENDATION DATED MAY 8, 2025 (DKT. No. 35)** |

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, Lead Plaintiff Movant Scarborough respectfully submits his objections to Magistrate Judge Eileen S. Willett's May 8, 2025 Report and Recommendation (Dkt. No. 35, the "Report and Recommendation" or "R&R") that recommended the appointment of Cherches and Zvagelsky as lead plaintiff. The recommendation is erroneous because it ignores that Cherches and Zvagelsky face a unique defense, as explained below. If the error is corrected, Scarborough should be appointed as lead plaintiff and his selection of counsel should be approved.

## I.    SUMMARY OF ARGUMENT

The PSLRA prescribes a "three-step process for the selection of lead plaintiff" wherein courts must (1) consider timely motions, (2) determine which movant is the presumptively most adequate plaintiff, and then (3) determine whether that presumptively most adequate plaintiff is subject to any disqualifying unique defenses. *See In re Mersho*, 6 F.4th 891, 899 (9th Cir. 2021). Only two movants are still seeking appointment as lead plaintiff: (i) Scarborough; and (ii) Cherches and Zvagelsky. *See generally*, Dkt. Nos. 21, 27, 28. In the second step of the PSLRA process, Judge Willett adjudicated a dispute regarding the appropriate method to calculate losses to determine the movant with the largest financial interest. She decided to use the last-in, first-out ("LIFO") method and concluded that Cherches and Zvagelsky are the presumptively most adequate plaintiff.[1] Judge Willett erred, however, in her analysis of the third step because she failed to apply the Supreme Court's directive under *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), which precludes recovery for losses on shares that were purchased during the class period, but sold before the corrective disclosure at the end of the class period.

---

[1] Scarborough disagrees with Judge Willett's decision to use the LIFO method, but he does not object on this basis. Scarborough advocated for the retained share method, which only considers losses on shares that were purchased during the class period and retained at the end of the class period. Cherches and Zvagelsky have the largest financial interest under the LIFO method, and Scarborough has the largest financial interest under the retained shares method.

1

In step three, movants may rebut the most adequate plaintiff presumption by providing proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Mersho*, 6 F.4th at 899 (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)–(bb)). Here, Scarborough argued that Cherches and Zvagelsky are subject to the unique defense that, under *Dura*, they have a gain (not a loss). Defendants will persuasively, and likely successfully, argue at every turn (the motion to dismiss, class certification, and summary judgement) that Cherches and Zvagelsky have no damages, and therefore have no viable securities fraud claim against Defendants. Notably, a unique defense need not be ironclad. The risk that the unique defense will become a distraction at later stages is sufficient to rebut the presumption. At the very least, this unique defense will become a focus of the litigation at later stages, which will distract from the more central class-wide issues. As such, Cherches and Zvagelsky are subject to a unique defense that renders them inadequate to represent the class, and the presumption that they are the most adequate plaintiff is therefore rebutted.

Judge Willett erroneously disregarded this unique defense by conflating which movant has the largest financial interest (step two) with whether that financial interest is recoverable (step three). Specifically, she reasoned that Cherches and Zvagelsky have a net loss, not a net gain, simply because they have a loss as calculated by the LIFO method. *See* R&R at 9. This was erroneous because LIFO necessarily does not apply the logic of *Dura*. This is error because while the Court is free to ignore *Dura* for purposes of step two of the PSLRA process, the Court cannot ignore *Dura* for purposes of step three. Unlike step two, step three requires the Court to consider later stages of the litigation to determine whether, at those stages, Cherches and Zvagelsky will be subject to a unique defense. Since *Dura* must be applied at those stages, Cherches and Zvagelsky will be found to have a net gain at those stages under *Dura* and will be subject to unique defenses on that basis. The appointment of Cherches and Zvagelsky could preclude class-wide recovery and, at a

minimum, will require the Court to reopen the lead plaintiff process at a later date. As such, the presumption that they are the most adequate plaintiff is rebutted.

Since Scarborough is the movant with the next largest financial interest, and no movant contests that he made the required prima facie showing of typicality and adequacy, the most adequate plaintiff presumption moves to him. And since no movant has attempted to rebut this presumption, he should be appointed as lead plaintiff. Moreover, since the lead plaintiff has the right to select counsel with the Court's approval Scarborough's selection of counsel should be approved.

## II.   BACKGROUND AND PROCEDURAL HISTORY

The PSLRA prescribes a "three-step process for the selection of lead plaintiff" to lead securities class actions, and the first step is that "notice of the action must be posted so purported class members can move for lead plaintiff appointment." *Mersho*, 6 F.4th at 899. Here, notice was published and in response, on November 29, 2024, five movants filed competing motions for lead plaintiff appointment, including Scarborough (Dkt. No. 17, "Scarborough Mot."), and Cherches and Zvagelsky jointly (Dkt. No. 19). Three other movants also filed motions for appointment. *See* Dkt. Nos. 15, 16, 18. However, all three subsequently effectively conceded their bids for appointment by acknowledging that their losses were not large enough to be appointed over the competing applicants. *See* Dkt. No. 21, 27, 28. As such, Scarborough and Cherches and Zvagelsky are the only remaining movants actively seeking appointment.

### A.   The R&R Finds That Cherches And Zvagelsky Are The Presumptively Most Adequate Plaintiff To Be Appointed As Lead Plaintiff On The Basis That They Have The Largest LIFO Method Loss

In the second step of the PSLRA process, the court must identify which movant is the "presumptively most adequate plaintiff" to be appointed as lead plaintiff. *Mersho*, 6 F.4th at 899. That presumption belongs to the movant who both has "the largest financial interest" in the action and has made "a prima facie showing" that they are adequate and typical. *Id.*; *see also* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Here, no movant challenges any other movant's

3

preliminary showing of typicality and adequacy. *See generally*, Dkt. No. 29 ("Scarborough Opp."); Dkt. No. 30 ("C&Z Opp."); Dkt. No. 32 ("Scarborough Reply"); Dkt. No. 33 ("C&Z Reply").

### 1. The Movants Disputed Whether The LIFO Method Or Retained Shares Method Should Be Used To Calculate Losses And Financial Interest

The movants did, however, contest who has the largest financial interest. Scarborough and Cherches and Zvagelsky disagreed over which method the Court should use to calculate the movants' losses (and therefore financial interests). Cherches and Zvagelsky argued that the Court should adopt the LIFO method to calculate the movants' losses. *See* C&Z Opp. at 2 n.3. Scarborough argued that the Court should adopt the "retained shares method" to calculate losses. *See* Scarborough Opp. at 4. The retained shares method excludes any shares that were purchased during the class period and sold before the corrective disclosure at the end of the class period. *See Tenneson v. Nikola Corp.*, 2024 WL 905244, at *5 (D. Ariz. Feb. 29, 2024) (the retained shares method considers the "net loss of only those shares" that were "purchased during the class period" and "retained at the end of the class period"). The retained shares method applies the logic of *Dura*. *See Nikola*, 2024 WL 905244, at *5; *see also Dura*, 544 U.S. 336, 342 ("[I]f . . . the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.").

Cherches and Zvagelsky have the largest financial interest under the LIFO method, and Scarborough has the largest financial interest under the retained shares method. Under the LIFO method, Cherches and Zvagelsky's stock loss is $2,100,266. *See* Dkt. No. 20-1 (Cherches and Zvagelsky's loss chart). However, under the retained shares method, Cherches and Zvagelsky's stock loss is just $466,874 because the vast majority of their shares were sold during the class period—before the corrective disclosure. *See* Scarborough Opp. at 5. These figures do not include Cherches and Zvagelsky's class period option proceeds, which were $631,464. *See* Dkt. No. 20-1. Factoring in the options proceeds,

Cherches and Zvagelsky have a LIFO method loss of $1,468,882, *see id.*, and a retained shares method **gain** of $164,590. *See* Scarborough Opp. at 5 n.2. Regardless of which method is used, Scarborough has a loss of approximately $900,000 ($911,917 under the LIFO method, and $897,478 under the retained shares method). *See* Dkt. No. 17-4 (Scarborough's loss chart); Scarborough Opp. at 5.

### 2.    Judge Willett Used The LIFO Method To Determine The Movant With The Largest Financial Interest At Step Two

Judge Willett, in her discretion, declined to apply the retained shares method to determine which movant has the largest financial interest—and instead applied the LIFO method. *See generally, In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002) (to "calculate each potential lead plaintiff's financial interest in the litigation" the court "may select accounting methods that are both rational and consistently applied"). In declining to apply *Dura* here, Judge Willett acknowledged that *Dura* was appropriate to apply **at later stages of the litigation**. *See* R&R at 4 ("The law does not 'require this Court to apply *Dura* to adjust a prospective plaintiff's alleged loss **prior to the dismissal stage** of a lawsuit.'") (citation omitted, emphasis added). She also found that "applying *Dura* principles at the lead plaintiff appointment stage is premature because it would require a merits-based analysis inappropriate **before discovery has commenced**." R&R at 4-5 (emphasis added). As a result, she concluded that Cherches and Zvagelsky had the largest financial interest and made the required preliminary demonstration of their typicality and adequacy. *See* R&R at 3, 5-8, 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). As such, Judge Willett found that Cherches and Zvagelsky were the presumptively most adequate plaintiff to be appointed as lead plaintiff.

### B.    Scarborough Argued That Cherches And Zvagelsky Are Subject To Unique Defenses Because They Have A Net Gain Under *Dura*, Rebutting The Presumption

In step three of the PSLRA process, Scarborough can rebut the presumption that Cherches and Zvagelsky are the most adequate plaintiff by presenting proof that Cherches and Zvagelsky "will not fairly and adequately protect the interests of the class" or "[are]

subject to unique defenses that render [them] incapable of adequately representing the class." *Mersho*, 6 F.4th at 899 (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)–(bb)).

Importantly, the determination of whether a movant is "subject to unique defenses" requires that the Court look forward to later stages of the litigation (*e.g.* the motion to dismiss, class certification, and summary judgement) to determine whether the movant will encounter unique defenses at those stages that will distract from the more central class-wide issues. *See In re Peregrine Sys., Inc. Sec. Litig.*, 2002 WL 32769239, at *7 (S.D. Cal. Oct. 11, 2002) (finding a movant was subject to unique defenses because there were "issues unique to it which may sidetrack litigation at a later stage"); *Lucid Alternative Fund, LP v. Aehr Test Sys., Inc.*, 2025 WL 880251, at *4 (N.D. Cal. Mar. 19, 2025) (disqualifying the presumptively most adequate plaintiff because "the complexity of [its] options trades raise the specter of 'unique defenses' that might distract or even derail the litigation").

In addition, a unique defense need not be ironclad. The mere possibility that a unique defense might become the focus of the litigation and distract from the more central class-wide issues is enough to disqualify Cherches and Zvagelsky. *See Peregrine*, 2002 WL 32769239, at *7 ("[W]hether these defenses will be successful is of no matter. The fact that plaintiffs will be subject to such defenses renders their claims atypical of other class members.") (citation omitted); *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 836 (N.D. Cal. 2019) (disqualifying a lead plaintiff movant who was merely "vulnerabl[e]" to a unique defense that may or may not be successful, reasoning that the potential for the unique defense was "sufficient to dispute his adequacy and typicality") (citing *Applestein v. Medivation Inc.*, 2010 WL 3749406, at *4 (N.D. Cal. Sept. 20, 2010)); *In re Netflix, Inc., Sec. Litig.*, 2012 WL 1496171, at *5 (N.D. Cal. Apr. 27, 2012) ("There is no requirement at this early stage to prove a defense, only to show a degree of likelihood that a unique defense might play a significant role at trial.").

Here, Scarborough argued that Cherches and Zvagelsky are subject to unique defenses. If *Dura* is applied to limit Cherches and Zvagelsky's recoverable stock losses, as it must be at later stages of the litigation, "Cherches and Zvagelsky are net gainers because

the proceeds they received from selling options contracts during the class period swamp their potentially recoverable stock losses." Scarborough Opp. at 7. In other words, at later stages of the litigation, when *Dura* must be applied to limit recoverable losses, Defendants will be able to assert a unique defense against Cherches and Zvagelsky that they have no net loss (*i.e.*, no damages). Courts routinely disqualify net gainers on the basis that they are subject to this unique defense at later stages. *See In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 308 (S.D. Ohio 2005) ("[C]ourts usually reject these so-called net gainers as lead plaintiffs, opting instead for net losers that will have less trouble proving damages.") (cited in Scarborough Opp. at 7); *Scheller v. Nutanix, Inc.*, 2021 WL 2410832, at \*7 (N.D. Cal. June 10, 2021) (recognizing a "general precedent finding that net gainers cannot adequately represent a class") (cited in Scarborough Opp. at 7). Moreover, even if Cherches and Zvagelsky have plausible counter-arguments to this defense, the defense will no doubt become a distraction from the more central class-wide issues. As such, Cherches and Zvagelsky are subject to a unique defense that renders them inadequate to represent the class, and the presumption that they are the most adequate plaintiff is therefore rebutted.

## III. THE STANDARD OF REVIEW OF THE REPORT AND RECOMMENDATION UNDER RULE 72(a) IS DE NOVO REVIEW

Rule 72(a) of the Federal Rules of Civil Procedure provides that "[a] party may serve and file objections" to a magistrate judge's non-dispositive pretrial order and that "[t]he district judge . . . must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.").

Here, as explained below, the R&R is contrary to law, for which "the standard is de novo review." *Reed v. Trinity Servs. Grp. Inc.*, 2022 WL 17843885, at \*2 (D. Ariz. Dec. 22, 2022). "Thus, this Court must engage in a de novo review of the underlying claim to assess whether the Magistrate Judge applied the incorrect law or applied the correct law inaccurately." *Id.*

7

## IV.    THE R&R ERRONEOUSLY FINDS THAT CHERCHES AND ZVAGELSKY ARE NOT SUBJECT TO A UNIQUE DEFENSE

Judge Willett erroneously rejected that Cherches and Zvagelsky would be subject to the unique defense that they are net gainers, reasoning: "Cherches and Zvagelsky's stock losses of $2,100,266 (calculated using the LIFO methodology) exceed their options profits of $631,464 (calculated using the LIFO methodology), which undermines claims that Cherches and Zvagelsky are net gainers." R&R at 9. In short, Judge Willett imported her LIFO loss analysis from the second step of the PSLRA process (determining which movant has the largest financial interest) into the third step of the PSLRA process (determining whether the presumptively most adequate plaintiff is subject to a unique defense).

This reasoning is error. Whether to apply *Dura* is discretionary at step two and is required at step three. The Court cannot ignore *Dura* for purposes of determining whether a movant will be subject to a unique defense at later stages because *Dura **must*** be applied at those stages. *Dura* itself involved an appeal from a motion to dismiss. Judge Willett recognized that *Dura* must be applied at "the dismissal stage of a lawsuit" (R&R at 4 (citation omitted)) and at stages requiring "a merits-based analysis" after "discovery has commenced" (R&R at 4-5)—but she failed to actually apply it when evaluating whether Cherches and Zvagelsky will face unique defenses at later stages of this litigation.

Correcting this error, Cherches and Zvagelsky's maximum recoverable stock loss under *Dura* is $466,874. Since their option proceeds were $631,464, they have a net gain of $164,590. There is no question that Defendants will credibly wield this fact against Cherches and Zvagelsky at later stages of the litigation, arguing that they have no losses and no damages. This will inevitably sidetrack the litigation, distract from the more central class-wide issues, and likely disqualify Cherches and Zvagelsky as plaintiffs and class representatives entirely. As such, they are subject to a disqualifying unique defense, and any presumption that they are the most adequate plaintiff is therefore rebutted. *Nutanix*, 2021 WL 2410832, at *7 (generally, "net gainers cannot adequately represent a class").

## V.    IF THE ERROR IS CORRECTED, SCARBOROUGH SHOULD BE APPOINTED AS LEAD PLAINTIFF AND HIS SELECTION OF COUNSEL SHOULD BE APPROVED

With Cherches and Zvagelsky disqualified, the most adequate plaintiff presumption moves to Scarborough since he has the next largest financial interest, *see* R&R at 4, filed a timely motion, *see* R&R at 3, and has made the required preliminary showing that he is adequate and typical. *See* Scarborough Mot. at 5-7. The presumption is moreover not rebutted as no movant has even attempted to rebut it. Accordingly, Scarborough should be appointed as lead plaintiff.

Moreover, Scarborough's selection of counsel should be approved, because the firms are well-qualified, and adequate to represent the class. *See* Scarborough Mot. at 7.

## VI.    CONCLUSION

For the foregoing reasons, Scarborough's objections to the R&R should be sustained, Scarborough's motion for appointment as lead plaintiff and approval of lead counsel (Dkt. No. 17) should be granted, and the competing lead plaintiff motions should be denied.

DATED: May 22, 2025                    Respectfully submitted,

                                       By:  */s/ Mark D. Lammers*
                                       Mark D. Lammers
                                       **RUSING LOPEZ & LIZARDI, P.L.L.C.**
                                       6363 N. Swan Road Suite 151
                                       Tucson, Arizona 85718
                                       Telephone: (520) 792-4800
                                       Email: mdlammers@rllaz.com

                                       *Liaison Counsel for Lead Plaintiff Movant Samuel Scarborough and Proposed Liaison Counsel for the Class*

                                       **GLANCY PRONGAY & MURRAY LLP**
                                       Robert V. Prongay
                                       Charles Linehan
                                       1925 Century Park East, Suite 2100
                                       Los Angeles, California 90067
                                       Telephone: (310) 201-9150
                                       Facsimile: (310) 201-9160
                                       Email:  rprongay@glancylaw.com
                                               clinehan@glancylaw.com
                                               prajesh@glancylaw.com

                                       *Counsel for Lead Plaintiff Movant Samuel Scarborough and Proposed Lead Counsel for the Class*

10