**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arias Larmay, | No. CV-24-02619-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| AMMO Incorporated, et al., | |
| Defendants. | |

On November 29, 2024, Plaintiffs Shelly Barrile ("Barrile"); Samuel Scarborough ("Scarborough"); Cary Sommerville ("Sommerville"); and Dmitry Cherches ("Cherches") and Irene Zvagelsky ("Zvagelsky") (collectively, "the Movants") filed Motions seeking appointment as lead plaintiff in this class action matter and approving their selection of lead counsel. (*See* Docs. 16–19, respectively). Defendants did not take a position on the dispute. (*See* Docs. 21–26). After full briefing by the competing Plaintiffs (Docs. 27, 29, 30, 31–33), the Court referred the matter to United State Judge Eileen S. Willett for a report and recommendation ("R&R") on the Motions. (Doc. 34). Judge Willett issued her R&R on May 8, 2025. (Doc. 35). The R&R recommends that the Court grant Cherches and Zvagelsky's Motion (Doc. 19) seeking to appoint Cherches and Zvagelsky as Lead Plaintiffs and approve Pomerantz LLP and Bronstein, Gewirtz & Grossman, LLC as co-lead counsel, and Keller Rohrback L.L.P. as liaison counsel for the class. (*Id*. at 10). She further recommends that the Court deny the Motions filed by Barrile, Scarborough, and Sommerville. (*Id*.)

Judge Willett advised the parties that they had fourteen days to file objections to the R&R, and fourteen days thereafter to file any response to the objections. (*Id.*) Movant Scarborough timely filed an Objection (Doc. 36) to which Cherches and Zvagelsky have responded (Doc. 37). Though not authorized under the Rules or Judge Willett's R&R, Scarborough filed a Reply in support of his Objection (Doc. 38). Reviewing the R&R in light of Movant Scarborough's timely Objection, the Court finds that the R&R should be accepted in all respects and will adopt it as the Order of the Court.

## I.    Standard of Review

When reviewing an R&R issued by a Magistrate Judge, this court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When a party timely objects to a magistrate judge's determination of a nondispositive matter, as here, a district judge may reject that determination only when it has been shown that the magistrate judge's order is either clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). Objections are to the R&R and not to "be construed as a second opportunity to present the arguments already considered by the Magistrate Judge." *Betancourt v. Ace Ins. Co. of Puerto Rico*, 313 F. Supp.2d 32, 34 (D.P.R. 2004).

## II.    Discussion[1]

Movant Scarborough objects to Judge Willett's R&R and asks this Court to declare him lead plaintiff—not Cherches and Zvagelsky. (Doc. 36). Movants Cherches and Zvagelsky urge the Court to adopt the R&R. (Doc. 37). The Court will first set forth the relevant law before turning to the merits of Movant Scarborough's Objection.

### A.    Applicable Law

The Private Securities Litigation Reform Act of 1995 ("PSLRA") governs the appointment of a lead plaintiff in this action. *See* 15 U.S.C. § 78u-4(a)(3). In a PSLRA class action, the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately

---

[1] Judge Willett explained the background and status of this case in the R&R (Doc. 35), and the Court need not repeat that information here.

representing the interests of class members." 15 U.S.C. § 78u–4(a) (3)(B)(i).

The PSLRA dictates a three-step process for the selection of a lead plaintiff. *See In re Mersho*, 6 F.4th 891, 899 (9th Cir. 2021). First, "notice of the action must be posted so purported class members can move for lead plaintiff appointment." *Id*. (citing 15 U.S.C. § 78u-4(a)(3)(A)(i)(I)–(II)). "The statute expressly allows a 'group of persons' to move for appointment." *Id*. (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)).

Second, the Court "must determine which movant is the '***most adequate plaintiff***,' which is defined as the plaintiff 'most capable of adequately representing the interests of class members.' " *Id*. (citing 15 U.S.C. § 78u-4(a)(3)(B)(i)) (emphasis added). The Court should "presume" that the most adequate plaintiff is the plaintiff who: (1) has either filed a complaint or moved to be named lead plaintiff, (2) has the largest financial interest in the relief sought by the class, and (3) satisfies the requirements of Federal Rule of Civil Procedure 23. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). Rule 23(a) requires that "the claims or defenses of the representative parties are *typical* of the claims or defenses of the class" and that "the representative parties will *fairly* and *adequately* protect the interests of the class." Fed. R. Civ. P. 23(a) (emphasis added). "If the movant with the largest losses does not satisfy the Rule 23 requirements, the district court must then look to the movant with the next largest losses and repeat the inquiry." *In re Mersho*, 6 F.4th at 899. [2]

Finally, at step three, if a party becomes the presumptive lead plaintiff, that

---

[2] In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23, a court need not raise its inquiry to the level required in ruling on a motion for class certification; instead, a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *See Smilovits v. First Solar, Inc.*, 2012 WL 3002513, at *3 (D. Ariz. July 23, 2012). The requirements of "typicality" and "adequacy" are particularly important for a movant to meet this *prima facie* showing under Rule 23. *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002). "Typicality" is satisfied when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Hall*, 2009 WL 648626, at *3 (internal citations omitted). To determine whether named plaintiffs will adequately represent a class, the Ninth Circuit instructs that the Court must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (internal citations omitted). Adequate representation depends on, among other factors, "an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Id*.

presumption may be rebutted only upon "proof" that the party "will not fairly and adequately protect the interests of the class" or "*is subject to unique defenses* that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II) (emphasis added). "If the presumption is not rebutted, the presumptively most adequate plaintiff must be selected as lead plaintiff." *In re Mersho*, 6 F.4th at 899.

Courts in the Ninth Circuit "tend to use [the] last in, first out ('LIFO') methodology" when determining the movants' estimated losses. *Luo v. Spectrum Pharms., Inc*., 2022 WL 2985939, at *3 (D. Nev. July 28, 2022) (citing *In re Wrap Tech., Inc. Sec. Exch. Act Litig*., 2021 WL 71433, at *2 (C.D. Cal. Jan. 7, 2021)). The LIFO method assumes that the most recently acquired stocks are the first to be sold. *Tenneson v. Nikola Corp*., 2024 WL 905244, at *5 (D. Ariz. Feb. 29, 2024), *report and recommendation adopted*, 2024 WL 1796119 (D. Ariz. Apr. 25, 2024). Following the Supreme Court's opinion in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005) ("*Dura*"), some courts have also excluded losses from stock trades that "occurred prior to a defendant's disclosure of fraud, because such losses do not stem from any misrepresentation." *Id*. (citing *Peters v. Twist Bioscience Corp*., 2023 WL 4849431, at *4 (N.D. Cal. July 28, 2023)). Under *Dura*, a plaintiff must plead and prove the defendant's misrepresentation proximately caused the plaintiff's economic loss, rather than merely showing that a security was purchased at an artificially inflated price. *Dura*, 544 U.S. at 346.

A second, lesser utilized method, the "retained shares method," can also be used and "determines how many shares were purchased during the class period, how many shares were retained at the end of the class period, and the net loss of only those shares." *Tenneson*, 2024 WL 905244, at *5 (citing *In re Lyft Securities Litigation*, 2020 WL 1043628, at *4 (N.D. Cal. Mar. 4, 2020)). "Courts in the Ninth Circuit have found that the retained shares method works best where there is a 'relatively constant fraud premium through the class period.' " *Id*. (citation omitted).[3]

---

[3] Movant Scarborough notes that he "disagrees with Judge Willett's decision to use the LIFO method, but he does not object on this basis." (Doc. 36 at 1 n.1).

"[A] straightforward application of the PSLRA mandates that this Court focus solely on the plaintiffs' financial stake in the case; so long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job." *Luo*, 2022 WL 2985939, at *3 (citation omitted).

### B.    Analysis

In the second step of the PSLRA process, Judge Willett found the LIFO method was the most appropriate method to calculate which Movant had the largest financial interest. Using this method, she concluded that Cherches and Zvagelsky were the presumptively most adequate plaintiffs because they had the largest net loss.  (Doc. 35 at 3–5).  Judge Willet also addressed Movant Scarborough's argument that she should apply *Dura*-based exclusions to this analysis, which would have excluded some of the losses Cherches and Zvagelsky incurred.  (*Id.* at 5).  Judge Willett noted that "[t]he law does not 'require this Court to apply *Dura* to adjust a prospective plaintiff's alleged loss prior to the dismissal stage of a lawsuit.' " (*Id.* at 4 (citing *Luo*, 2022 WL 2985939, at *3)).  She concluded that "applying *Dura* principles at the lead plaintiff appointment stage is premature because it would require a merits-based analysis inappropriate before discovery has commenced." (*Id.* at 4–5).

At step three, Judge Willett found that "no Movant has rebutted the presumption that Cherches and Zvagelsky are the most adequate plaintiffs" under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  (Doc. 35 at 9).  Movant Scarborough had argued that Movants Cherches and Zvagelsky should be disqualified because they are "net gainers" since "the proceeds they received from selling options contracts during the class period swamp their potentially recoverable stock losses."  (Doc. 29 at 8); *see also Perlmutter v. Intuitive Surgical, Inc.*, 2011 WL 566814, at *8 (N.D. Cal. Feb. 15, 2011) ("A net gainer is a party who profited from the purchase and sale of a defendant's stock during the class period.") (citation omitted).  Judge Willett rejected this argument.  (Doc. 35 at 9).

In his objection, Movant Scarborough says Judge Willett's err was "in her analysis

of the third step because she failed to apply the Supreme Court's directive under [*Dura*], which precludes recovery for losses on shares that were purchased during the class period, but sold before the corrective disclosure at the end of the class period." (Doc. 36 at 2). He avers that, because a movant may rebut the most adequate plaintiff presumption in step three by arguing the plaintiff will be subject to a unique defense, Judge Willett erred in not assessing that under *Dura*, Cherches and Zvagelsky, unlike himself, will be shown to have a gain—not a loss at that step, i.e., that they will be considered "net gainers." (Doc. 36 at 3, 9).[4] He argues, without citing any supporting caselaw, that the Court "cannot ignore *Dura* for purposes of determining whether a movant will be subject to a unique defense at later stages because *Dura **must*** be applied at those stages." (*Id.*) (emphasis in original).

While Scarborough advances both of these arguments simultaneously, the Court sees them as two distinct issues: (1) whether the Court is required to apply *Dura* at step three, the rebuttable presumption step; and (2) whether Judge Willett erred in finding that Cherches and Zvagelsky are not net gainers. (*See* Doc. 36 at 9). The Court will therefore address each argument in turn.

### 1.    Whether *Dura* Must be Applied at Step Three

Movant Scarborough first argues that Judge Willett was required to apply *Dura* at step three of her PSLRA analysis. (Doc. 36 at 9). Cherches and Zvagelsky argue that "there is in fact **no** requirement that the Court 'apply *Dura'* at **any** step of the lead plaintiff appointment process—much less at step three, in the context of rebuttal evidence, as Scarborough insists it must." (Doc. 37 at 7) (emphasis in original).

Judge Willett concluded that applying *Dura* principles at the lead plaintiff appointment stage was premature because "it would require a merits-based analysis inappropriate before discovery has commenced." (Doc. 35 at 4–5). She further reasoned that, "[a]s the court in *Luo* explained, 'the analysis under *Dura* (specifically, limiting

---

[4] Movant Scarborough says Cherches and Zvagelsky's maximum recoverable stock loss under *Dura* / the retained shares method is $466,874.00, so, they would have a gain of $164,590.00 due to their option proceeds of $631,464.00. (Doc. 36 at 5, 9).

Plaintiffs' claims to those caused by the fraud rather than total economic loss potentially caused by other events on the market) cannot be rationally or consistently applied at the lead plaintiff stage of the lawsuit.' " (*Id*. at 5).

*Dura* holds that a plaintiff must "prove that the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss" rather than simply alleging that the price was inflated on the date of purchase because of a misrepresentation. 544 U.S. at 346. *Dura* does not mention whether this pleading requirement is a "unique defense." *See id*. "[S]ome courts have . . . excluded losses from stock trades that occurred prior to a defendant's disclosure of fraud, because such losses do not stem from any misrepresentation" under *Dura*. *See e.g.*, *Tenneco*, 2024 WL 905244, at *5 (citing *Peters v. Twist Bioscience Corp*., 2023 WL 4849431, at *4 (N.D. Cal. July 28, 2023)). However, "no law requires" that the Court "apply *Dura* to adjust a prospective plaintiff's alleged loss **prior to the dismissal stage** of a lawsuit." *Luo, Inc*., 2022 WL 2985939, at *3 (emphasis added).

Judge Willett did not err in finding that applying *Dura* principles, i.e., excluding losses from stock trades that occurred prior to a defendant's disclosure of fraud, is premature "at the lead plaintiff appointment stage." *See Luo*, 2022 WL 2985939 at *7 n.3. This stage encompasses all three-steps of the PLSRA process, including the third rebuttable presumption step. *See In re Mersho*, 6 F.4th at 899. As Judge Willett found, "[a]n expansive view of damages benefits members of the putative class and prevents a rift between class members who may seek or assert entitlement to a greater amount of damages than those sought by the lead plaintiff." *Luo*, 2022 WL 2985939, at *3 n.3 (quoting *Fialkov v. Celladon Corp*., 2015 WL 11658717, at *5 (S.D. Cal. Dec. 9, 2015). "Limiting [a movant's] loss calculation by applying some *Dura*-based standard **that is not consistently applied by courts at the lead-plaintiff stage of litigation** would serve only to burden [the movant] and the potential class." *Id*. (emphasis added). Judge Willett's decision that the application of *Dura* (proving proximate cause) at the lead plaintiff stage was premature is well reasoned and cannot be said to be clearly erroneous or contrary to law. *See* Fed. R.

Civ. P 72(a) ("The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."); *see also In re WatchGuard Sec. Litig.*, 2005 WL 8188936, at *4 n.6 (W.D. Wash. July 13, 2005) (declining to apply *Dura* at the lead plaintiff appointment stage because "numerous factors may affect the price of a security" and "a court should not guess about the effect of these as-yet-unknown factors in selecting a lead plaintiff").

### 2.    Whether Cherches and Zvagelsky are Net Gainers

Next, in addressing the unique defense arguments in the R&R, Judge Willett found Scarborough's argument that the duo purportedly earned more on their relevant options investments than they lost on their relevant common stock investments speculative, and thus legally insufficient to rebut the 'most adequate plaintiff' presumption in Cherches and Zvagelsky's favor." (Doc. 35 at 9).  She specifically stated that "Cherches and Zvagelsky's stock losses of $2,100,266 (calculated using the LIFO methodology) exceed their options profits of $631,464 (calculated using the LIFO methodology), which ***undermines claims that Cherches and Zvagelsky are net gainers***."  (*Id.*) (emphasis added).

Objecting to this finding, Scarborough says that "Judge Willett imported her LIFO loss analysis from the second step of the PSLRA process (determining which movant has the largest financial interest) into the third step of the PSLRA process (determining whether the presumptively most adequate plaintiff is subject to a unique defense)." (Doc. 36 at 9). Movant Scarborough avers that Judge Willett erred by erroneously rejecting that Cherches and Zvagelsky would be subject to the unique defense that they are net gainers.[5] (Doc. 36 at 9).

Speculation is "insufficient to rebut the lead plaintiff presumption[.]"  *Armour v. Network Associates, Inc.*, 171 F.Supp.2d 1044, 1054 (N.D. Cal. 2001).  Net purchasers, as

---

[5] In his original Response to Cherches and Zvagelsky's Motion, Movant Scarborough argued, in pertinent part, that Cherches and Zvagelsky were "atypical, inadequate, and subject to unique defenses" because they are "net gainers [as] the proceeds they received from selling options contracts during the class period swamp their potentially recoverable stock losses[.]"  (Doc. 29 at 8).

opposed to net sellers,[6] "have a greater interest in a securities lawsuit because a net purchaser was induced by the fraud to purchase shares and has been left 'holding the bag' when the fraud is eventually revealed." *Perlmutter*, 2011 WL 566814, at *8–9. "In contrast, a net seller arguably profits more from the fraud than suffers from it." *Id*. But if a net seller is also a net loser, courts have held that such "a movant should have no trouble proving damages and, therefore, is qualified to serve as lead plaintiff." *Richardson v. TVIA, Inc.*, 2007 WL 1129344, at *3 (N.D. Cal. Apr. 16, 2007) (collecting cases). "There is no requirement at this early stage to prove a defense, only to show a degree of likelihood that a unique defense might play a significant role at trial." *In re Netflix, Inc., Sec. Litig*., 2012 WL 1496171, at *5 (N.D. Cal. Apr. 26, 2012). The point of this requirement is "not to adjudicate the case before it has even begun, but rather to protect the absent class members from the expense of litigating defenses applicable to lead plaintiffs but not to the class as a whole." *Id.*

When addressing which Movant had the largest financial interest at step two, Judge Willett found that the application of *Dura* "at the lead Plaintiff stage" was "premature." (Doc. 35 at 4). Moving to the rebuttable presumption step, Judge Willett then found that the arguments about Cherches and Zvagelsky being "net gainers" were undermined because their stock losses exceed their options profits. (*Id*. at 9). In other words, they are net purchasers who suffered a net loss. (*See id*.) She was able to find so, because under a LIFO methodology, their losses were $2,100,266.00 but their options profits amounted to a gain of $631,464.00 (*Id*.) When combined, Cherches and Zvagelsky therefore suffered a net loss of $1,468,802.00. (*See id*.) Indeed, as Cherches and Zvagelsky now point out, "[i]f *Dura*-related factors are too speculative for consideration in calculating a movant's financial interest—a finding in the R&R that Scarborough has not disputed—then they are equally speculative in the context of rebutting the 'most adequate plaintiff presumption'

---

[6] A "net seller" refers to an individual who has "sold more stock during the putative class period than [they] purchased." *Hodges*, 2009 WL 5125917, at *2. Whether someone is a net seller or purchaser is different from whether they are a net gainer or loser. *Perlmutter*, 2011 WL 566814, at *8. Here, Cherches and Zvagelsky are net purchasers because they bought more shares than what they sold and they are also net losers because they lost more money than what they gained in profit. (*See* Doc. 35 at 9; Doc. 19 at 6–7).

(i.e., at step three of the statutory analysis)."  (Doc. 37 at 8).

Because Judge Willett found that the LIFO methodology is "rational and consistently applied" and that applying *Dura* "at the lead plaintiff stage" is premature, it was not clearly erroneous to calculate Cherches and Zvagelsky's ultimately suffered a net loss of $1,468,882.00.  (*See* Doc. 35 at 9).  Cherches and Zvagelsky noted that during the class they collectively purchased 787,409 shares of AMMO common stock, 52 shares of AMMO Preferred Stock, and 14,031 AMMO options contracts.  (Doc. 19 at 6).  Cherches and Zvagelsky stated that they expended $3,918,833.00 on these transactions; retained 166,000 of their shares of AMMO common stock and 1,660 open AMMO options contracts; and as a result of the disclosures of Defendants' alleged fraud, incurred losses of approximately $1,468,882.00.  (*Id*. at 6–7).  Cherches and Zvagelsky are net purchasers because they bought more stock during the putative class period than they sold.  (*Id*.)  Their losses exceed any profits from their options; therefore, it was speculative that they would face a unique defense that they are net gainers since they are net losers under the LIFO method.  *See Luo*, 2022 WL 2985939, at *3; *Armour*, 171 F.Supp.2d at 1054.  In sum, Judge Willett's finding that Movants Cherches and Zvagelsky were not subject to unique defenses is not clearly erroneous or contrary to law.  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).  The Court will therefore accept her recommendation as the Order of this Court.  *Id*.

Accordingly,

**IT IS ORDERED** that Plaintiff's Objection (Doc. 36) is **overruled** and the Magistrate Judge's R&R (Doc. 35) is **accepted** and **adopted** as the Order of this Court. Accordingly,

- Barrile's "Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel" (Doc. 16), Scarborough's "Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel" (Doc. 17), and Sommerville's "Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel" (Doc. 18) are **denied**;

- Cherches and Zvagelsky's "Motion for Appointment as Co-Lead Plaintiffs and Approval of their Selection of Counsel" (Doc. 19) is **granted**; and
- Cherches and Zvagelsky's selection of counsel, with Pomerantz LLP and Bronstein, Gewirtz & Grossman, LLC appointed as co-lead counsel and Keller Rohrback L.L.P. as liaison counsel for the class, is **approved**.

**IT IS FURTHER ORDERED** that on or before September 2, 2025, Co-Lead Plaintiffs shall file any amended complaint or affirm that lead Plaintiffs will stand on the original complaint.  Defendants have thirty (30) days thereafter to answer or otherwise respond to the operative complaint.

Dated this 19th day of August, 2025.

Honorable Diane J. Humetewa
United States District Judge