**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.**
Therese M. Doherty (*pro hac vice*)
TDoherty@mintz.com
LisaMarie Collins (*pro hac vice*)
LCollins@mintz.com
James Ingram (*pro hac vice*)
JIngram@mintz.com
919 Third Avenue
New York, New York 10022
Telephone:    212.935.3000
Facsimile:    212.983.3115

*Attorneys for Defendant John P. Flynn*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

Dmitry Cherches; Irene Zvagelsky; and Hideyoshi Delgado; Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

AMMO, Inc.; Fred W. Wagenhals; Christopher D. Larson; Jared R. Smith; Robert D. Wiley; and John P. Flynn,

Defendants.

Case No: CV-24-02619-PHX-DJH

**MOTION TO DISMISS THE AMENDED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANT JOHN P. FLYNN**

**(Oral Argument Requested)**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ...................................................................................... 2

LEGAL STANDARD ............................................................................................ 3

ARGUMENT ........................................................................................................ 4

I. THE COMPLAINT FAILS TO PLEAD A VIABLE CLAIM BASED UPON A FALSE OR MISLEADING STATEMENT OF MATERIAL FACT. ....................................................................................................... 4

    A. The Complaint Fails to Plead an Actionable Statement by Flynn. .............. 4

        1. Plaintiffs Fail to Plead a False or Misleading Statement by Flynn. ................................................................................ 4

        2. Forward-Looking Statements Cannot Form the Basis of a §10(b) and Rule 10b-5(b) Claim Against Flynn. ............................. 7

        3. Plaintiffs' Do Not Plead Materiality as to Flynn's Statement. .......... 8

        4. Plaintiffs Fail to Plead Facts Giving Rise to a Duty of Disclosure. .................................................................................. 9

        5. Flynn's Use of the Term "World-Class" Is Inactionable Puffery. ..................................................................................... 10

    B. The Complaint Fails to Allege Scienter as to Flynn. ................................. 11

        1. Plaintiffs Do Not Allege Facts Giving Rise to a Strong Inference of Scienter by Flynn. ....................................................... 12

        2. Plaintiffs' Effort to Recharacterize Flynn as an Officer Does Not Give Rise to a Strong Inference of Scienter. ........................... 13

            a. The Allegations Do Not Establish Flynn Was an Officer. ............................................................................... 13

            b. Flynn's Lack of Forms 4 Does Not Establish Scienter. ........ 14

    C. The Complaint Fails to Plead Loss Causation. .......................................... 15

II. THE COMPLAINT FAILS TO PLEAD A VIABLE CLAIM FOR SCHEME LIABILITY UNDER § 10(b) AND RULES 10b-5(a) AND (c). ......... 16

CONCLUSION ................................................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alavi v. Genius Brands Int'l, Inc.*, 97 F.4th 1171 (9th Cir. 2024)...................................... 4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).................................................................................. 3

*Bajjuri v. Raytheon Techs. Corp.*, 641 F. Supp. 3d 735 (D. Ariz. 2022) ....................... 8, 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).................................................................. 3

*Borteanu v. Nikola Corp.*, No. CV-20-01797-PHX-SPL, 2023 U.S. Dist.
   LEXIS 17813 (D. Ariz. Feb. 1, 2023)................................................................. 16

*Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815 (D. Ariz. 2016) ....................................... 11

*City of Deaborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech.,
   Inc.*, 856 F.3d 605 (9th Cir. 2017) ................................................................... 11

*Derric Can v. Orthologic Corp.*, No. CIV-96-1514-PHX-RCB, 1998 U.S.
   Dist. LEXIS 23734 (D. Ariz. Feb. 2, 1998)..................................................... 14

*Fosbre v. Las Vegas Sands Corp.*, No. 2:10-CV-00765-KJD-GWF, 2011
   U.S. Dist. LEXIS 94919 (D. Nev. Aug. 24, 2011) .......................................... 7

*Gompper v. VISX, Inc.*, 298 F.3d 893 (9th Cir. 2002)........................................................ 4

*Huei-Ting Kang v. Paypal Holdings, Inc.*, 620 F. Supp. 3d 884 (N.D. Cal.
   2022) ................................................................................................................. 11

*Hutton v. McDaniel*, 264 F. Supp. 3d 996 (D. Ariz. 2017) ...................................... 4, 5, 11

*In re Alphabet Secs. Litig.*, 1 F.4th 701 (9th Cir. 2021) .................................................. 12

*In re Barrick Gold Secs. Litig.*, No. 13 Civ. 3851 (SAS), 2015 U.S. Dist.
   LEXIS 43053 (S.D.N.Y. Apr. 1, 2015) ........................................................... 8

*In re Blue Earth, Inc. Secs. Litig.*, No. CV 14-08263-DSF, 2015 U.S. Dist.
   LEXIS 178032 (C.D. Cal. Nov. 3, 2015)......................................................... 16

*In re Bofl Holding, Inc. Secs. Litig.*, 977 F.3d 781 (9th Cir. 2020)................................. 15

*In re Dot Hill Sys. Corp. Secs. Litig.*, No. 06-CV-228 JLS, 2009 U.S. Dist.
   LEXIS 22022 (Mar. 18, 2009)......................................................................... 12

*In re Facebook, Inc. Secs. Litig.*, 87 F.4th 934 (9th Cir. 2023)........................................ 10

*In re Finjan Holdings, Inc. Secs. Litig.*, No. 20-cv-04289-EMC, 2021 U.S.
   Dist. LEXIS 71350 (N.D. Cal. Apr. 13, 2021) .............................................. 14

*In re FoxHollow Techs., Inc. Secs. Litig.*, 359 F. App'x 802 (9th Cir. 2009)................... 9

*In re Hansen Natural Corp. Secs. Litig.*, 527 F. Supp. 2d 1142 (C.D. Cal. Oct. 16, 2007).................................................................................................. 12

*In re Nuverra Envtl. Sols. Secs. Litig.*, No. 2:13-cv-01800-JWS, 2015 U.S. Dist. LEXIS 82781 (D. Ariz. June 23, 2015)............................................ 4, 10

*In re Silicon Graphics Secs. Litig.*, 183 F.3d 970 (9th Cir. 1999).................................... 11

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) ............................. 2, 8

*Laborers Dist. Council Constr. Indus. Pension Fund v. Sea Ltd.*, 743 F. Supp. 3d 1083 (D. Ariz. 2024)..................................................................... 17

*Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580 (9th Cir. 2008)............................................. 3

*Loos v. Immersion Corp.*, 762 F.3d 880 (9th Cir. 2014) ...................................................... 15

*Lowthorp v. Mesa Air Group Inc.*, No. CV-20-00648-PHX-MTL, 2021 U.S. Dist. LEXIS 136967 (D. Ariz. July 22, 2021) ........................................... 8

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Livingston*, 566 F.2d 1119 (9th Cir. 1978).................................................................................................. 13

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049 (9th Cir. 2008) ............................................................................................................. 11, 14

*Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097 (9th Cir. 2021) ................... 11

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268 (9th Cir. 2017) ........................................................ 5, 10

*Ronconi v. Larkin*, 253 F.3d 423 (9th Cir. 2001) ....................................................... 11, 12

*SEC v. Prince*, 942 F. Supp. 2d 108 (D.D.C. 2013) .................................................... 13, 14

*SEC v. Wagenhals*, No. 2:25-cv-04696-SMB (D. Ariz.) ..................................................... 1

*Sneed v. Talphera, Inc.*, 147 F.4th 1123 (9th Cir. 2025)..................................................... 6

*Soilworks, LLC v. Midwest Indus. Supply, Inc.*, 575 F. Supp. 2d 1118 (D. Ariz. 2008) .......................................................................................................... 11

*South Ferry LP v. Killinger*, 542 F.3d 776,784 (9th Cir. 2008)........................... 12, 13, 15

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) ....................................................... 17

*Weston Family P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611 (9th Cir. 2022).............. 4, 6, 10

*Wochos v. Tesla, Inc.*, 985 F.3d 1180 (9th Cir. 2021)..................................................... 7, 8

*Wojtunik v. Kealy*, 394 F. Supp. 2d 1149 (D. Ariz. 2005) .............................................. 14

*WPP Luxemburg Gamma Three Sarl v. Spot Runner Inc.*, No. CV-09-2487 PA (PLA), 2009 U.S. Dist. LEXIS 136316 (C.D. Cal. Sept. 14, 2009) ..................... 16

**Statutes and Rules**

15 U.S.C. § 78j(b)...................................................................................................... passim

15 U.S.C. § 78p(a) ....................................................................................................2, 13-14

15 U.S.C. § 78u-4(b) ................................................................................................. 4, 11

15 U.S.C. § 78u-5(i)(1)............................................................................................. 7, 8

15 U.S.C. § 78u-5(c)(1) ........................................................................................... 7

17 C.F.R. § 240.3b-7 ............................................................................................... 13-14

17 C.F.R. § 240.10b-5 ..............................................................................................passim

Fed. R. Civ. P. 9(b)................................................................................................... 4, 16, 17

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 3

Defendant John P. Flynn respectfully moves to dismiss the amended complaint with prejudice pursuant to Rules 9(b) and 12(b)(6), Fed. R. Civ. P., and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, *et seq.* ("PSLRA").[1]

## PRELIMINARY STATEMENT

Flynn does not belong in this case—as the original complaint made plain by omitting him entirely. Almost one year later, Plaintiffs tossed Flynn into the amended complaint as a defendant, relying on a single alleged statement by Flynn and a handful of conclusory allegations that fall woefully short of satisfying the PSLRA's stringent pleading requirements for stating a viable claim for an alleged violation of § 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder. The claims against Flynn rest on *a single statement* made during a November 2022 earnings call, where Flynn provided an "update" on Ammo's new plant in Manitowoc, Wisconsin. Compl. ¶ 106. Plaintiffs fail to plead any detailed facts establishing that the single statement attributed to Flynn was false or misleading. Nor do Plaintiffs allege facts that give rise to a strong inference of scienter as to Flynn. And Plaintiffs fail to plead particularized facts to establish that Flynn's single statement caused any investor loss. There is no alleged drop in stock price or other causal link between Flynn's statement and any investor loss.[2]

Plaintiffs attempt to manufacture liability by alleging in wholly conclusory fashion that Flynn failed to disclose that costs were "inflated" and production constraints limited

---

[1] Flynn joins in and adopts the legal arguments set forth in the Motions to Dismiss filed by Defendants Ammo, Inc., Fred Wagenhals, Jared Smith, Robert Wiley, and Christopher Larson.

[2] On December 15, 2025, the Securities & Exchange Commission ("SEC") entered an Order Instituting Cease and Desist Proceedings against Ammo, Inc., pursuant to which the SEC settled charges of alleged violations of the securities laws. *See In re Ammo, Inc. n/k/a Outdoor Holding Company*, SEC Admin. Pro. File No. 3-22571. The SEC simultaneously filed a complaint against Fred Wagenhals, Robert Wiley, and Chrisopher Larson asserting claims for alleged violations of the federal securities laws in connection with Ammo. *See SEC v. Wagenhals*, No. 2:25-cv-04696-SMB (D. Ariz.). Flynn is not mentioned in either the SEC's cease and desist order or complaint.

actual capacity.  Compl. ¶ 107.  However, they plead no facts showing Flynn owed a duty to disclose such information or that the alleged omissions rendered his statement misleading.  These fatal pleading deficiencies are not cured by Plaintiffs' bald contention that Flynn was an officer of Ammo within the meaning of Exchange Act § 16(a), 15 U.S.C § 78p(a).  Compl. ¶¶ 163-66.  There are no facts alleged that Flynn performed policy-making functions for Ammo.  Rather, the contention is supported by only a vague reference to Flynn at an industry conference as a vice president and vague allegations that Flynn performed routine work, which allegations do not establish a § 16(a) officer.

Plaintiffs fail also to plead a viable claim for scheme liability under § 10(b) and Rules 10b-5(a) or (c).  The Complaint alleges no deceptive conduct by Flynn and relies instead on impermissible group pleading.

Plaintiffs' effort to hold Flynn in this case fails because the Complaint does not allege a false or misleading statement, a duty to disclose, scienter, or loss causation as to Flynn.  Plaintiffs' claims against Flynn should be dismissed with prejudice because no amount of repleading could cure these fatal defects.

## STATEMENT OF FACTS

Flynn is alleged to have served as a "Vice President of Ammo from the beginning of the Class Period through November 2022," and subsequently as an independent contractor.  Compl. ¶ 26.  On January 5, 2021, Ammo announced "current plans" to construct the Manitowoc facility, which it described as "a best-in-class $12 million (est)…facility." *Id*. at ¶ 32; Ex. 1.[3]  "Est." is a clear reference to estimated.  The Complaint identifies a single statement made by Flynn during an earnings call almost two years later, on November 14, 2022, relating to an update on the facility, as follows:

---

[3] References to "Ex." are to the exhibits attached to the accompanying declaration of LisaMarie Collins, Esq., dated December 19, 2025.  Exhibit 1 is the press release issued by Ammo on January 5, 2021, which Plaintiffs reference at Compl. ¶ 32.  Statements in this press release form the basis of the claims against Flynn and the full context of the press release should be considered when assessing those claims.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

> I wanted to give everyone an update on the new plant.  As you are undoubtedly aware, the plant opened on time and within budget.  In and of itself, a notable achievement managed by a dedicated team in our Arizona office, in Wisconsin and because of the world-class work our contractor and his subs did in standing up that plant.
>
> ***
>
> The facility now houses equipment and machinery we have been acquiring over the past couple of years, all of which allows us to strategically and incrementally increase production with the plan to elevate loaded ammunition moving out of the 13 May shipping docks from 400 million to 1 billion, allowing AMMO to further ascend within the global ammunition marketplace among our peers.

Compl ¶ 106.  This statement forms the sole basis for Plaintiffs' claim that Flynn violated § 10(b) and Rule 10b-5(b).

Plaintiffs allege that this statement was false and misleading because (1) the facility was not "under budget" at the time,[4] but "more than twice the $12 million budget disclosed to investors," (2) it omitted that costs were "inflated" because Ammo "steered work to a related party" to build the facility, (3) the facility was not "state of the art" due to broken equipment, and (4) it omitted that production constraints were limiting actual capacity at the time.  Compl. ¶ 107.  As shown below, these allegations do not state a claim against Flynn for securities fraud in violation of § 10(b) and Rule 10b-5.

### LEGAL STANDARD

Dismissal is required where the complaint fails to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, each claim must be pleaded with sufficient detail to be "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Court need not accept as true legal conclusions, mere conclusory statements, or implausible inferences.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009).  The Court need not credit allegations "contradicting documents that are referenced in the complaint or that are properly subject to judicial notice."  *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  Courts routinely take judicial

---

[4]    Flynn stated that the facility was "within budget," not "under budget."

notice of public SEC filings, corporate press releases, and court proceedings. *Hutton v. McDaniel*, 264 F. Supp. 3d 996, 1008 (D. Ariz. 2017).

Claims sounding in fraud are subject to the heightened pleading standard imposed by Rule 9(b). Plaintiffs must plead "with particularity the circumstances constituting fraud," including "the who, what, when, where, and how of the misconduct charged." Fed. R. Civ. P. 9(b); *Weston Family P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 619 (9th Cir. 2022) (citation omitted). Securities fraud claims alleging misrepresentations and omissions must adhere to an even "more exacting" standard. *In re Nuverra Envtl. Sols. Secs. Litig.*, No. 2:13-cv-01800-JWS, 2015 U.S. Dist. LEXIS 82781, at *7-9 (D. Ariz. June 23, 2015). Pursuant to the PSLRA, such claims must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading," and "state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(1)-(b)(2). "Thus, the complaint must allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness." *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002).

## ARGUMENT

**I.   THE COMPLAINT FAILS TO PLEAD A VIABLE CLAIM BASED UPON A FALSE OR MISLEADING STATEMENT OF MATERIAL FACT.**

To state a claim under § 10(b) and Rule 10b-5(b), "plaintiffs must allege: (1) a material misrepresentation or omission (falsity), (2) made with scienter, (3) in connection with the purchase or sale of a security, (4) reliance on the misrepresentation or omission, (5) economic loss, and (6) loss causation." *Alavi v. Genius Brands Int'l, Inc.*, 97 F.4th 1171, 1180 (9th Cir. 2024). Count II falls woefully short of pleading a viable claim that Flynn violated § 10(b) and Rule 10b-5(b) and should be dismissed with prejudice.

**A.   The Complaint Fails to Plead an Actionable Statement by Flynn.**

**1.   Plaintiffs Fail to Plead a False or Misleading Statement by Flynn.**

To state an actionable material misrepresentation, Plaintiffs must "allege a misrepresentation or misleading omission with particularity and explain why it is

misleading." *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1274 (9th Cir. 2017). "[A] statement is misleading if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists." *Id*. at 1275 (internal citations omitted). The Complaint does not plead facts establishing a false or misleading statement of material fact by Flynn.

The Complaint alleges that Flynn's single statement made in November 2022, was "materially false and misleading" because Ammo admittedly "paid Larson Building over $25 million for this project, more than twice the $12 million budget disclosed to investors…." Compl. ¶ 107. Plaintiffs' reference to a $12 million budget is grossly misleading and belied by Ammo's prior public filings. Flynn's "within budget" statement is consistent with the actual budget that had been disclosed publicly by Ammo.

There is no basis for Plaintiffs' contention that Flynn was referring to the January 2021 press release announcing "Ammo's current plans . . . for constructing a best-in-class $12 million (est.), 160,000 sq. ft. facility." Compl. ¶¶ 32, 106-07. This press release clearly refers to an "estimate," not a budget. Plaintiffs disingenuously *ignore* Ammo's subsequent public filings that disclosed the evolving construction budget and provided ongoing updates of its capital expenditures in connection with the construction of the Manitowoc facility. Indeed, *after* Ammo broke ground on construction of the facility, and *before* Flynn made the November 2022 statement, Ammo made the following budget disclosures:

- On **August 16, 2021**, AMMO filed a Form 10-Q and disclosed: "During the three months ended June 30, 2021" it had used "*approximately $1.6 million* related to purchases of production equipment *and the construction of our new manufacturing facility in Manitowoc, WI.*" Ex. 2 at 31 (emphasis added).[5]

- On **November 15, 2021**, AMMO filed a Form 10-Q and disclosed: "During the six months ended September 30, 2021," it had used "*approximately $5.2 million* related to purchases of production equipment *and the construction of our new manufacturing facility in Manitowoc, WI.*" Ex. 3 at 31 (emphasis added).

---

[5] Exhibits 2-5 are Ammo's Forms 10Q and 10K, which were filed with the SEC. These Exhibits are subject to judicial notice because they are publicly available documents not subject to reasonable dispute. *See Hutton*, 264 F. Supp. 3d at 1008.

- On **February 14, 2022**, AMMO filed a Form 10-Q and disclosed: "During the nine months ended December 31, 2021," it had used "***approximately $12.9 million*** related to purchases of production equipment ***and the construction of our new manufacturing facility in Manitowoc, WI.***" Ex. 4 at 31 (emphasis added).

- On **June 29, 2022**, AMMO filed a Form 10-K and disclosed that, during the year ended March 31, 2022, it used "***approximately $19.2 million*** related to purchases of production equipment *and the construction of our new manufacturing facility in Manitowoc, WI.*" AMMO disclosed: "Construction efforts on the new manufacturing plant are approaching the end" and "we ***anticipate*** that we will continue to incur significant capital and other expenditures with respect to these facilities and ***our plans to construct a new $26 million manufacturing plant***…" Ex. 5 at 17, 37 (emphasis added).

These disclosures emphasized that the initial $12 million "est" cost set forth in the January 2021 press release was in fact an "estimate," *not* a fixed or final budget. Any reasonable investor would understand that construction projects evolve, and initial cost estimates are subject to change as scope, materials, and timelines develop. Indeed, Plaintiffs were on notice as of February 14, 2022, that the cost of equipment and construction had exceeded $12 million, and, as of June 29, 2022, that Ammo anticipated a cost of $26 million to construct the Manitowoc facility. Plaintiffs' purported reliance on an initial estimate, while ignoring several subsequent disclosures, runs afoul of settled law "presum[ing] that a reasonable investor—who has money on the line—acts with care and seeks out relevant information" and requiring that falsity be assessed alongside "other contextual information." *Sneed v. Talphera, Inc.*, 147 F.4th 1123, 1131-32 (9th Cir. 2025) (affirming dismissal where company "provided copious clarifying information" and "investors who still wanted more information could turn to [its] SEC disclosures"); *see also Weston Family P'ship*, 29 F.4th at 622 (affirming dismissal of Rule 10b-5 claim where full context showed statement would not mislead a reasonable investor).

Flynn's statement that "the plant opened…within budget" is not false or misleading, but consistent with Ammo's cost disclosure of $26 million, which is ***not*** alleged to be false.

### 2. Forward-Looking Statements Cannot Form the Basis of a §10(b) and Rule 10b-5(b) Claim Against Flynn.

Count II fails as a matter of law as against Flynn because it hinges on inherently forward-looking statements that are protected by PSLRA's safe harbor and not actionable under § 10(b) or Rule 10b-5(b). The safe harbor shields "forward-looking statements" from liability where they are accompanied by "meaningful cautionary language." 15 U.S.C. § 78u-5(c)(1). Forward-looking statements include (1) "*projection[s] of…capital expenditures*," (2) "*plans and objectives of management for future operations*," (3) "future economic performance," or (4) "the assumptions underlying or related to any [of these issues]." *Id.* at § 78u-5(i)(1). The safe harbor is "designed to protect companies and their officials when they merely fall short of their optimistic projections." *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1189 (9th Cir. 2021) (internal quotations and citation omitted). The safe harbor applies to protect Flynn's statement.

The January 2021 press release contradicts Plaintiffs' allegation that Ammo announced that construction of the Manitowoc Facility "*would* cost $12 million." Compare Ex. 1 at 1 with Compl. ¶ 32. The press release announced Ammo's "***current plans***" to construct a new manufacturing facility and stated that the "***estimated"*** (and not actual) construction cost was $12 million. Ex. 1 (emphasis added). The $12 million estimate was, by definition, a forward-looking statement of projected capital expenditure and future operations. 15 U.S.C. § 78u-5(i)(1). Moreover, those forward-looking statements were in fact accompanied by specific cautionary language that warned investors that the $12 million figure was an "estimate" and investors should not place "undue reliance" on the statement, but should consult further disclosures in the Forms 10-K or 10-Q. Ex. 1 at 2.

Courts analyzing the PSLRA's safe harbor provision consistently hold that similar statements of estimated construction costs are forward-looking statements that fall under its protection. *See, e.g.*, *Fosbre v. Las Vegas Sands Corp.*, No. 2:10-CV-00765-KJD-GWF, 2011 U.S. Dist. LEXIS 94919, at *19 (D. Nev. Aug. 24, 2011) ("The safe harbor protects the statements about the timing and cost of planned construction projects referenced in . . .

the Complaint."); *In re Barrick Gold Secs. Litig.*, No. 13 Civ. 3851 (SAS), 2015 U.S. Dist. LEXIS 43053, at *24 (S.D.N.Y. Apr. 1, 2015) (dismissing § 10(b) and Rule 10b-5 claims where "construction estimate was clearly identified as just that—an estimate—and the schedule was set out as 'expected'").

Similarly, the portion of Flynn's statement regarding AMMO's "***plan*** to elevate loaded ammunition moving out of the 13 May shipping docks from 400 million to 1 billion" is a forward-looking statement and not actionable under the PSLRA. This statement plainly reflected the "***plans*** and objectives of management" to increase production volume at a new facility. 15 U.S.C. § 78u-5(i)(1). Moreover, the November 2022 earnings call began with clear cautionary language stating that management would be making forward-looking statements, which "involve risks and other factors that may cause actual results to differ materially." Ex. 6.[6] Ammo further directed listeners to its SEC filings and accompanying press release for detailed risk disclosures. *Id*. Flynn's statement about planned production increases falls squarely within the PSLRA's safe harbor and thus is not actionable. *See, e.g.*, *Wochos*, 985 F.3d at 1192 (affirming dismissal of Rule 10b-5 claim and finding that "Tesla's goal to produce 5,000 vehicles per week is unquestionably a 'forward-looking statement' under [the safe harbor provision]").

### 3. Plaintiffs' Do Not Plead Materiality as to Flynn's Statement.

Count II fails also because the Complaint does not plead facts establishing that Flynn's statement or purported omissions were material. To plead materiality, Plaintiffs "must show with particularity how the [misconduct] affected the company's financial statements and whether they were material in light of the company's overall financial position." *Bajjuri v. Raytheon Techs. Corp.*, 641 F. Supp. 3d 735, 755 (D. Ariz. 2022)

---

[6] Exhibit 6 is the transcript of Ammo's November 14, 2022 earnings call, which forms the basis of the claims against Flynn and the full context should be considered when assessing those claims. *See Khoja*, 889 F.3d at 1002. Moreover, it is a publicly available document not subject to reasonable dispute. *See Lowthorp v. Mesa Air Group Inc.*, No. CV-20-00648-PHX-MTL, 2021 U.S. Dist. LEXIS 136967, at *16 (D. Ariz. July 22, 2021) (taking judicial notice of investor call transcript).

(internal citations and quotation marks omitted).  Where "reasonable minds could not differ" as to the materiality of an alleged misstatement or omission, "resolution as a matter of law is appropriate."  *In re FoxHollow Techs., Inc. Secs. Litig.*, 359 F. App'x 802, 804 (9th Cir. 2009).  Plaintiffs do not allege any facts—with particularity or otherwise—establishing that Flynn's November 2022 statement had any impact on Ammo's stock price, its reported financials, or its overall financial position.

Plaintiffs' assertions that Flynn "omitted that AMMO's costs were inflated because it secretly steered work to a related party contractor," and that "production constraints limited actual capacity," likewise fall far short of establishing materiality.  Compl. ¶ 107; *cf. Bajjuri*, 641 F. Supp. 3d at 755 (dismissing Rule 10b-5 claim for lack of materiality where plaintiffs allege company overpaid contractors and overcharged DOD due to lack of competitive bidding, but failed to identify which jobs, materials, or contractors were affected).  Plaintiffs do not allege how costs were inflated by the use of a related party or by how much.  "The relevant inquiry is whether Plaintiffs plausibly allege a *substantial* likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having *significantly* altered the 'total mix' of information made available."  *Id.* (emphasis in original).  Tellingly, Plaintiffs do not make any such allegations.  Nor could they given Ammo's disclosures regarding capital expenditures and operational developments related to construction of the facility.  *See* Exs. 2-5; Compl. ¶¶ 100-01.

**4.     Plaintiffs Fail to Plead Facts Giving Rise to a Duty of Disclosure.**

Plaintiffs allege that Flynn's November 2022 statement was misleading because it omitted that (a) Ammo's production capacity was limited due to production constraints (Compl. ¶ 107(c)), and (2) construction costs for the facility were "inflated" because Ammo's contractor was an alleged related party.  Compl. ¶ 107(b).  Neither theory supports a claim for a violation of § 10(b) or Rule 10b-5(b) because Flynn had no duty to disclose the allegedly omitted information**.**

"An actionable omission claim arises 'only when disclosure is necessary…to make the statements made, in the light of the circumstances under which they were made, not

misleading.'" *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund*, 845 F.3d 1268, 1278, quoting 17 C.F.R. § 240.10b-5(b).  In other words, a duty to disclose exists only where the speaker's statements would be misleading without the omitted information.  *See Weston Family P'ship*, 29 F.4th at 620.

Plaintiffs' "production constraint" theory fails because Ammo expressly *disclosed* those exact issues on the same November 2022 earnings call as Flynn's statement. Specifically, Ammo's CFO disclosed that revenue had decreased 21% year-over-year because "the move into our new facility brought production offline for a longer period than originally anticipated," and Ammo "definitely had some lost revenue due to the move into our new manufacturing facility."  Ex. 6 at 3, 6; Compl. ¶¶ 100-01. Where the company discloses the allegedly omitted facts contemporaneously, no other duty to disclose exists. *See In re Facebook, Inc. Secs. Litig.*, 87 F.4th 934, 948 (9th Cir. 2023) ("[I]f the market has already 'become aware of the allegedly concealed information,'…the [] omission 'would already be reflected in the stock price and the market will not be misled.'").

Plaintiffs' "inflated" cost theory fares no better.  Plaintiffs assert—without any factual detail—that costs to construct the facility were inflated because Ammo "secretly steered work to a related party contractor," and Flynn's failure to disclose this purported inflation rendered his statement misleading.  Compl. ¶ 107(b).  But the Complaint fails to allege *any* facts showing that Ammo's relationship with Larson Building actually inflated costs, much less that Flynn's statement that the plant was completed "within budget" was false or misleading as a result.  As this Court has held, "pleading conclusory reasons for why a statement was misleading is insufficient under the PSLRA."  *Nuverra Envtl. Sols. Secs. Litig.*, 2015 U.S. Dist. LEXIS 82781, at *14.

### 5.    Flynn's Use of the Term "World-Class" Is Inactionable Puffery.

Plaintiffs allege that Flynn violated § 10(b) and Rule 10b-5(b) because he allegedly described the facility as "state of the art," and seem to object to his praise for the "world-class work our contractor and his subs did in standing up that plant."  Compl. ¶¶ 106-07. These allegations do not suffice.  As a threshold matter, the Flynn statement quoted in the

Complaint does not include the phrase "state of the art."  To the extent Flynn used that or a similar phrase elsewhere during the November 2022 earnings call, such generalized accolades are classic puffery and not actionable under well-settled securities law.  *See Hutton*, 264 F. Supp. 3d at 1020 ("Numerous courts have held that terms like 'state-of-the-art'… are mere puffery.") (collecting cases); *see also Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 829 (D. Ariz. 2016); *Soilworks, LLC v. Midwest Indus. Supply, Inc.*, 575 F. Supp. 2d 1118, 1133 (D. Ariz. 2008); *Huei-Ting Kang v. Paypal Holdings, Inc.*, 620 F. Supp. 3d 884, 898-99 (N.D. Cal. 2022).

## B.    The Complaint Fails to Allege Scienter as to Flynn.

Count II fails to plead a viable § 10(b) and Rule 10b-5(b) claim against Flynn because the Complaint utterly fails to plead facts that give rise to a strong inference that Flynn acted with the requisite scienter:  "intent to deceive, manipulate, or defraud" or "deliberate recklessness." *City of Deaborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 619 (9th Cir. 2017) (citation omitted).  Under the PSLRA's heightened pleading standard, Plaintiffs must "state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind – that is, that he acted with intentionality or deliberate recklessness." 15 U.S.C. § 78u-4(b)(2); *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001) (emphasis added).  Plaintiffs must "state specific facts indicating no less than a degree of recklessness that strongly suggests actual intent." *In re Silicon Graphics Secs. Litig.*, 183 F.3d 970, 979 (9th Cir. 1999).  Deliberate recklessness "is not mere recklessness." *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1106 (9th Cir. 2021).  It requires an "extreme departure from the standards of ordinary care" that "presents a danger" of misleading investors "that is so obvious that [the defendant' must have been aware of it." *Id.*  The "inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1066 (9th Cir. 2008), quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 314 (2007).

### 1. Plaintiffs Do Not Allege Facts Giving Rise to a Strong Inference of Scienter by Flynn.

The Complaint fails to allege any facts—much less the specific, contemporaneous facts required by the PSLRA—that suggest that Flynn acted with intent to defraud or with deliberate recklessness. The Complaint alleges only in vague and conclusory fashion that Flynn was a "senior manager" who had "knowledge of the details of Ammo's internal affairs" that were allegedly inconsistent with his statement on the November 2022 earnings call. Compl. ¶ 197. This allegation falls far short of alleging facts to support a strong inference of the requisite scienter because it fails to allege what Flynn purportedly knew, when he knew it, or how that purported knowledge rendered his November 2022 statement knowingly false or a product of deliberate recklessness. *See Ronconi*, 253 F.3d at 431 (dismissing complaint for failure to allege facts showing statement was false when made or that defendants knew or recklessly disregarded its falsity). Nor does the Complaint allege any "specific contemporaneous statements or conditions" demonstrating its intentionally false or misleading nature. *See id.* at 432. The law is well-settled that generalized allegations of managerial status or hands-on involvement are patently insufficient under the PSLRA. *See South Ferry LP v. Killinger*, 542 F.3d 776,784 (9th Cir. 2008); *In re Dot Hill Sys. Corp. Secs. Litig.*, No. 06-CV-228 JLS (WMc), 2009 U.S. Dist. LEXIS 22022, at *32-33 (Mar. 18, 2009).

Plaintiffs' conclusory assertion that "Defendants [] had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive the Plaintiffs" (Compl. ¶ 197) is precisely the type of allegation courts in the Ninth Circuit reject. *See, e.g., In re Hansen Natural Corp. Secs. Litig.*, 527 F. Supp. 2d 1142, 1155 (C.D. Cal. Oct. 16, 2007) (dismissing complaint for failure to allege facts giving rise to a strong inference of scienter on the part of each individual defendant). Plaintiffs' boilerplate, group allegation—that "Defendants…acted with reckless disregard for the truth" by failing to ascertain and disclose facts that were "readily available" does not save the fatal pleading defects. Compl. ¶ 197. The Complaint identifies no specific

facts that Flynn failed to ascertain, no information he allegedly possessed, and no circumstances suggesting his statement "was an extreme departure from the standards of ordinary care." *South Ferry*, 542 F.3d at 783. *Compare* Compl. ¶¶ 106-07 *with In re Alphabet Secs. Litig.*, 1 F.4th 701, 706 (9th Cir. 2021) (scienter was sufficiently pleaded where, unlike here, "[t]he Complaint allege[d] with particularity" allegations that defendants had actual access to information outlining the scope of the problem before making a misleading statement); *see also South Ferry*, 542 F.3d at 783.

In sum, the Complaint fails to allege facts giving rise to a strong inference that Flynn acted with fraudulent intent or deliberate recklessness, and its reliance on conclusory or generalized allegations falls far short of the PSLRA's demanding scienter standard.

### 2.    Plaintiffs' Effort to Recharacterize Flynn as an Officer Does Not Give Rise to a Strong Inference of Scienter.

Plaintiffs allege, in wholly conclusory fashion, that Flynn was an undisclosed "officer" of Ammo under Exchange Act § 16(a).[7] Plaintiffs allege that, as a purported officer, Flynn's failure to file a Form 4s showing his purchase and sale of Ammo stock "enhances an inference of fraud." Compl. ¶¶ 162-63. Plaintiff's theory is a thinly veiled attempt to manufacture scienter as to Flynn where none exists. Plaintiffs fail to allege facts that connect any dots between Flynn's purported officer status and whether Flynn acted with the requisite scienter during the November 2022 earnings call.

### a.    The Allegations Do Not Establish Flynn Was an Officer.

Exchange Act Rule 3b-7 defines an "executive officer" as someone who leads a principal business unit or performs a policy-making function for the company. 17 C.F.R. § 240.3b-7. Courts apply a functional test, focusing on actual duties—not titles or ceremonial roles. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Livingston*, 566 F.2d 1119, 1122 (9th Cir. 1978) (holding that "job labels [are] no more significant" when 'titular' and not real") (citation omitted); *SEC v. Prince*, 942 F. Supp. 2d 108, 133 (D.D.C.

---

[7]    Section 16(a) requires "[e]very person…who is a director or an officer of the issuer of such security" to file the required statements with the Commission.

2013) (applying Ninth Circuit law and requiring actual policy-making authority).

Plaintiffs allege that Flynn was labeled a "Key Employee" in a merger agreement, introduced at an industry conference as a vice president who heads military sales, and negotiated to secure the land for Ammo to construct the facility. Compl. ¶¶ 165-67. From these threadbare facts, Plaintiffs leap to the conclusion that Flynn performed a policy-making function and thus was an officer. Compl. ¶ 168. None of these paltry allegations establish that Flynn controlled a business unit, made company-wide decisions, or exercised policy-making authority for Ammo, as required to constitute an officer under Rule 3b-7. *See Prince*, 942 F. Supp. 2d at 136 (rejecting officer status for CFO/VP who "exercised significant influence" but lacked authority to "make or implement" policy decisions).

### b.    Flynn's Lack of Forms 4 Do Not Establish Scienter.

Flynn had no obligation to file Forms 4 disclosing trades of Ammo shares because he was not an Ammo officer. Moreover, the Complaint does not allege—conclusorily or otherwise—that Flynn purchased or sold Ammo stock or engaged in any "contemporaneous or unusual trading," let alone profited from it. The Ninth Circuit "has consistently refused to infer scienter from stock sales absent specific allegations of prior trading history." *Wojtunik v. Kealy*, 394 F. Supp. 2d 1149, 1166–67 (D. Ariz. 2005), citing *In re Vantive Corp. Secs. Litig.*, 283 F.3d 1079, 1092 (9th Cir. 2002) (stock sales are "not inherently suspicious" unless "dramatically out of line" with prior practices); *see also Metzler*, 540 F.3d at 1067 (only stock sales that are "dramatically out of line" with prior trading practices can support scienter); *Derric Chan v. Orthologic Corp.*, No. CIV-96-1514-PHX-RCB, 1998 U.S. Dist. LEXIS 23734, at *72 (D. Ariz. Feb. 2, 1998) (no scienter without allegations of unusual trading).

This pleading omission is fatal because Plaintiffs fail to plead any plausible financial motive by Flynn. The Complaint does not allege any personal profit, or any incentive from which to infer fraudulent intent by Flynn. Absent such allegations, Plaintiffs' scienter theory collapses, and their claims against Flynn must be dismissed. *See In re Finjan Holdings, Inc. Secs. Litig.*, No. 20-cv-04289-EMC, 2021 U.S. Dist. LEXIS 71350, at *34

(N.D. Cal. Apr. 13, 2021), quoting *Prodanova*, 993 F.3d at 1103 ("if a complaint fails to plead a plausible motive for the allegedly fraudulent action, the plaintiff will face a substantial hurdle in establishing scienter").

Plaintiffs speculate that discovery would reveal Flynn's alleged trading. Compl. ¶ 171. However, Plaintiffs' unfounded speculation does not cure the pleading defect. The PSLRA requires Plaintiffs to state with particularity the factual foundation of their scienter allegation. It is insufficient to contend that "unspecified sources will reveal, after appropriate discovery, facts that will validate" their claim. *South Ferry*, 542 F.3d at 783.

Plaintiffs' effort to manufacture scienter from Flynn's supposed officer status falls far short of pleading facts giving rise to a strong inference of scienter against Flynn.

### C.    The Complaint Fails to Plead Loss Causation.

Count II fails as a matter of law because there are no allegations of fact that establish loss causation. *See In re Bofl Holding, Inc. Secs. Litig.*, 977 F.3d 781, 786 (9th Cir. 2020). The Complaint is utterly devoid of factual allegations showing that Flynn's alleged misstatement "caused the loss" for which Plaintiffs seek to recover damages. *Id.* at 789; *Loos v. Immersion Corp.*, 762 F.3d 880, 887 (9th Cir. 2014) ("loss causation refers to the causal relationship between a material representation and the economic loss suffered by an investor"); *see also Bofl Holding*, 977 F.3d 781 at 790 ("a disclosure followed by an immediate drop in stock price is more likely to have caused the decline").

The Complaint asserts that Flynn's statement made during the November 2022 earnings call was false and misleading because, *inter alia*, "the Company later admitted, it paid Larson Building over $25 million." Compl. ¶ 107. Yet Plaintiffs fail to allege when this supposed admission occurred, what effect, if any, it had on Ammo's stock price, or how Flynn's statement was a "substantial cause" of Plaintiffs' alleged loss. *See Loos*, 762 F.3d 880 at 887. Plaintiffs glaringly omit that Ammo's June 29, 2022 Form 10-K—filed more than 5 months before Flynn's statement—*already disclosed* that Ammo would "continue to incur significant capital and other expenditures with respect to … plans to construct a new $26 million manufacturing plant." Ex. 5 at 17. Flynn's statement merely

confirmed information already known by the market, which cannot establish loss causation. *See In re Blue Earth, Inc. Secs. Litig.*, No. CV 14-08263-DSF (JEMx), 2015 U.S. Dist. LEXIS 178032, at *7 (C.D. Cal. Nov. 3, 2015) ("disclosure of confirmatory information— or information already known by the market—will not cause a change in the stock price").

The failure to tie Flynn's alleged misstatement to any actual loss dooms Plaintiffs' ability to plead loss causation.

## II.    THE COMPLAINT FAILS TO PLEAD A VIABLE CLAIM FOR SCHEME LIABILITY UNDER § 10(B) AND RULES 10B-5(A) AND (C).

Count I attempts to plead a claim for scheme liability in violation of § 10(b) and Rules 10b-5(a) and (c), but fails to plead a viable claim against Flynn.

Section 10(b) makes it unlawful to "use or employ, in connection with the purchase or sale of any security" a "manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b). Rules 10b-5(a) and (c) make it unlawful to "employ any device, scheme, or artifice to defraud" or "engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." 17 C.F.R. § 240.10b-5(a), (c). To establish "scheme liability," Plaintiffs must allege "with particularity" "that *each defendant* committed their own deceptive act in furtherance of the scheme." *Borteanu v. Nikola Corp.*, No. CV-20-01797-PHX-SPL, 2023 U.S. Dist. LEXIS 17813, at *73 (D. Ariz. Feb. 1, 2023)(emphasis in original).[8] It is not enough to allege that the "*transaction* in which a defendant was involved had a deceptive purpose and effect; the defendant's *own conduct* contributing to the transaction or overall scheme must have had a deceptive purpose and effect." *Id.* at *74 (citation omitted) (emphasis in original); *see also WPP Luxemburg Gamma Three Sarl v. Spot Runner Inc.*, No. CV-09-2487 PA (PLA), 2009 U.S. Dist. LEXIS 136316, at *15 (C.D. Cal. Sept. 14, 2009) (dismissing claim for scheme liability because complaint "does

---

[8]    "Although not subject to the PSLRA pleading requirements, the conduct underlying claims for scheme liability must be alleged with particularity under Rule 9(b)." *Borteanu*, 2023 U.S. Dist. LEXIS 17813, at *75-76 (citation omitted).

not adequately plead facts giving rise to a strong inference of scienter for each defendant").

Plaintiffs allege no conduct *by Flynn* contributing to an alleged scheme to defraud Ammo's shareholders. Instead, Plaintiffs resort to improper group pleading and allege only that *all* "Defendants" engaged in a scheme "to reassure investors that the Company was in compliance with all applicable laws, conceal that an executive officer of the Company was receiving kickback payments, concealing related party construction contracts from investors, and assuring investors that the new facility was state of the art, when in fact it was mired in production deficiencies." Compl. ¶ 187. Group pled allegations of this sort do not, and cannot, establish scheme liability against an individual defendant like Flynn. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'"); *see also Laborers Dist. Council Constr. Indus. Pension Fund v. Sea Ltd.*, 743 F. Supp. 3d 1083, 1111 (D. Ariz. 2024) ("To the extent that Plaintiff asserts Chen's liability by virtue of his position as an executive officer of the company, district courts within this circuit have largely rejected the 'group pleading doctrine' as a means of establishing falsity under § 10(b).").

Moreover, the only conduct arguably attributable to Flynn is representing that the "new facility was state of the art." Compl. ¶ 106. But rather than establishing Flynn's own conduct contributed to an overall scheme with a deceptive purpose and effect, such "state-of-the-art" statements amount to nothing more than inactionable puffery. *See* § I(A)(5), *supra*. For this reason, Plaintiffs' attempt to establish scheme liability against Flynn fails.

## CONCLUSION

For all of the foregoing reasons, Flynn respectfully requests the Court to dismiss the amended complaint as against Flynn with prejudice.

Dated:  December 19, 2025

**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.**

By:  /s/ Therese M. Doherty
Therese M. Doherty (*pro hac vice*)
LisaMarie Collins (*pro hac vice*)
James A. Ingram (*pro hac vice*)
919 Third Avenue
New York, NY  10022
Tel:  212.935.3000

*Attorneys for Defendant John P. Flynn*

## **L.R. CIV. 12.1(C) CERTIFICATION**

Pursuant to L.R. Civ. 12.1(c), I certify that counsel for John P. Flynn conferred with Plaintiffs' counsel about the issues in this motion during a video conference on December 8, 2025.  The parties were unable to agree that the pleading was curable in any part by a permissible amendment offered by the pleading party.

/s/ *Therese M. Doherty*

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2025, a true and correct copy of the foregoing document was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

**KELLER ROHRBACK LLP**
Gary A. Gotto
3101 North Central Ave., Ste. 1400
Phoenix, AZ 85012-2600
Tel: 602.230.6322
ggotto@kellerrohrback.com

*Liaison Counsel for Plaintiffs*

**POMERANTZ LLP**
Joshua B. Silverman (*pro hac vice*)
Brian P. O'Connell (*pro hac vice*)
Jianan Jiang (*pro hac vice*)
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Tel: 312.377.1181
jbsilverman@pomlaw.com
boconnell@pomlaw.com
ajiang@pomlaw.com

*Co-Lead Counsel for Plaintiffs*

**BRONSTEIN GEWITZ & GROSSMAN LLC**
Peretz Bronstein (*pro hac vice*)
Michael Boyle (*pro hac vice*)
60 East 42nd St., Ste. 4600
New York, NY 10165
Tel: 212.697.6484
peretz@bgandg.com
mboyle@bgandg.com

*Co-Lead Counsel for Plaintiffs*

**BALLARD SPAHR LLP**
Brian Schulman
1 E Washington St., Ste. 2300
Phoenix, AZ 85004-2555
(602) 798-5419
SchulmanB@ballardspahr.com

M. Norman Goldberger (*pro hac vice*)
William B. Igoe (*pro hac vice*)
1735 Market St., 51st Floor
Philadelphia, PA 19103
Telephone: 215-864-8850
Email: goldbergerm@ballardspahr.com
Email: igoew@ballardspahr.com

*Attorneys for Defendants AMMO, Inc. and Jared R. Smith*

**DLA PIPER LLP (US)**
Kyle Orne
kyle.orne@us.dlapiper.com
2525 East Camelback Road Suite 1000
Phoenix, Arizona 85016
Tel: 480.606.5100

Jason S. Lewis (*pro hac vice forthcoming*)
jason.lewis@us.dlapiper.com
Jason M. Hopkins (*pro hac vice forthcoming*)
jason.hopkins@us.dlapiper.com
1900 North Pearl Street, Suite 2200
Dallas, Texas 75201
Tel: 214.743.4546

*Attorneys for Defendant Chris Larson*

**SALLAH ASTARITA & COX LLC**
James D Sallah (*pro hac vice*)
Jeffrey L Cox (*pro hac vice*)
3010 N Military Trail, Ste. 210
Boca Raton,FL 33431
(561) 989-9080
jds@sallahlaw.com
jlc@sallahlaw.com

*Attorneys for Defendant Fred W. Wagenhals*

**NORTON ROSE FULBRIGHT US LLP**
Laura Perlov (*pro hac vice*)
Laura.perlov@nortonrosefulbright.com
Tel: (303) 801-2682
K. Austin Hartley (*pro hac vice*)
Austin.hartley@nortonrosefulbright.com
1225 Seventeenth Street, Suite 3050,
Denver, Colorado 80202

Andrey Spektor (*pro hac vice*)
Andrey.Spektor@nortonrosefulbright.com
Tel: (212) 318-3130
Maryclaire Kennedy (*pro hac vice*)
Maryclaire.Kennedy@nortonrosefulbright.com
1301 Avenue of the Americas
New York, New York 10019

*Attorneys for Defendant Robert D. Wiley*

/s/ *Therese M. Doherty*