Brian Schulman
BALLARD SPAHR LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5407
Fax: 602.457.0115
Email: schulmanb@ballardspahr.com

M. Norman Goldberger (*pro hac vice*)
William B. Igoe (*pro hac vice*)
BALLARD SPAHR LLP
1735 Market St., 51st Floor
Philadelphia, PA 19103
Telephone: 215-864-8850
Email: goldbergerm@ballardspahr.com
Email: igoew@ballardspahr.com

*Counsel for Defendants AMMO, Inc. and
Jared R. Smith*

[Additional counsel on signature page]

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Dmitry Cherches; Irene Zvagelsky; and Hideyoshi Delgado; Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMMO, Inc.; Fred W. Wagenhals; Christopher D. Larson; Jared R. Smith; Robert D. Wiley; and John P. Flynn,<br><br>Defendants. | CASE NO. CV-24-02619-PHX-DJH<br><br>**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**<br><br>**(Oral Argument Requested)** |

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

**TABLE OF CONTENTS**

I.   INTRODUCTION                                                                          1

II.  ARGUMENT                                                                              1

A.   **Plaintiffs' Fail to Plead a Strong Inference of Scienter as to Alleged
     Misrepresentations and Omissions Regarding Larson**                                  1

  1. Alleged Corrective Disclosures Do Not Establish Scienter                             1

  2. CW Allegations Do Not Give Rise to a Strong Inference of Scienter                    2

  3. The "Core Operations" Allegations Relating to Larson Are Improper                    4

B.   **The Complaint Fails to Plead Fraud Relating to Manitowoc**                         4

  1. Plaintiffs Fail to Plead Any Actionable Statements                                   4

    a. Statements Regarding "Ability to Scale" and Capacity Fall Within the PSLRA's
       Safe Harbor                                                                        5

    b. Statements About Cost of Manitowoc Were Forward-Looking                            6

    c. Plaintiffs Cannot Rely on Statements of Corporate Optimism Made After the
       Rifle Press Failure to State a Claim                                               6

  2. Plaintiffs Fail to Plead Scienter                                                    7

    a. Supposed "Admissions" Do Not Establish Scienter                                    7

    b. Plaintiffs' Unreliable CWs Do Not Establish Scienter                               8

    c. The "Core Operations" Theory Does Not Apply                                        8

C.   **Plaintiffs Fail to Plead Loss Causation with Particularity**                       9

D.   **Plaintiffs Fail to Adequately Plead Scheme Liability**                            15

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apple Inc. Sec. Litig.*,
   2020 WL 6482014 (N.D. Cal. Nov. 4, 2020)...................................................................7

*Berson v. Applied Signal Tech., Inc.*,
   527 F.3d 982 (9th Cir. 2008)...........................................................................................9

*In re Blue Earth, Inc. Sec. Class Action Litig.*,
   No. CV 14-08263, 2015 WL 12001274 (C.D. Cal. Nov. 3, 2015)................................10

*In re BofI Holding, Inc. Sec. Litig.*,
   977 F.3d 781 (9th Cir. 2020)..........................................................................................10

*Conn. Ret. Plans & Trust Funds v. Amgen Inc.*,
   660 F.3d 1170 (9th Cir. 2011)........................................................................................10

*E. Olman J:or Fonder AB v. NVIDIA Corp.*,
   81 F.4th 918 (9th Cir. 2023) ............................................................................................3

*In re eHealth Inc. Sec. Litig.*,
   No. 20-CV-02395, 2021 WL 5855864 (N.D. Cal. Aug. 12, 2021) ...............................12

*Lomingkit v. Apollo Education Group Inc.*,
   No. CV-16-00689, 2017 WL 633148 (D. Ariz. Feb. 16, 2017).......................................4

*Lorenzo v. SEC*,
   587 U.S. 71 (2019) .........................................................................................................15

*Matthews v. Apple, Inc.*,
   769 F.Supp.3d 999 (N.D. Cal. 2024) ...............................................................................4

*In re Medicis Pharma Corp. Sec. Litig.*,
   689 F.Supp.2d 1192 (D. Ariz. 2009)................................................................................4

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W.*
   *Holding Corp.*,
   320 F.3d 920 (9th Cir. 2003)............................................................................................6

*Omnicare v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   575 U.S. 175 (2015) .........................................................................................................2

*In re Oracle Corp. Sec. Litig.*,
   627 F.3d 376 (9th Cir. 2010).....................................................................................11, 12

*Reese v. Malone,*
   747 F.3d 557 (9th Cir. 2014).................................................................................................. 9

*South Ferry v. Killinger,*
   542 F.3d 776 (9th Cir. 2008).................................................................................................. 8

*In re SunPower Corp. Sec. Litig.,*
   769 F. Supp. 3d 1042 (N.D. Cal. 2025) ................................................................................. 2

*United Ass'n Nat'l Pension Fund v. Carvana Co.,*
   759 F. Supp. 3d 926 (D. Ariz. 2024)..................................................................................... 15

*Wochos v. Tesla, Inc.*
   985 F.3d 1180 (9th Cir. 2021)................................................................................................ 5

*Zucco Partners, LLC v. Digimarc Corp.,*
   552 F.3d 981 (9th Cir. 2009).......................................................................................... 3, 4, 9

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

Defendants AMMO, Inc. ("Ammo" or "the Company") and Jared R. Smith (collectively, "Ammo") respectfully submit this Reply Brief in Support of their Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 42) ("Complaint" or "Compl.").

## I.   INTRODUCTION

Plaintiffs' Complaint fails because it does not (1) raise a strong inference of scienter; (2) allege actionable misstatements regarding the Manitowoc Facility ("Manitowoc"); or (3) plead loss causation with particularity.

First, Plaintiffs' allegations do not create a strong inference of scienter. Plaintiffs largely rely on supposed after-the-fact corrective disclosures, but none of them raise an inference that defendants knew **at the time** that Ammo's disclosures were false or misleading. And Plaintiffs cannot fix this problem by relying on supposed CW allegations that fail the Ninth Circuit's stringent standards for reliability.

Second, Plaintiffs do not plead actionable misrepresentations with respect to Manitowoc. The Complaint illustrates that, far from concealing production problems at the plant, Ammo disclosed them consistently for years. Plaintiffs attempt to argue a theory of alleged realization of risks, but that only works for risks that are concealed, not disclosed.

Third, Plaintiff's opposition (ECF No. 73) ("Opp.") only confirms Plaintiffs' failure to plead loss causation across the putative five-year class period. Plaintiffs rely on supposed disclosures of information that, their Complaint shows, was already baked into Ammo's share price when disclosed, or showed that risks Ammo previously disclosed had occurred.

At root, Plaintiffs' theory is that, because Ammo's share price dropped in the aggregate over a five-year period, fraud must have occurred and it must have caused their losses. That is hindsight pleading insufficient to state loss causation.

## II.   ARGUMENT

### A.   Plaintiffs' Fail to Plead a Strong Inference of Scienter as to Alleged Misrepresentations and Omissions Regarding Larson

#### 1.   Alleged Corrective Disclosures Do Not Establish Scienter

As Ammo explained in its Motion to Dismiss (ECF No. 66) ("MTD"), the relevant question is whether Plaintiffs plead with particularity that defendants knew Larson served

1

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

as an officer in violation of the SEC Consent Decree. MTD at 7-8. Ammo showed that determining whether someone qualifies as an officer is a complicated matter of judgment or opinion. *Id.* The Complaint fails to plead, as it must, that defendants did not in fact believe that Larson was acting in compliance with the Consent Decree at the time of the challenged disclosures. *See Omnicare v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186 (2015) (a sincerely held opinion of compliance with the law, even if ultimately incorrect, is not actionable for fraud).

In response, Plaintiffs repeatedly assert that Ammo later "admitted" to Larson's role as an executive officer of the Company. *E.g.*, Opp. at 5-6, 15, 18, 37, 40, 42. But as a matter of law and logic, a corrective disclosure alone is insufficient to plead Ammo knew of the alleged falsity of statements or omissions regarding Larson's role **when they were made**. MTD at 8; *see In re SunPower Corp. Sec. Litig.*, 769 F. Supp. 3d 1042, 1058 (N.D. Cal. 2025) ("There are no specific allegations, however, indicating that at the time of these statements—months before [the restatement] was announced—[defendants] knew that the…financials were not prepared in accordance with GAAP[.]").

Plaintiffs also aver that scienter can be inferred from Larson's high salary, the various activities he allegedly undertook, and his sharing an office with Wagenhals. Opp. at 41-42. But Plaintiffs cannot establish scienter by regurgitating actions Larson took at the Company and his high salary. Employees at hundreds of companies have high salaries and make important decisions at those companies and yet are not officers of those companies. Salary and duties do not determine the status of an officer and cannot, as plaintiffs claim, "erase any doubt that Larson was serving in this function in violation of the Consent Decree." *Id.* at 42.

2. <u>CW Allegations Do Not Give Rise to a Strong Inference of Scienter</u>

Plaintiffs attempt to fill the gaps in their scienter allegations by pointing to information from supposed CWs. But these allegations fail the 9th Circuit's two requirements: the CWs are not described with sufficient particularity to be reliable, and

2

their statements are not indicative of scienter. MTD at 9 (*citing Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009)).

In response, Plaintiffs first argue that "[a]ll CWs who provide accounts regarding Larson's involvement with the Company either reported to Wagenhals (CW1) or were one level down in the organization from reporting to a named Defendant." Opp. at 50. But merely reciting a CW's job title and reporting line does not suffice to "allege with particularity facts supporting [plaintiffs'] assumptions that the confidential witnesses were in a position to be personally knowledgeable of the information alleged." *Zucco*, 552 F.3d at 996. Similarly, Plaintiffs' assertion that it "violates controlling authority" to aruge that "CWs must interact with individual defendants" responds to an argument Ammo did not make. Opp. at 51. Rather, Ammo explained there must be some "connection" or "link" between the CWs and the defendants to show the CWs would have personal knowledge of defendants' decision-making. *See* MTD at 10, 12. Indeed, in the case Plaintiffs cite, *E. Olman J:or Fonder AB v. NVIDIA Corp.*, the complaint described CW's personal knowledge with particularized facts: CW was the account manager responsible for the adverse sales data that CW alleges defendants knew; CW personally input the sales data into the company's database and could see the individual defendants had access to the information; and CW's manager told CW he attended a meeting with the individual defendants where the negative sales data was reported. *See* 81 F.4th 918, 938-39 (9th Cir. 2023). Here, by contrast, Plaintiffs allege at most a reporting structure but say nothing about why the CWs had personal knowledge of defendants' understanding of whether Larson's role violated the SEC Consent Decree.

As for the 9th Circuit's second requirement, other than two conclusory statements from CW1 and CW3, the statements from the CWs are not probative of scienter because they only relate to Larson's involvement at the company—i.e., Larson and Wagenhals ran the company together (CW1, CW2, CW4), Larson made financial decisions for the company and "drove" the GunBroker Merger (CW1), Opp. at 49-50—and not any defendant's state of mind. *See Zucco,* 552 F.3d at 995. And the statements from CW1 (that

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

"the Company concealed Larson's role … due to the SEC Consent Decree") and CW3 (that CW3 "was informed by top management at the Company to keep Larson's involvement [confidential]"), Opp. at 49, lack particularized facts "to establish that the witness reporting them has reliable personal knowledge of the defendants' mental state." *Zucco*, 552 F.3d at 998; *see also In re Medicis Pharma Corp. Sec. Litig.*, 689 F.Supp.2d 1192, 1210 (D. Ariz. 2009) (CW statement that the defendants told her to do something illegal was not probative of scienter because it "does not specify when alleged conversations with the Defendants took place; nor does it provide details about the content of those conversations.").

        3.     The "Core Operations" Allegations Relating to Larson Are Improper

Plaintiffs argue for the first time in their opposition that Larson's role in the company was a "core operation," which supposedly establishes scienter. *See* Opp. at 44-45. These allegations are improper: they appear nowhere in the Complaint, and Plaintiffs cannot amend through opposition briefing. *E.g.*, *Matthews v. Apple, Inc.*, 769 F.Supp.3d 999, 1015 (N.D. Cal. 2024) (rejecting plaintiff's attempt to amend complaint through opposition to a motion to dismiss). Further, Plaintiffs allege nothing to show that the nuanced legal analysis of whether Larson's actions violated the SEC Order was pertinent to the core operations of Ammo. Once again, all companies have employees performing high level functions that are not officers.

**B.**     **The Complaint Fails to Plead Fraud Relating to Manitowoc[1]**

        1.     Plaintiffs Fail to Plead Any Actionable Statements

As explained in the MTD, Plaintiffs' Complaint confirms that Ammo repeatedly and consistently disclosed, beginning in February 2022, "problems with production" and issues regarding "performance of our manufacturing operations" at Manitowoc. *See* MTD

---

[1] Plaintiffs also allege that Ammo's statements about its legal and accounting compliance were false. Opp. at 21. But general statements of legal compliance—such as the company had a "variety of systems" and a "safety net" in place to ensure compliance—are not actionable. *See Lomingkit v. Apollo Education Group Inc.*, No. CV-16-00689, 2017 WL 633148, at *23 (D. Ariz. Feb. 16, 2017). Thus, Plaintiffs cannot rely on Ammo's statement that "[o]ur policies and procedures are designed to comply with all applicable laws" to state any claim. *See* Opp. at 21.

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

4

at 11, 1; Compl. ¶¶ 7, 8, 9, 10, 100, 102, 108, 111, 130-31, 141, 158-59. Rather than grapple with their own allegations, Plaintiffs cherry-pick sentences or even phrases from disclosures to attempt to muster actionable falsehoods regarding Manitowoc.

a.     Statements Regarding "Ability to Scale" and Capacity<br>Fall Within the PSLRA's Safe Harbor

Plaintiffs treat statements regarding "capacity" at Manitowoc as if they guaranteed the amount of ammunition the plant would produce. They did not. As the Complaint shows, the statements pertained to the "*ability to scale*" to certain production levels. *See* Compl. ¶ 75. Moreover, Ammo disclosed in its Form 10-Ks beginning in 2021 the numerous "RISK FACTORS" that could "adversely affect" its manufacturing operations. *See, e.g.*, MTD Ex. B at 16-21 (risk factors include, among other things, potential equipment problems and "shortages of components" such as "casings, primers, gun powder, projectiles, and brass" that could "harm[] … results of operation."). Because Ammo disclosed key risks regarding its production capacity, its statements about production capacity and the "ability to scale" at Manitowoc are protected by the PSLRA's safe harbor provision. *See also Wochos v. Tesla, Inc.* 985 F.3d 1180, 1192 (9th Cir. 2021) (statements including that it was the company's "goal to produce 5,000 vehicles per week," it was "on track" and "there are no issues" that "would prevent" it from achieving the goal were "unquestionably … forward-looking statement[s]").

Although Plaintiffs respond by characterizing Ammo's disclosures as "hypothetical boilerplate," Opp. at 27, 30, Plaintiffs largely ignore the actual disclosures. For example, nowhere in their 71-page brief do Plaintiffs acknowledge that Ammo disclosed potential equipment problems and "shortages of components"—the exact problems that Plaintiffs allege befell Manitowoc, *see* Compl. ¶¶ 57, 60, 61, 131—as critical "RISK FACTORS" regarding its ammunition segment. *See* MTD Ex. B at 16-21. Plaintiffs cannot transform disclosed risks that later came to fruition into actionable securities fraud.

Notwithstanding the disclosure of these risks, Plaintiffs assert that Ammo misrepresented "then-existing" facts regarding Manitowoc's production capacity. But the key statements Plaintiffs cite—about what the "building will produce," what could occur

5

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

"once you're fully installed," that "[w]e are increasing capacity," and that Manitowoc "allows us to strategically and incrementally increase production," Compl. ¶¶ 83, 85, 104, 106—are non-actionable forward-looking statements. *See No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 936 (9th Cir. 2003) (forwarding-looking statements include "plans and objectives of management for future operations" and "future economic performance"). They are not statements of existing capacity, nor do Plaintiffs allege Ammo was not "increasing capacity" over time.

b.    Statements About Cost of Manitowoc Were Forward-Looking

As with statements regarding "ability to scale" and capacity, Plaintiffs treat Ammo's $12 million budget projection from early 2021 as a guarantee of the facility's cost rather than a forward-looking statement. But in the press release that Plaintiffs cite, Compl. ¶ 32, Ammo specifically characterized the budget as an estimate and included appropriate cautionary language. *See* Ammo, Press Release (Jan. 5, 2021) at 1-2 (Ex. E). And Ammo updated the budgeted cost as developments unfolded to $26 million by June 29, 2022. *See* Excerpts of Ammo, Form 10-K (Jun. 29, 2022) at 17 (Ex. F). Thus, the January 2021 press release itself is an inactionable forward-looking statement, and the June 2022 and November 2022 statements that the factory was "on time" and "under budget" were consistent with the updated figure Ammo had disclosed by then. Further, Plaintiffs do not allege that Ammo knew in early 2021 that the cost of the facility would be higher than $12 million.

c.    Plaintiffs Cannot Rely on Statements of Corporate
      Optimism Made After the Rifle Press Failure to State a Claim

Next, Plaintiffs attempt to base their claim on puffery or other statements of corporate optimism. For example, Plaintiffs emphasize the failure of Manitowoc's rifle press in June 2023 and treat all of Ammo's statements prior to disclosing that issue as *per se* false. *See* Opp. at 23-24. But the statements Plaintiffs cite are classic examples of inactionable corporate optimism, like "[efforts] were starting to pay off," and the company expected "improve[d] profitability", "enhance[d] margins", and "more capacity." Compl.

6

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

¶¶ 87, 124, 126. Further, Plaintiffs assume, without support, that the failure of one machine among many in a complex facility necessarily meant margins and profitability decreased.

### 2.    **Plaintiffs Fail to Plead Scienter**

The repeated disclosures about setbacks at Manitowoc not only defeat Plaintiffs' falsity argument, but also Plaintiffs' scienter allegations. There can be no intent to deceive without deception. *See* MTD at 10-11. In opposition, Plaintiffs never explain how a pattern of repeated public disclosures regarding challenges at Manitowoc can plausibly be recast as a scheme to conceal those same challenges.

#### a.    Supposed "Admissions" Do Not Establish Scienter

Instead, Plaintiffs argue that Defendants supposedly made "admissions" that "show scienter with respect to the concealment of machine failures." Opp. at 38. But the only "admissions" that Plaintiffs cite are from a November 2023 earnings call where Smith said: "there was a mechanical failure of our primary presses for our rifle case production;" the Company "bought additional presses" because "in April, when we started to do the walkthrough of the new plant, we recognized that we didn't have the redundancy that we needed;" and the primary press "is the feeder press for our entire medium action line, which we have somewhere in 90 million to 120 million piece capacity on[,] [s]o it's a big deal for us and has been." *See id.*; Ammo, Transcript of Earnings Call (Nov. 9, 2023) at 8 (Ex. G).

In this statement, Smith both disclosed a problem and identified a solution. Yet, Plaintiffs treat these "admissions" as a silver bullet showing "Smith and Ammo were at least deliberately reckless" in making statements about Manitowoc's ability to increase margins and drive revenue and growth. Opp. at 38. But as the case Plaintiffs cite, *In re Apple Inc. Sec. Litig.*, states: "an after-the-fact-statement must 'contradict[] the substance of an earlier statement and essentially state[] 'I knew it all along' to constitute an admission.'" 2020 WL 6482014, at *10 (N.D. Cal. Nov. 4, 2020) (citation omitted). There, the alleged "admission"—that Apple had observed signs of a slowdown in China "as the quarter went on"—directly contradicted the statement that business in China was "very strong [that] quarter." *Id.* at *2-*3, *10. Here, however, Smith's statements in November 2023 that Ammo's primary press experienced a mechanical failure in Q2 and that, in April

7

2023, defendants observed that the plant lacked the redundancy it needed, do not contradict any alleged prior statement and do not support a finding of fraud. Further, the November 2023 statement did not show that Ammo hid information earlier; rather it identified that the risks AMMO had previously disclosed had materialized.

### b.    Plaintiffs' Unreliable CWs Do Not Establish Scienter

Next, plaintiffs rely on CWs to argue that, because defendants had "access to, and notice of … production delays and equipment failures" at Manitowoc, they must have known optimistic statements about Manitowoc were false. Opp. at 39-40. These CW allegations are irrelevant in the face of Ammo's disclosures about precisely that information. *See*, *supra*, at Section II.B.1. Even so, as Ammo's MTD showed, these CW statements are unreliable and not probative of scienter. *Id.* at 11-13. And, as explained in Section II.A.2 above, that defendants "tracked production and machine failures"—and indeed disclosed this information as developments unfolded—does not show that defendants knew their statements about Ammo's manufacturing capabilities were false.

### c.    The "Core Operations" Theory Does Not Apply

Finally, the "core operations" doctrine cannot save Plaintiffs' scienter allegations. Allegations "regarding management's role in a company may be relevant and help to satisfy the PSLRA scienter requirement" where "they are particular and suggest that defendants had actual access to the disputed information," or "in rare circumstances where the nature of the relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter." *South Ferry v. Killinger*, 542 F.3d 776, 785-86 (9th Cir. 2008) (citation omitted). Plaintiffs wrongly argue that the "Complaint supports a strong inference of scienter under both tests." Opp. at 44.

First, plaintiffs fail to plead with particularity what facts defendants had access to that made their disclosures about Manitowoc false. Plaintiffs point to Wagenhals saying that "we get on a call every morning at 8 o'clock and we focus on numbers, numbers, numbers." Opp. at 45 (citing Compl. ¶ 153). But this vague statement fails to plead with specificity which numbers Wagenhals had access to, what they showed, and how they

8

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

contradicted any public statement. *See Zucco*, 552 F.3d at 1000 (allegations that "senior management … closely reviewed the accounting numbers generated by [the company]" and that "top executives had several meetings in which they discussed quarterly inventory numbers" were not enough to plead "actual access" under the core operations theory).

Second, Plaintiffs cannot establish that this is the "rare" case where production delays at Manitowoc were of "such prominence that it would be absurd to suggest" that defendants lacked knowledge of them. The cases Plaintiffs cite illustrate that the production issues at Manitowoc do not rise to the level that warrants application of the core operations theory. In *Reese v. Malone*, 747 F.3d 557, 564-66 (9th Cir. 2014), the relevant information related to two major oil spills so severe that defendants "temporarily shut down the Prudhoe Bay oil field, which accounts for more than eight percent of total U.S. oil production," triggering DOJ and Congressional investigations. In *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987-88 (9th Cir. 2008), the court applied the core operations theory to four "stop-work orders" which fully "halted tens of millions of dollars of work." It is not "absurd" that defendants were not aware of every issue at Manitowoc. Instead, it is more plausible that defendants learned problems when they became significant to the business and disclosed such delays and risks as they arose. *See* MTD at 11, 14-15.

### C.    **Plaintiffs Fail to Plead Loss Causation with Particularity**

Plaintiffs' opposition only underscores that the Complaint lacks a coherent theory of loss causation. First, Plaintiffs purport to rely on a series of corrective disclosures: beginning in November 2022 and culminating in an SEC filing made in May 2025 that addressed Larson's role as an officer, related party transactions, and manufacturing problems at Manitowoc. But many of these alleged corrective disclosures pertained to information that, according to Plaintiffs, was already public and incorporated into the market price of Ammo's shares. *Compare, e.g.*, Compl. ¶ 111 (alleging the disclosure on May 3, 2023 of information regarding Manitowoc in the *Urvan* complaint) with *id.* ¶¶ 100-103, 158 (alleging the disclosure of the same information beginning in February 2022). Plaintiffs, who allege Ammo's shares "are traded in an efficient market*," id.* ¶ 178, cannot

rely on later disclosures of the **same issues** because "[t]he price of a stock traded in an efficient market fully reflects all publicly available information about the company and its business." *Conn. Ret. Plans & Trust Funds v. Amgen Inc.*, 660 F.3d 1170, 1173 (9th Cir. 2011). "[C]orrective disclosures must present facts to the market that are new, that is, publicly revealed for the first time." *In re Blue Earth, Inc. Sec. Class Action Litig.*, No. CV 14-08263, 2015 WL 12001274, at *2 (C.D. Cal. Nov. 3, 2015) (citation omitted).

Plaintiffs include a chart in their opposition in an attempt to lend the appearance of order to their chaotic loss causation allegations. *Id*. at 57-58. Yet, the chart only illustrates the problems with their pleading. For example, it includes six different alleged corrective disclosures regarding manufacturing problems over a three-year period. *See id.* (entries 1-5, 7). Plaintiffs do not explain how subsequent disclosures of the same problems can establish loss causation—and their conclusory assertion that the market did not fully incorporate previous corrective statements is insufficient. *See In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 794 (9th Cir. 2020). Moreover, Plaintiffs ignore that they also allege the market became aware of manufacturing problems by February 2022—preceding the first alleged corrective disclosure in the chart by **nine months**. *See* Compl. ¶ 158. Plaintiffs cannot plead loss causation by pointing (repeatedly) to later disclosures of similar information.

Similarly, Plaintiffs cannot square their allegation that the May 2023 *Urvan* Complaint revealed supposed fraud with their reliance on disclosures of the same subjects over the next two years. According to Plaintiffs, the *Urvan* Complaint exposed the core issues alleged in their own Complaint: Larson's role as a corporate officer, the related-party transaction involving Larson's brother, and manufacturing problems at Manitowoc. The market allegedly incorporated those supposed facts in May 2023 when the *Urvan* Complaint became public, resulting in a share price drop. Compl. ¶ 9. Plaintiffs insist that "disclosure of information in a lawsuit, as Urvan's lawsuit did here, can establish loss causation." Opp. at 59-60. Yet, just two paragraphs later, they walk back their reliance on the complaint, characterizing it as "less detailed, unproven, and challenged as untrue." *Id.*

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

Plaintiffs, who make the *Urvan* Complaint a centerpiece of their own Complaint, cannot have it both ways. They argue that: (1) the *Urvan* Complaint was a corrective disclosure of core misrepresentations and omissions; (2) the market incorporated this information into the stock price when the *Urvan* Complaint became public in May 2023; and (3) disclosure of the lawsuit qualifies as a corrective disclosure. Under Plaintiffs' "efficient market" theory, Ammo's supposed later disclosures of the same issues made public in the *Urvan* Complaint cannot establish loss causation.

Second, regarding Manitowoc, Plaintiffs fail to identify, as they must, which false statements or omissions the alleged disclosures corrected. Indeed, this is because there was no false statement that was corrected. The supposed corrective disclosures that Plaintiffs identify simply informed the market about setbacks at Manitowoc as they developed, and that risks previously disclosed by Ammo had occurred. Again, Plaintiffs' chart illustrates the problem. For example, Plaintiffs argue that Ammo's November 2022 statements regarding production problems at Manitowoc "[i]nforms the market that the statements about Manitowoc Facility 'day one' capacity were false." Opp. at 57 (entry 1). But the alleged prior statements regarding "day one" capacity were not false because (i) they were forward-looking estimates of production capacity, not guarantees, and (ii) they were, in fact, consistent with the later November 2022 disclosure. *Compare* Compl. ¶ 85 (Wiley stating in June 2022 "once you're fully installed and in the new facility day one that our capacity would essentially double. And our goal is to get at a run rate of a billion rounds a year by the end of this fiscal year.") with *id.* ¶ 101 (Wiley stating in November 2022, "we definitely had some loss of revenue due to the move into our new manufacturing facility, which in turn will increase our capacity quite significantly."). Also, Plaintiffs cite to a February 14, 2023 "admi[ssion]" by Ammo "that results were hurt by problems within its Ammunition Segment." Opp. at 57 (entry 2). But Plaintiffs do not identify what false statement that "admission" corrected; it simply reported disappointing performance. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir. 2010) ("loss causation is not adequately pled" when the stock price drops due to "reports of the defendant's poor

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

11

financial health generally"). A stock price decline following disappointing financial results cannot retroactively convert business challenges into securities fraud, especially when Ammo disclosed the relevant risks. *See id.*

Next, Plaintiffs argue that Ammo's November 9, 2023 disclosure of the failure of the rifle press in June 2023 "informed investors of concealed manufacturing problems." Opp. 57 (entry 4). But this allegation suffers from two problems. First, in its 2021 10-K, Ammo expressly disclosed equipment failures as a potential risk that could affect its manufacturing operations. *See* MTD, Ex. B at 16-21. Second, Plaintiffs admit that, during the period when the rifle press failed, Ammo consistently disclosed problems occurring at the plant. Plaintiffs cite no case law supporting the proposition that Ammo had to disclose the failure of one specific piece of equipment when Ammo, by Plaintiffs' own allegations, identified manufacturing issues at the plant. *See In re eHealth Inc. Sec. Litig.*, No. 20-CV-02395, 2021 WL 5855864 at *4 (N.D. Cal. Aug. 12, 2021) (disclosing one cause for negative news but not all causes was not an actionable omission because the "Ninth Circuit has expressly declined to require a rule of completeness for securities disclosures because '[n]o matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not.'") (citation omitted).

Similarly, Plaintiffs point to an August 8, 2024 disclosure of "production inefficiencies" and "key equipment being down" without identifying a previous false disclosure. Opp. at 57 (entry 5). Nowhere do Plaintiffs allege that Ammo somehow guaranteed that its production equipment would always function properly. In fact, Plaintiffs acknowledge that this disclosure simply "[i]nformed investors of continued production problems at Manitowoc Facility*." Id*.

Below is a copy of Plaintiffs' chart, with a more detailed response to each entry included as the column on the right titled "Reply: Why Alleged Corrective Event Is Not a Corrective Disclosure."

12

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

| Date | "Corrective Event" | "Concealed Information revealed / Misrepresentations corrected" | Resulting stock price drop alleged (next trading day) | Reply: Why Alleged Corrective Event Is Not a Corrective Disclosure |
|---|---|---|---|---|
| November 14, 2022 | Ammo admits production problems at Manitowoc Facility (¶¶ 100-02) | Informs the market that the statements about Manitowoc Facility "day one" capacity were false and that there were substantial operational deficiencies at that facility. | Dropped 25.8% in reaction and dropped another 5.6% the following trading day as the market continued to absorb the news (¶¶7, 103). | **Information Already Disclosed**: Plaintiffs allege the market learned about manufacturing problems as early as February 2022 (Compl. ¶ 158); market already incorporated the news into the stock price. *See*, *supra*, at 11.<br><br>**No Prior False Statement**: Alleged prior statements regarding "day one" capacity not false because they (i) were forward-looking estimates of production capacity, and (ii) are consistent with the November 2022 "admi[ssion]." *Id.* |
| February 14, 2023 | Ammo admits the results were hurt by problems within its Ammunition Segment (¶108) | Informs the market that the production problems were even greater than initially revealed. | Declined by over 12.8% (¶¶8, 108) | **No Prior False Statement**: Plaintiffs fail to identify a prior false statement that was corrected or admitted. *Id.* at 11-12. |
| May 3, 2023 | Urvan's Verified Complaint is made public (*i.e.*, the Merger Complaint) (¶111) | Its allegations informed investors that at least one insider believed that Larson was illegally serving as a company officer in violation of his SEC ban, although the Company denied. Also informed investors that overall capacity of the Manitowoc Facility was lower than touted. | Dropped 4.2% (¶¶9, 111) | **Information Already Disclosed Manitowoc:** Information regarding capacity at Manitowoc disclosed as early as February 2022, and again in November 2022 and February 2023. (Compl. ¶ 158); market already incorporated news into the stock price. *See*, *supra*, at 10-11. **Larson:** Fact that Urvan, just one board member, believed Larson was an officer is not probative of a correction because it says nothing about what the Company believed. |
| November 9, 2023 | Company attributes miss largely to "press failures at the | Informed investors of concealed manufacturing problems at the | Dropped 13.1% (¶¶10, 132) | **Information Already Disclosed** Manufacturing problems disclosed in February 2022, and |

13

| | | | | |
|---|---|---|---|---|
| | Manitowoc Facility" (¶¶ 130 – 31) | Manitowoc Facility, including the breakdown of the "big deal" rifle press that was known internally since June 2023 but concealed. | | again in November 2022 and May 2023. *Id.* at 12.<br><br>**Insufficient Allegations of Concealment:** Disclosure of the rifle press failure in November 2023 did not contradict any previous representation from February or November 2022 regarding production delays, or other optimistic statements regarding potential capacity in the summer of 2023. And Ammo never guaranteed its equipment would work; rather Ammo repeatedly disclosed the risk of equipment failures as early as 2022. *Id.* |
| August 8, 2024 | Company attributes miss in part to "production inefficiencies" which analysts attribute to "key equipment being down" (¶141) | Informed investors of continued production problems at Manitowoc Facility. | Declined by over 6.7% (¶¶11, 142) | **Information Already Disclosed** *Id.* at 13 (entries 3-4, "Reply" column).<br><br>**No Prior False Statement** Plaintiffs fail to identify a prior false statement that was corrected or admitted. *Id.* at 13 (entry 2, "Reply" column). |
| September 24, 2024 | Announced Rob Wiley's resignation and independent board investigation into related-party transactions (¶143) | First Company admission that there may have been some incomplete related-party transaction disclosures. | Declined by over 5.2% (¶¶12, 144) | **Information Already Disclosed** Allegations of related-party transactions already disclosed in the *Urvan* Complaint in May 2023. *Id.* at 9-11. |
| May 20, 2025 | Company admits its prior filings were materially false because they concealed related party transactions, Larson's role, and his compensation (¶¶145-58) | Informed investors that the Company agreed it had illegally allowed Larson to operate as an executive officer, informed investors that Larson had taken kickbacks in connection with Company contracts, and informed investors about massive illicit | Declined by over 8.2% (¶149). | **Admission Does Not Show a Correction** Information about Larson was disclosed in the Urvan Complaint, and the later admission cannot be used to show a correction of what was already known at the time. *Id.* at 10-11. |

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

| | | compensation to Larson. | | |
|---|---|---|---|---|

The cases Plaintiffs cite alleging that they can plead "partial correctives"—which involved corrective disclosures over a period of days or weeks, not five years—are irrelevant. Opp. at 58. Plaintiffs must show each prior statement that the alleged disclosures actually corrected. It is no answer that a statement made in 2021 regarding capacity was untrue because there were later production problems over a five-year period. If that were enough, every statement made by any company about its production capacity would be deemed fraudulent when the production problems inherent to any business arise at any time in the future. Instead, the disclosures here demonstrated that the risks that Ammo had already disclosed—like equipment failures—in fact occurred. This is not securities fraud.

### D.     Plaintiffs Fail to Adequately Plead Scheme Liability

Finally, Plaintiffs allege scheme liability only with respect to Larson's conduct. Plaintiffs' scheme liability claim must be dismissed because, as discussed above, Plaintiffs fail to plead scienter, reliance, and loss causation relating to Larson's conduct. *See United Ass'n Nat'l Pension Fund v. Carvana Co.*, 759 F. Supp. 3d 926, 967 (D. Ariz. 2024). Plaintiffs rely on the 2025 SEC Order, Opp. at 61, but Ammo neither admitted nor denied the Order's findings. And the SEC expressly made the order non-binding on others. As such, the SEC Order cannot substitute for plaintiffs' burden to plead scienter and loss causation. MTD at 17-18.

Additionally, Plaintiffs' allegations are about what defendants failed to disclose: Larson "secretly operated as an executive officer," he was a "shadow co-CEO/CFO," and defendants "took action to conceal the Company's dealings with Larson." Opp. at 62-63. Because the Supreme Court has made clear that "undisclosed" conduct defeats reliance for scheme liability, Plaintiffs have not stated an actionable claim. *See Lorenzo v. SEC*, 587 U.S. 71, 84 (2019) ("private plaintiffs c[an] not bring suit against [] securities defendants based on undisclosed deceptions upon which the plaintiffs could not have relied.").

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

15

Date: March 5, 2026

**BALLARD SPAHR LLP**

By: */s/ Brian Schulman*
Brian Schulman
1 East Washington Street, Suite 2300
Phoenix, AZ 85004
Telephone: (602) 798-5400
Facsimile: (602) 798-5595
Email: schulmanb@ballardspahr.com

Norman M. Goldberger (*pro hac vice*)
William B. Igoe (*pro hac vice*)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: 215.864.8678
Facsimile: 215.864.8999
Email: igoew@ballardspahr.com
Email: goldbergerm@ballardspahr.com

*Attorneys for Defendants Ammo, Inc., and Jared R. Smith*