**SALLAH ASTARITA & COX, LLC**
James D. Sallah (*pro hac vice*)
Florida Bar No. 92584
Jeffrey L. Cox (*pro hac vice*)
Florida Bar No. 173479
3010 N. Military Trail, Ste. 210
Boca Raton, Florida 33431
Telephone: 561-989-9080
Facsimile: 561-989-9020
Email: jds@sallahlaw.com
Email: jlc@sallahlaw.com

*Counsel for Defendant Fred W. Wagenhals*

**IN THE UNITED STATES DISTRICT COURT**

**FOR DISTRICT OF ARIZONA**

| | |
|---|---|
| Dmitry Cherches; Irene Zvagelsky; and Hideyoshi Delgado; Individually and on Behalf of All Others Similarly Situated, | Case No.: 24-CV-02619-PHX-DJH |
| Plaintiffs, | **DEFENDANT WAGENHALS'S REPLY TO PLAINTIFFS' OMNIBUS OPPOSITION TO HIS MOTION TO DISMSS PLAINTIFFS' AMENDED COMPLAINT** |
| v. | (Oral Argument Requested) |
| AMMO, Inc.; Fred W. Wagenhals; Christopher D. Larson; Jared R. Smith; Robert D. Wiley; and John P. Flynn, | |
| Defendants. | |

## **TABLE OF CONTENTS**

I.   INTRODUCTION..........................................................................................................1

II.  ARGUMENT..............................................................................................................1

    A. Mr. Wagenhals's Statements About Operations are Non-Actionable .. ….........2

        1. Accounting Team Statements are Neither Material Nor False......................2

        2. Earnings Call Statements are Accurate and Forward-Looking .....................4

III.  PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER ..........7

    A. Mr. Wagenhals's Stock Sales Do Not Support an Inference of Scienter............7

    B. Corrective Disclosures Do Not Establish Scienter.............................................8

    C. Plaintiffs Fail to Establish Scienter with the Core Operations Doctrine............9

IV.  PLAINTIFFS FAIL TO SUFFICIENTLY PLEAD LOSS CAUSATION................10

V.   PLAINTIFFS FAIL TO PLEAD A SCHEME LIABLITY CLAIM .........................10

VI.  PLAINTIFFS FAIL TO PLEAD A CLAIM UNDER SECTION 20(A) .................11

V.   CONCLUSION .........................................................................................................11

## TABLE OF AUTHORITIES

**SUPREME COURT OF THE UNITED STATES**

*Lorenzo v. SEC*,
    587 U.S. 71 (2019) ........................................................................................ 11

**UNITED STATES CIRCUIT COURT OF APPEALS**

*In re NVIDIA Corp. Securities Litig.*,
    768 F.3d 1046 (9th Cir. 2014) ....................................................................... 11

*In re Quality Systems, Inc. Securities Litig.*,
    865 F.3d 1130 (9th Cir. 2017) ......................................................................... 8

*In re Silicon Graphics Inc. Securities Litig.*,
    183 F.3d 970 (9th Cir. 1999), *as amended* (Aug. 4, 1999) ...................................... 8

*In re Syntex Corp. Sec. Litig.*,
    95 F.3d 922 (9th Cir. 1996) ............................................................................. 5

*In re: Vantive Corp. Secs. Litig.*,
    283 F. 3d 1079 (9th Cir. 2002) ........................................................................ 5

*Lipsky v. Commonwealth United Corp.*,
    551 F.2d 887 (2d Cir. 1976) .......................................................................... 11

*Nguyen v. Endologix, Inc.*,
    962 F.3d 405 (9th Cir. 2014) .......................................................................... 11

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
    774 F.3d 598 (9th Cir. 2014) ....................................................................... 3, 4

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
    759 F.3d 1051 (9th Cir. 2014) ......................................................................... 3

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*
    845 F.3d 1268 (9th Cir. 2017) ......................................................................... 3

*Schneider v. California Dept. of Corr.*,
     51 F.3d 1194, 1197 n.1 (9th Cir. 1998) ........................................................... 7

*South Ferry LP, No. 2 v. Killinger*,
    542 F.3d 776 (9th Cir. 2008) ........................................................................... 9

*Zucco Partners, LLC v. Digimarc Corp.*,
　　552 F.3d 981 (9th Cir. 2009) ................................................................ 6, 7 n.5, 10

**UNITED STATES DISTRICT COURT**

*Fialkov v. Microsoft Corp.*,
　　72 F. Supp. 3d 1220, 1230 (W.D. Wash. 2014), *aff'd,* 692 F. App'x 491 (9th Cir.
2017) ............................................................................................................... 5

*Park v. GoPro Inc.*
　　No. 18-CV-00193-EMC, 2019 WL 1231175, at *9, *13 (N.D. Cal. Mar. 15, 2019)
................................................................................................................................. 5

**PROCEDURAL RULES**

Fed. R. Civ. P. 9(b) ...................................................................................... 1, 11

Fed. R. Civ. P. 10(c) ................................................................................... 1 n.1, 10

Fed. R. Civ. P. 12(b)(6) .............................................................................. 1,11

**FEDERAL STATUTES**

15 U.S.C. § 78u–4 ................................................................ 1, 2, 4, 5, 7, 9, 10-11

Defendant Fred W. Wagenhals respectfully submits this Reply Brief in Support of his Motion to Dismiss Plaintiffs' First Amended Complaint ("Compl.").[1]

## I.   INTRODUCTION

Despite a sprawling Complaint covering nearly five years of operations, Plaintiffs fail to satisfy Federal Rules of Civil Procedure 12(b)(6) and 9, and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4(b) ("PSLRA") as to Mr. Wagenhals. They do not plead a materially false statement, particularized facts supporting a strong inference of scienter, or loss causation. The Opposition, instead, relies on reframing rather than facts—reciting generalized statements as misrepresentations, converting forward-looking commentary into guarantees, and invoking later operational challenges to imply earlier falsity. The PSLRA does not permit fraud by hindsight or speculation in place of contemporaneous knowledge. The challenged statements are non-actionable optimism or protected forward-looking statements. The confidential witness allegations do not establish what Mr. Wagenhals knew when he spoke. The insider trading theory lacks the necessary data to even be considered suspicious. And a subsequent, non-binding SEC consent or complaint cannot retroactively create scienter.

Viewed collectively, the allegations do not give rise to a strong inference of fraud. Because Plaintiffs fail to plead a primary violation under Section 10(b) or Rule 10b-5, their derivative claims necessarily fail. As a result, the Amended Complaint should be dismissed with prejudice.

## II.   ARGUMENT

The Complaint fails to state a claim against Mr. Wagenhals because the alleged misstatements and omissions attributed to him were not false, actionable, or material. Even

---

[1] Pursuant to Federal Rule of Civil Procedure 10(c), Mr. Wagenhals adopts and incorporates by reference arguments in concurrently filed replies for AMMO, Inc., Jared R. Smith, Christopher D. Larson, Robert D. Wiley, and John P. Flynn to the extent applicable.

viewed holistically, these allegations fall far short of supporting a strong inference of scienter.

### A. Mr. Wagenhals's Statements About Operations are Non-Actionable

Plaintiffs' allegations do not support any reasonable inference that Mr. Wagenhals made any actionable misrepresentation or omission about the company's operations. While Plaintiffs' 84-page Complaint (and 70-page Opposition) spans a nearly five-year "Class Period" from August 19, 2020 to May 20, 2025, the Complaint merely identifies three allegedly false statements by Mr. Wagenhals made during earnings calls on August 16, 2021, November 15, 2021, and November 14, 2022.[2] And at the outset of each earnings call, Ammo provided the investing public with cautionary forward-looking statements protected under the PSLRA's Safe Harbor.

### 1. Accounting Team Statements are Neither Material Nor False

Plaintiffs assert Mr. Wagenhals "lied" when he supposedly claimed that the Company had brought its "accounting 'up to par.'" Compl. ¶ 13. But that is not what Mr. Wagenhals said. Plaintiffs' Opposition mischaracterizes his remarks by altering their substance. The Complaint itself quotes Mr. Wagenhals as stating on both August 16, 2021, and November 15, 2021: "Rob Wiley, our CFO, and Susan Lokey, CFO of GunBroker.com, and their team have worked around the clock to bring our **accounting team** up to par with the growth of our company." Compl. ¶ 78 (emphasis added). Plaintiffs, however, inaccurately recast this as a representation to state: "Wagenhals' specific statement about its supposed improved **accounting systems getting 'up to par'** would be interpreted by a reasonable investor to be a representation that (at a minimum) the accounting practices of Ammo at the time of the representation met generally acknowledged accounting standards." ECF No. 73 at 33; 35 n. 7 (bold added); Compl. ¶ 13 (stating "AMMO brought its

---

[2] As set forth in the Motion to Dismiss, the referenced earning calls all began with express Safe Harbor warnings that forward looking statements were subject to risks and uncertainties. *See* ECF No. 69 at 17-19.

accounting 'up to par.'"); ¶ 15 ("Defendants told investors they had brought their accounting up to par."). The differences between Mr. Wagenhals' statement and Plaintiffs' distortion are material. Despite Plaintiffs' mischaracterization attempts, Mr. Wagenhals only referred to efforts to strengthen the "accounting team," not a completed overhaul of "accounting" systems or controls.

Even taking the statement as pleaded, it is not actionable. Describing efforts to bring a team "up to par" is a classic example of non-actionable corporate optimism and puffery. The phrase is inherently vague and subjective. It does not convey a concrete, objectively verifiable representation about specific accounting controls, financial metrics, or compliance standards. Bringing an accounting team "up to par" could refer to staffing increases, improved processes, additional training, or other qualitative enhancements. The statement lacks materiality and the specificity necessary to be proven true or false.

The Ninth Circuit consistently holds such generalized statements of optimism or qualitative assessments immaterial as a matter of law. In *Police Retirement System of St. Louis v. Intuitive Surgical, Inc.*, the court explained that vague, optimistic statements are not actionable because they are incapable of objective verification. 759 F.3d 1051, 1060, (9th Cir. 2014). Similarly, in *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, the court held that a statement must be "capable of objective verification" to be misleading. 845 F.3d 1268, 1275-6 (9th Cir. 2017) (quoting *Oregon Public Employees Retirement Fund v. Apollo Group Inc*. 774 F.3d 598 (9th Cir. 2014). Whether an accounting team has been brought "up to par" with a company's growth is inherently subjective and incapable of objective measurement. What constitutes "up to par" will vary by perspective and expectation. Plaintiffs' attempt to transform a vague, forward-looking commendation of internal efforts into a knowingly false statement of fact fails as a

matter of law. Such "puffing"—an expression of opinion or corporate optimism—is not actionable under the federal securities laws. *Id*.

### 2. Earnings Call Statements are Accurate and Forward-Looking

Plaintiffs also challenge statements Mr. Wagenhals purportedly made on earning calls on November 15, 2021, and November 14, 2022. First, they allege Mr. Wagenhals falsely stated on November 15, 2021: "The move-in date for our new state-of-the-art 165,000 square foot building in Manitowoc, Wisconsin is the summer of 2022. Tod Wagenhals, our Executive VP has assured me that it *will be* on time and under budget." Compl. ¶ 81 (italics added). Describing a future facility as "state-of-the-art," however, is more non-actionable corporate puffery. Courts in the Ninth Circuit consistently hold that generalized expressions of optimism and confidence are immaterial as a matter of law. *See Oregon Public Employees Retirement Fund*, 774 F.3d at 606 (vague statements of optimism are not actionable). The phrase "state-of-the-art" conveys no objectively verifiable representation about specific capabilities, performance metrics, or compliance standards. It is a subjective characterization – not a factual guarantee.

The remainder of the statement—projecting a summer 2022 move-in date and reporting that he had been "assured" the project "*will be*" on time and under budget"—is forward-looking. Such statements about anticipated timing and project completion fall squarely within the type of predictive commentary the PSLRA's Safe Harbor provisions are designed to protect.

Second, Plaintiffs rely on Mr. Wagenhals's allegedly false statement the same day in November 2021 – 10 months *before* the opening of the Manitowoc Facility – that: "[w]e don't have a problem with primers. I mean, we hear that all the time. And it's a constant war every day, but we don't have a problem getting primers." *Id*. ¶ 83. Relying on CW8—who is not alleged to have worked at Ammo until summer 2022, six months after the

4

statement—and CW4—who is not alleged to have worked there in November 2021, Plaintiffs rest their claim on impermissible fraud by hindsight.[3] Without alleging "when" these CWs purportedly encountered challenges with primers, Plaintiffs provide no support for their contention that Mr. Wagenhals's statement was false when made.

Instead, Plaintiffs are essentially arguing that subsequent manufacturing challenges retroactively rendered Mr. Wagenhals's earlier comments false. But courts repeatedly reject attempts to transform later operational difficulties into earlier securities fraud. As the court observed in *Park v. GoPro Inc.*, statements about "looking ahead" are precisely the type of forward-looking statements protected under the Safe Harbor. No. 18-CV-00193-EMC, 2019 WL 1231175, at *9, *13 (N.D. Cal. Mar. 15, 2019). Similarly, *Fialkov v. Microsoft Corp.*, 72 F. Supp. 3d 1220, 1230 (W.D. Wash. 2014), *aff'd,* 692 F. App'x 491 (9th Cir. 2017), held that alleging later problems as proof of earlier falsity is "classic example of impermissible fraud by hindsight, a type of pleading that the PSLRA was specifically directed at eliminating." And as the Ninth Circuit explained in *In re Syntex Corp. Securities Litig.*, the fact that a prediction later proves incorrect does not establish that it was false when made.[4] 95 F.3d 922, 934 (9th Cir. 1996); *see also*, *Fischer v. Vantive Corp (In re: Vantive Corp. Secs. Litig.)*, 283 F. 3d 1079, 1084-85 (9th Cir. 2002), *abrogated on other grounds, Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.,* 63 F.4th 747 (9th Cir. 2023) (providing that Congress enacted the PSLRA's high pleading standard to eliminate "fraud by hindsight").

---

[3] The Complaint fails to allege the specific dates that either CW8 or CW4 purportedly began working at Ammo. Instead, Plaintiffs allege that CW8 started in the "Summer of 2022" and CW4 started "in 2021." *See* Compl. ¶¶ 44, 60.

[4] Setting aside these fatal issues, Mr. Wagenhals' statement discloses that "it's a constant war every day" to get primers, but at the time of the statement, Ammo did not have problems doing so. This statement, accordingly, is not material.

In addition, Plaintiffs allege that about one year later, on November 15, 2022, Mr. Wagenhals made the following purportedly false statement during an earnings call: "The new plant is humming with its ribbon-cutting ceremony a few months ago in Wisconsin. We are increasing capacity across the Board and are in a position to support the domestic and expanding overseas ammunition demand." Compl. ¶ 104. Plaintiffs contend that this statement was false "when made" based on alleged equipment failures purportedly described by CW1, CW3, CW5, CW6, CW7, and CW8.

Plaintiffs' theory is flawed for multiple reasons. As an initial matter, to the extent Plaintiffs attempt to rely on statements Mr. Wagenhals previously made about production numbers in 2021 to suggest falsity, those statements predate the November 2022 earnings call by approximately one year and cannot retroactively render the later statement false. *See* Opp. at 44, Compl. ¶ 153 (stating Mr. Wagenhals said at the August 16, 2021, earnings call that he tracks production capacity every day, including that "*we get on a call every morning at 8 o'clock and we focus on numbers, numbers, numbers*."). Plaintiffs' conclusory allegation also fails to identify, with the required particularity, which specific data Mr. Wagenhals reviewed, what that information reflected, or how it rendered any public statement inaccurate. The Complaint is also devoid of allegations that Mr. Wagenhals tracked production numbers any time after the call in 2021. Such generalized assertions about access to internal metrics are insufficient. *See Zucco Partners, LLC v. Digimarc Corp.,* 552 F.3d 981, 1000 (9th Cir. 2009) (holding that allegations that senior management "closely reviewed" quarterly accounting figures and discussed inventory numbers were inadequate to establish actual access to contradictory information).

Moreover, while CW1 is the only confidential witness of eight who allegedly interacted directly with Mr. Wagenhals, CW1 left the company three months before Mr. Wagenhals spoke on the November 15, 2022 earnings call. Compl. ¶ 40. The remaining

CWs on which Plaintiffs rely are not alleged to have had any contact with Mr. Wagenhals and therefore cannot plausibly establish what he knew when he spoke in November 2022.

At most, Plaintiffs point to alleged operational challenges and, with the benefit of hindsight, attempt to transform them into proof that Mr. Wagenhals's statement was false when made. Such speculative and generalized CW allegations are insufficient to plead falsity, let alone the strong inference of scienter required under the PSLRA.[5] *See* ECF No. 69 at 14-15 (explaining how the CWs' allegations do not show scienter).

## III.    PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER

### A.  Mr. Wagenhals's Stock Sales Do Not Support an Inference of Scienter

Plaintiffs' contention that Mr. Wagenhals's sale of Ammo stock supports an inference of scienter fails as a matter of law and pleading. The Complaint alleges only that Mr. Wagenhals, then Ammo's Executive Chairman, profited "from stock sales in a manner that was out of line with prior trading histories over a comparable period in the past." Compl. ¶¶ 22, 60. That conclusory assertion is unsupported by particularized facts.

In their Opposition, Plaintiffs attempt to embellish these allegations, claiming that Mr. Wagenhals sold "more than twice his base salary in 2024." ECF No. 73 at 68 (citing Compl. ¶ 162).[6] But the Complaint contains no such allegation, and the Opposition cannot amend the pleadings through argument. *Schneider v. California Dept. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (stating "[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."). Nor does the Complaint allege the critical metric required to assess whether insider sales are suspicious:

---

[5] Plaintiffs' reliance on SEC filings that Mr. Wagenhals signed with Sarbanes Oxley certifications also do not establish a strong inference of scienter. *See Zucco Partners, LLC v. Digimarc Corp.,* 552 F.3d 981, 1003-4 (9th Cir. 2009) (holding that Sarbanes-Oxley certifications "are not enough to create a strong inference of scienter").

[6] Plaintiffs improperly rely on an SEC Complaint to support this statement. *See*, *supra* at Section V for discussion concerning the SEC Complaint.

the proportion of shares sold relative to the total shares the insider could have sold. *See In re Silicon Graphics Inc. Securities Litig.*, 183 F.3d 970, 986 (9th Cir. 1999), *as amended* (Aug. 4, 1999) (explaining that the percentage of holdings sold is probative of whether a transaction is unusual or suspicious); *see also, In re Quality Systems, Inc. Securities Litig.*, 865 F.3d 1130, 1146 (9th Cir. 2017). Without allegations regarding Mr. Wagenhals's total holdings, Plaintiffs' characterization of the transactions as a "stock dump" is pure rhetoric.

The Complaint also undercuts any inference of motive when considered against historical stock prices. It alleges that Mr. Wagenhals sold shares at approximately $2.50 per share in 2024. Yet during the five-year Class Period, Ammo's stock allegedly traded as high as approximately $9.79 per share in 2021.[7] If Mr. Wagenhals were engaged in a scheme to inflate the stock price for personal gain beginning in 2020, one would expect him to have sold at or near significantly higher prices. Plaintiffs offer no explanation for why he did not. The more plausible inference is that there was no scheme to artificially inflate the price. Ultimately, Plaintiffs' theory rests on speculation, not particularized facts. And absent compelling, well-pleaded allegations of fraudulent intent or deliberate recklessness, courts will not infer scienter based solely on routine trading activity.

### B. Corrective Disclosures Do Not Establish Scienter

Plaintiffs attempt to manufacture scienter from a disclosure made in May 2025—after Mr. Wagenhals was no longer with the company—but that theory is legally insufficient. A subsequent filing does not demonstrate that, years earlier, Mr. Wagenhals knowingly concealed information about Mr. Larson's alleged role or any supposed disclosure obligation arising from it. Plaintiffs rely on Ammo's May 20, 2025, Form 10-K/A to assert that Mr. Larson operated as an executive officer and that the individual

---

[7] In 2021, Ammo's average stock price for the year was $6.71 per share with a high of $9.79. This is publicly available historical price data located online at https://www.macrotrends.net/stocks/charts/POWW/outdoor-holding/stock-price-history. (last visited March 2, 2026).

Defendants were aware of that fact. Compl. ¶¶ 151, 154. Yet, the Ninth Circuit has squarely rejected the notion that a restatement, standing alone, supports a strong inference of scienter. *Zucco*, 552 F.3d at 1000.

The court in *Zucco* recognized only limited circumstances where a later correction may contribute to scienter—namely, where plaintiffs allege specific facts showing that management had direct access to the relevant information at the time, or where the falsity would have been so obvious that senior executives could not plausibly have been unaware. *Id*. at 1000–01. The Complaint alleges neither. It does not plead particularized facts showing that Mr. Wagenhals knew of the contents or legal significance of Mr. Larson's SEC consent, concluded that his role violated that consent, or possessed such knowledge when the challenged statements were made. Without allegations of contemporaneous awareness or patent falsity, Plaintiffs' reliance on a later-filed amendment cannot bridge the gap. The May 20, 2025, Form 10-K/A therefore does not carry Plaintiffs' burden under the PSLRA to plead a strong inference of scienter.

## C. Plaintiffs Fail to Establish Scienter with the Core Operations Doctrine

Plaintiffs' scienter theory cannot be salvaged by the "core operations" doctrine, which applies only where plaintiffs plead particularized facts showing defendants had actual access to the contradictory information, or in the rare case where the issue was so central that ignorance would be "absurd." *South Ferry LP v. Killinger*, 542 F.3d 776, 785–86 (9th Cir. 2008). Neither circumstance is present here.

Plaintiffs identify no specific information to which defendants allegedly had access that rendered statements about the Manitowoc Facility false. Their reliance on Mr. Wagenhals's generalized comment *in 2021* about reviewing "numbers, numbers, numbers" does not satisfy the PSLRA. Plaintiffs fail to specify which performance data he reviewed, what that information reflected, or how it rendered any public statement inaccurate. Broad

claims regarding access to internal metrics are insufficient to establish scienter. *See Zucco.,* 552 F.3d at 1000 (9th Cir. 2009) (holding that allegations that senior management "closely reviewed" quarterly accounting figures and discussed inventory numbers were inadequate to establish actual access to contradictory information).

Nor is this the "rare" case where operational issues were so prominent that knowledge can be presumed. Plaintiffs resort to arguing that it is "absurd" that Mr. Wagenhals, "*despite constant monitoring*," would not have known about the "rampant production problems and logged breakdowns at the Manitowoc Facility." ECF No. 73 at 59. Plaintiffs, however, fail to allege that Mr. Wagenhals even tracked production numbers after his statement in 2021. Such allegations are fatal to Plaintiffs' attempt to plead scienter under the PSLRA with the core operations doctrine.

## IV.   PLAINTIFFS FAIL TO SUFFICIENTLY PLEAD LOSS CAUSATION

Plaintiffs fail to plead loss causation with the particularity required by the PSLRA. In support, under Rule 10(c), Mr. Wagenhals adopts and incorporates by reference the arguments set forth in AMMO, Inc.'s and Jared R. Smith's Reply concerning Plaintiffs' failure to plead loss causation with particularity.

## V.   PLAINTIFFS FAIL TO PLEAD A SCHEME LIABILITY CLAIM

Plaintiffs attempt to manufacture a scheme-liability theory by invoking an SEC Administrative Order issued on December 15, 2025, asserting that "the SEC has already found that … Wagenhals, Wiley and Larson, at least, engaged in the fraudulent scheme alleged here." ECF No. 73 at 75. That representation is misleading because the Order expressly states in footnote 1 that its findings were made pursuant to Ammo's Offer of Settlement and "are not binding on any other person or entity in this or any other proceeding." *Id*. at Ex. 2 n.1. By its own terms, the Order reflects a settlement, not an adjudication, and therefore cannot supply binding findings or evidentiary support in this

case. *See Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) (holding that an SEC consent judgment, not resulting from actual adjudication, cannot be used as evidence in subsequent litigation). Plaintiffs, however, compound the problem by citing allegations from an SEC complaint in a separate enforcement action and characterizing them as "SEC findings." ECF No. 73 at 75. A complaint contains allegations—not findings of fact—and carries no preclusive or evidentiary weight. Plaintiffs' attempt to convert non-binding settlement language and unadjudicated allegations and into proof of scheme liability is improper and falls far short of the standards required under the PSLRA.

Regarding Mr. Wagenhals, Plaintiffs base their scheme-liability claim solely on alleged misstatements and omissions about Mr. Larson. The Supreme Court in *Lorenzo v. SEC* acknowledges overlap between misstatements and scheme liability, but scheme liability still requires deceptive conduct beyond the misrepresentations themselves. 587 U.S. 71, 80 (2019). Plaintiffs allege none and cannot satisfy their pleading burden.

## VI.   PLAINTIFFS FAIL TO PLEAD A CLAIM UNDER SECTION 20(A)

Section 20(a) imposes control-person liability only where a plaintiff pleads both a primary securities law violation and that the defendant exercised actual control over the primary violator. *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1052 (9th Cir. 2014). Because Plaintiffs have not adequately alleged a predicate violation of Section 10(b) or Rule 10b-5, their Section 20(a) claim necessarily fails. *See Nguyen v. Edologix,* 962 F.3d 405, 419 (9th Cir 2014).

## VII.   CONCLUSION

Based on the foregoing and Rules 12(b)(6) and 9(b), and the PSLRA, Mr. Wagenhals respectfully seeks dismissal of Plaintiffs' Amended Complaint with prejudice.

Dated: March 5, 2026

Respectfully Submitted,

**SALLAH ASTARITA & COX, LLC**

By: /s/ *Jeffrey L. Cox*
Jeffrey L. Cox (*pro hac vice*)
Florida Bar No. 173479
Telephone: 561-989-9080
Facsimile: 561-989-9020
Email: jlc@sallahlaw.com

James D. Sallah (*pro hac vice*)
Florida Bar No. 92584
3010 N. Military Trail, Ste. 210
Boca Raton, Florida 33431
Telephone: 561-989-9080
Facsimile: 561-989-9020
Email: jds@sallahlaw.com

*Attorneys for Fred W. Wagenhals*

## L.R. Civ. 12.1(c) Certification

Pursuant to L.R. Civ. 12.1(c), I certify that counsel for Fred W. Wagenhals conferred with Plaintiffs' counsel about the issues in the Motion to Dismiss during a video teleconference on December 8, 2025. The parties were unable to agree that the pleading was curable in any part by a permissible amendment offered by the pleading party

/s/ *Jeffrey L. Cox*

## Certificate of Service

I hereby certify that on March 5, 2026, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrations listed for this matter.

/s/ *Jeffrey L. Cox*

12