**DLA PIPER LLP (US)**
Kyle T. Orne (SBN 032438)
kyle.orne@us.dlapiper.com
2525 East Camelback Road Suite 1000
Phoenix, Arizona 85016
Tel: 480.606.5100
Fax: 480.606.5101
dlapiper@us.dlapiper.com

Jason S. Lewis (*pro hac vice*)
jason.lewis@us.dlapiper.com
Jason M. Hopkins (*pro hac vice*)
jason.hopkins@us.dlapiper.com
1900 N. Pearl Street, Suite 2200
Dallas, Texas 75201
Tel: 214.743.4500
Fax: 214.743.4545

*Attorneys for Defendant Chris Larson*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dmitry Cherches; Irene Zvagelsky; and Hideyoshi Delgado; Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMMO, Inc.; Fred W. Wagenhals; Christopher D. Larson; Jared R. Smith; Robert D. Wiley; and John P. Flynn,<br><br>Defendants. | Case No.: CV-24-02619-PHX-DJH<br><br>**DEFENDANT CHRIS LARSON'S REPLY MEMORANDUM IN SUPPORT OF RULE 12(B)(6) MOTION TO DISMISS [DOC. 67] AMENDED COMPLAINT**<br><br>**(Oral Argument Requested)** |

Pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the PSLRA, Defendant Chris Larson respectfully files this reply memorandum in support of his motion to dismiss (the "Motion") [Doc. 67] the Amended Complaint [Doc. 42].[1]

---

[1] Pursuant to Federal Rule of Civil Procedure 10(c), Mr. Larson joins the Ammo Defendants' concurrently filed reply memoranda. The arguments made in those replies are adopted in whole and incorporated herein, to the extent applicable. Capitalized terms have the meanings set forth in the Motion and any references to page numbers are to the ECF stamped filing page numbers.

DLA PIPER LLP (US)
ATTORNEYS AT LAW

**PRELIMINARY STATEMENT**

Despite a 70+ page opposition to dismissal (the "Opposition" or "Opp.") [Doc. 73], Plaintiffs' cannot salvage their Amended Complaint and do not rebut the compelling arguments for dismissal in Mr. Larson's 13-page Motion. Unlike the five other Defendants, the Opposition expressly concedes "Larson was not alleged to have made misleading public statements as an officer of the Company." Opp. at 84 n.36. As a result, the scheme liability claim alleged against Mr. Larson exclusively relies on conduct, not any purported misrepresentation or omission. Mr. Larson—who is alleged to have resigned from the Company on November 4, 2022—was not even employed by the Company for more than half of Plaintiffs' nearly 5-year, proposed Class Period that spans to May 20, 2025. In short, Mr. Larson is a tacked-on afterthought. In addition to the arguments set forth in the Ammo Defendants' motions to dismiss, dismissal of the scheme liability and control person claims against Mr. Larson is warranted for the numerous independent reasons set forth in the Motion.

*First*, Plaintiffs' scheme liability claim fails. After lumping Mr. Larson with all the other Defendants in the Amended Complaint, Plaintiffs now concede that "Larson was not alleged to have made misleading public statements as an officer of the Company." Opp. at 84 n.36. In further violation of Rule 9(b), Plaintiffs do not allege any conduct by Mr. Larson contributing to an alleged scheme to defraud Company's shareholders; Plaintiffs instead only allege that the collective "Defendants" engaged in a scheme.

*Second*, Plaintiffs fail to satisfy the heightened pleading standard to support a strong inference of scienter, ***specifically as to Mr. Larson***. Plaintiffs concede Mr. Larson was not alleged to have made any suspicious stock sales. Plaintiffs expressly admit some of their eight CWs "do not discuss the allegations as to Larson." Opp. at 64 n.25. The allegations in the Amended Complaint fail to allege a plausible inference of scienter as to Mr. Larson, much less the cogent and compelling inference required here.

*Finally*, Plaintiffs' derivative control person claim fails because they fail to assert a primary violation and Mr. Larson was not sufficiently alleged to be a control person.

Consequently, Mr. Larson should be dismissed with prejudice from this action for Plaintiffs' failure to state a single cognizable claim against him.

## ARGUMENT & AUTHORITIES

### I.   Untested Allegations In Other Lawsuits Are Not Adjudicated Facts

Recognizing how strained Plaintiffs' theory really is, the Opposition extensively cites the SEC Complaint and SEC Order Making Findings (as defined in the Opposition) improperly and for the truth of the matters asserted. *See* Opp. at 3. Neither document is judicially noticeable.

As a preliminary matter, neither document is referenced in the Amended Complaint. Indeed, the existence of both documents post-date the filing of the instant lawsuit in 2024 and the Amended Complaint. Thus, neither is judicially noticeable. Plaintiff's own case recognizes this import. *See* Opp. at 41 n.20 (citing *In re Cylink Sec. Litig.*, 178 F. Supp. 2d 1077, 1080 (N.D. Cal. 2001) ("[b]ecause the [complaint] refers to the contents of the SEC complaint . . . the court may also consider the allegations contained therein")). Plaintiffs cite no authority in the Ninth Circuit (or otherwise) where a court has judicially noticed a complaint from another lawsuit that was filed ***after*** the instant lawsuit and is not referenced in the instant complaint.

And to the extent Plaintiffs are now relying on these documents by virtue of their citation in the Opposition, it is axiomatic that a plaintiff "cannot use his response to a motion to dismiss as a means of amending his complaint." *Mamboleo v. Wells Fargo Bank NA*, 2015 WL 9691022, at *7 n.6 (D. Ariz. Feb. 25, 2015) (Humetewa, J.), *aff'd*, 688 F. App'x 418 (9th Cir. 2017).

More fundamentally, as Plaintiffs' own authority recognizes (Opp. at 3 n.3), the Court cannot "consider the order for the truth of the matters therein." *Cullen v. Ryvyl Inc.*, 2024 WL 4536471, at *3 (S.D. Cal. Oct. 21, 2024) (collecting authority). Yet, without hearing or rulings or any form of decision on the merits by the district court, Plaintiffs lift allegations from the SEC Complaint, which are just that, allegations and not facts. *See SEC v. Digital Licensing Inc.*, 2024 WL 1157832, at *21 (D. Utah Mar. 18, 2024) ("That the

DLA PIPER LLP (US)
ATTORNEYS AT LAW

Commission files a complaint does not conclusively prove, nor serve as evidence of, fraud or anything else.  The contents of a complaint ordinarily are nothing more than unproven allegations."); *United States v. Bailey*, 696 F.3d 794, 801 (9th Cir. 2012) ("far from evidence of anything").

## II.   <u>**Plaintiffs' Shotgun Pleading Fails to State A Scheme Liability Claim**</u>

Plaintiffs' Count I attempts to plead a claim for scheme liability in violation of Section 10(b) and Rules 10b-5(a) and (c), but fails to plead a viable claim against Mr. Larson—particularly in light of Plaintiffs' concession that "Larson was not alleged to have made misleading public statements as an officer of the Company."  Opp. at 84 n.36.

The first element of scheme liability requires the defendant to have "committed a manipulative or deceptive act in furtherance of the scheme."  *Cooper v. Pickett*, 137 F.3d 616, 624 (9th Cir. 1997).  Plaintiffs must allege Mr. Larson "engaged in conduct that had the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme."  *Simpson v. AOL Time Warner, Inc.*, 452 F.3d 1040, 1048 (9th Cir. 2006), *vacated on other grounds by Simpson v. Homestore.com, Inc.*, 519 F.3d 1041 (9th Cir. 2008).  A defendant's conduct that "does not have a principal legitimate business purpose, such as the invention of sham corporate entities to misrepresent the flow of income, may have a principal purpose of creating a false appearance."  *Id.* at 1050.  "Conduct that is consistent with the defendants' normal course of business would not typically be considered to have the purpose and effect of creating a misrepresentation."  *Id.*

The Opposition categorizes the alleged conduct of Mr. Larson in furtherance of a purported "scheme" into the following three buckets: (i) "[a]ccepted secret kickbacks from third-parties," (ii) "accepted compensation for his family members from the Company through undisclosed related-party transactions," and (iii) "secretly operated as an executive officer."  Opp. at 62 (citing Am. Compl. ¶¶ 146, 151, 154).  None of this alleged conduct sufficiently states a cognizable scheme liability claim under Ninth Circuit law.

***First***, Plaintiffs' theory that "Larson received kickbacks from a third-party services provider of AMMO in exchange for this service provider receiving business from the

Company" as "a commission from, services rendered to AMMO by this third-party service provider that AMMO had a master services agreement with" cannot support a scheme liability theory as a matter of law because Plaintiffs do not allege that the processing company's services were illegitimate nor that a contractual finder's fee was inconsistent with the Company's normal course of business.  Am. Compl. ¶ 77.  "Conduct that is consistent with the defendants' normal course of business," however, "would not typically be considered to have the purpose and effect of creating a misrepresentation," and thus, standing alone, cannot suffice to plead scheme liability.  *Simpson*, 452 F.3d at 1050 (collecting cases) (noting creation of "[s]ham business transactions with no legitimate business purpose" could suffice to plead scheme liability).  This is because "the conduct at issue must involve 'sham' or 'inherently deceptive' transactions, to be an actionable basis for scheme liability."  *SEC v. Daifotis*, 2011 WL 2183314 (N.D. Cal. June 6, 2011) (dismissing scheme liability claim) (citing *SEC v. Lucent Techs., Inc.*, 610 F. Supp. 2d 342, 360 (D.N.J. 2009) ("The alleged 'deception in this case arose from the failure to disclose the real terms of the deal,' which is 'nothing more than a reiteration of the misrepresentations and omissions that underlie plaintiffs [sic] disclosure claim.'")).

Here, Plaintiffs concede that Ammo retained the processing company for a legitimate business purpose—"carting and processing of ACH and associated credit card processing transactions."  Am. Compl. ¶ 151.  Indeed, Plaintiffs acknowledge that "the Company had a Master Services Agreement and from which the Company received services" from the "third-party service provider."  *Id.* ¶ 21.  This further "suggests defendants' [transaction] was a business decision that did not have the 'purpose and effect of creating a misrepresentation.'"  *In re Stem, Inc. Secs. Litig.*, 2025 WL 3675114, at *12 (N.D. Cal. Dec. 17, 2025) (dismissing scheme liability claim).  "All these actions had a legitimate business purpose, and in none of them can Plaintiff point to facts supporting the inference that they were conducted for illegitimate means."  *Borteanu v. Nikola Corp.*, 2023 WL 11017679, at *18 (D. Ariz. Dec. 8, 2023).

***Second***, Plaintiffs allege that Mr. Larson "accepted compensation for his family

members from the Company through undisclosed related-party transactions." Opp. at 62. But for scheme liability to attach, "the defendant must have engaged in conduct that had the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme . . . the defendant's *own conduct* contributing to the transaction or overall scheme must have had a deceptive purpose or effect.'" *SEC v. Fraser*, 2009 WL 2450508, at *9 (D. Ariz. Aug. 11, 2009) (citing *Simpson*, 452 F.3d at 1048) (emphasis added). Plaintiffs must allege "more than a generalized scheme of misconduct." *Id.* at *10 (citing *In re Brocade Commc'ns Sys., Inc. Derivative Litig.*, 615 F. Supp. 2d 1018, 1044 (N.D. Cal. 2009)). Plaintiffs "must also identify what aspects of the defendant's conduct had a deceptive purpose and effect in furtherance of the scheme." *SEC v. Otto*, 2010 WL 11682498, at *8 (W.D. Wash. Aug. 2, 2010) (citing *Fraser*, 2009 WL 2450508, at *11).

Plaintiffs fail to allege any conduct committed by Mr. Larson himself. Instead, the Amended Complaint identifies "the Company entered into an agreement with Larson Building [Mr. Larson's brother's company] to serve as the general contractor for the construction of its Manitowoc, WI manufacturing facility." Am. Compl. ¶ 151. Plaintiffs do not allege any action taken by Mr. Larson. Moreover, the construction contract with Mr. Larson's brother had a "legitimate business purpose" for the Company. *Borteanu*, 2023 WL 11017679, at *18.

***Third***, Plaintiffs' allegation that Mr. Larson "secretly operated as an executive officer" (Opp. at 62) fails because Mr. Larson was not a *de facto* officer as matter of law. *See* Mot. at 16–18. Moreover, this allegation is entirely duplicative of Plaintiffs' theory "that Defendants concealed that Chris Larson illegally served as AMMO's *de facto* co-CEO and CFO at the same time he was barred from serving as an officer or director of any public company by a Consent Decree." Opp. at 15. But, "[t]he scheme must encompass conduct beyond those misrepresentations or omissions." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1017 (9th Cir. 2018); *see also In re Genius Brands Int'l, Inc. Sec. Litig.*, 2021 WL 12327975, at *13 (C.D. Cal. Aug. 30, 2021) ("plaintiff's scheme liability claim cannot be based solely on false or misleading statements, but must instead involve deceptive

DLA PIPER LLP (US)
ATTORNEYS AT LAW

6

conduct beyond those misrepresentations or omissions").

Accordingly, none of Plaintiffs' three buckets is cognizable and Plaintiffs' attempt to establish scheme liability against Mr. Larson fails.

### III.    Plaintiffs Fail To Plead A Strong Inference of Scienter

"To plead scienter, a complaint must state with particularity facts giving rise to a strong inference that defendants acted with the intent to deceive or with deliberate recklessness as to the possibility of misleading investors." *Espy v. J2 Glob., Inc.*, 99 F.4th 527, 535 (9th Cir. 2024). The "strong inference requirement is exacting." *In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1058 (9th Cir. 2023). Plaintiffs concede "scienter is subject to the PSLRA's heightened pleading requirements." Opp. at 62. Whether viewed individually or holistically, the allegations in the Amended Complaint do not give rise to a strong inference of scienter as to Mr. Larson.

### A.    Plaintiffs Have Not Alleged A Plausible Motive

The Amended Complaint does not allege that Mr. Larson had any motive to defraud investors. The Opposition asserts that Defendants "had motive as well: the executives used the scheme to sell stock at inflated prices as well as to enrich themselves through extravagant undisclosed salaries and banned kickback schemes." Opp. at 18.

Despite Plaintiffs' continued group pleading asserting that "the executives used the scheme to sell stock at inflated prices," (Opp. at 18), Plaintiffs make no specific allegation as to Mr. Larson. Plaintiffs do not refute and therefore concede that their "abject failure to make any allegations about Mr. Larson's trading history means no inference of scienter can be gleaned from unpled allegations of Mr. Larson's stock sales. Mot. at 15. "[A] lack of stock sales can detract from a scienter finding." *Webb v. Solarcity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018).

The thrust of Plaintiffs' circular scienter theory is that "Defendants concealed that Chris Larson illegally served as AMMO's *de facto* co-CEO and CFO at the same time he was barred from serving as an officer or director of any public company by a Consent Decree." Opp. at 15. But the Consent Decree did not prohibit a publicly-traded company

like Ammo from hiring Mr. Larson as an employee or entrusting him with significant responsibility.  Instead, it barred Mr. Larson from "acting as an officer or director of any issuer" of registered securities for a (now-expired) period of five years.  Am. Compl. ¶ 146.  The Amended Complaint does not include a single allegation that Mr. Larson knew at the time that his purported duties, as the Vice President of Finance, fell within the scope of the Consent Decree's prohibition.[2]  Neither back then nor now was Mr. Larson aware of violating the Consent Decree (because he did not).  Indeed, Mr. Larson (i) did not have control over any of the Ammo Defendants, (ii) did not sign any of the at issue SEC filings, (iii) did not oversee a principal business, and (iv) was not even employed by the Company through the 5-year proposed Class Period.  Moreover, Plaintiffs' theory that Mr. Larson was motivated to perpetuate a scheme through a 5-year class period ending in 2025 makes no sense given that he is alleged to have left the Company in 2022.  Any motive to perpetuate a scheme would have necessarily terminated upon his departure, and Plaintiffs fail to allege any particularized facts showing Mr. Larson had a continuing motive after leaving AMMO.

Further, Plaintiffs erroneously rely on and cite to the SEC Complaint to create a nonexistent motive.  *See* Opp. at 69 (citing SEC Complaint ¶¶ 54–64).  This is improper for the reasons set forth above.  *See supra* Section I ("Untested Allegations In Other Lawsuits Are Not Adjudicated Facts").

Thus, Plaintiffs failed to articulate a plausible motive for Mr. Larson to establish scienter.

### B.      Plaintiffs' Confidential Witness Allegations Do Not Show Scienter

The Ninth Circuit rejects confidential witness allegations where a CW is "simply not positioned to know the information alleged," "report[s] only unreliable hearsay" or "allege[s] conclusory assertions of scienter." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009).  Here, Plaintiffs' reliance on eight CWs to salvage their scienter allegation as to Mr. Larson is unavailing because four of them had no interaction

---

[2] They did not.  Moreover, the SEC knew precisely what Mr. Larson's duties would be <u>before</u> the settlement was agreed to.

with Mr. Larson (two of which Plaintiffs expressly concede) and the remaining CWs recount conclusory, non-specific allegations.

**CW1**: CW1 only makes generalized recollections and broad impressions of their impression of Mr. Larson's role at the Company. *See* Am. Compl. ¶ 40. But "[f]or the most part, these allegations are not supported by personal knowledge" and "even to the extent these allegations are supported by personal knowledge, they do not create a strong inference of scienter." *In re Medicis Pharm. Corp. Sec. Litig.*, 689 F. Supp. 2d 1192, 1214 (D. Ariz. 2009); *see also Nguyen v. Endologix, Inc.*, 962 F.3d 405, 416–17 (9th Cir. 2020). (rejecting statements of confidential witness that lacked detail). CW1's only allegation with any level of specificity relates to the scattering of "vodka bottles," *see* Am. Compl. ¶ 41, but "the[se] statements from confidential witnesses do not further the Plaintiffs' allegations" and have no relevance to the claims asserted other than to paint Mr. Larson in a bad light before the Court. *In re Medicis Pharm. Corp. Sec. Litig.*, 689 F. Supp. 2d at 1214.

**CW2**: CW2 does not make any allegations relevant to scienter as to Mr. Larson. Instead, CW2 simply recalls that Mr. Larson "shared an office" with Wagenhals and provided "leadership." Am. Compl. ¶ 42. This non-specific allegation is entirely consistent with the fact that "Larson was the Company's Co-Founder, along with Wagenhals." *Id.* ¶ 23. This allegation is still not indicative of scienter because "management's general awareness of the day-to-day workings of the company's business does not establish scienter," without additional allegations "of specific information conveyed to management and related to the fraud." *Metzler Invest. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1068 (9th Cir. 2008).

**CWs 3 & 4**: Both CW3 and CW4 primarily just "confirmed the accounts" of other CWs. *See, e.g.*, Am. Compl. ¶¶ 43–44. These generalized recollections and broad recounts of others' impressions of Mr. Larson's role at the Company are not indicative of scienter. *See Espy*, 99 F.4th at 537 (CW's reliance "on secondhand information" undermined testimony because it was "unclear whether [certain] statements [came] from general knowledge, gossip, or the meeting where [the witness] was present").

**CWs 5–8**: The Opposition expressly concedes that CW6 and CW7 "do not discuss the allegations as to Larson." Opp. at 64 n.25. Neither CW5 nor CW8 make any allegations with respect to Mr. Larson. *See* Am. Compl. ¶¶ 55, 82, 86, 105, 107, 110, 115, 153 (CW5); *id.* ¶¶ 60, 82, 84, 86, 105, 107, 110, 115, 153 (CW8).

In sum, none of the CW allegations contain particularized facts giving rise to a strong inference of scienter specifically as to Mr. Larson. *See In re Bare Escentuals, Inc.*, 745 F. Supp. 2d 1052, 1079 (N.D. Cal. 2010) (finding no inference of scienter where plaintiffs "failed to offer any confidential witness information" as to defendants).

## IV.   Plaintiffs Fail to Plead Mr. Larson Was A Control Person

To state a claim of control person liability under Section 20(a), Plaintiffs must demonstrate (i) "a primary violation of federal securities law" and (ii) that "the defendant exercised actual power or control over the primary violator." *Zucco*, 552 F.3d at 900.

*First*, because Plaintiffs failed to state a viable claim under Section 10(b) or Rule 10b-5, the Court should also dismiss their Section 20 claim against Mr. Larson. *See id.*

*Second*, Plaintiffs do not sufficiently allege Mr. Larson's "actual power or control."[3] In their Opposition, Plaintiffs further zero-in on the Merger (as defined in the Opposition) as the sole specified example of Mr. Larson's purported "power or control" over the Company. *See* Opp. at 80–82 (citing Am. Compl. ¶ 38). But under Ninth Circuit precedent, to assess control person liability, the "inquiry must revolve around the management and policies of the corporation, not around discrete transactions." *Paracor Fin., Inc. v. Gen.*

---

[3] Plaintiffs understate the relevant pleading standard and assert "Section 20(a) control person claims are subject only to the notice pleading requirements of Rule 8." Opp. at 79 (citing *Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 690 F. Supp. 2d 959, 970 (D. Ariz. 2010)). But that same case expressly recognized the "Ninth Circuit has yet to address the issue of whether a section 20(a) claim should be plead in conformity with Rule 9(b)." *Id.* at 966. Indeed, numerous district courts in the Ninth Circuit have recognized Rule 9(b)'s applicability to Section 20(a) claims when they are grounded in a fraud claim (like this one). *See, e.g., In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 480 F. Supp. 3d 1050, 1069 (N.D. Cal. 2020); *Kampe v. Volta Inc.*, 2024 WL 4534732, at *15 (N.D. Cal. Oct. 21, 2024); *Chan v. Orthologic Corp.*, 1998 WL 1018624, at *8 (D. Ariz. Feb. 5, 1998); *Hayley v. Parker*, 2002 WL 925322, at *8–9 (C.D. Cal. Mar. 15, 2002); *Howard v. Hui*, 2001 WL 1159780, at *4 (N.D. Cal. Sept. 24, 2001); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 2000 WL 1727405, at *3–4 (N.D. Cal. Sept. 29, 2000).

*Elec. Cap. Corp.*, 96 F.3d 1151, 1162 (9th Cir. 1996); *accord In re Wells Fargo Mortg.-Backed Certificates Litig.*, 712 F. Supp. 2d 958, 970 (N.D. Cal. 2010) ("influence [over] certain portions of the transactions at issue is insufficient to plead a control person theory."). For instance, unlike Defendants Wagenhals, Smith, or Wiley, Plaintiffs do not allege that Mr. Larson signed any of the public filings, spoke at any earnings call, answered investor questions, or dictated any Company-wide policy or procedure.  *See* Opp. at 80.[4]

Plaintiffs assert "Larson erroneously argues that he cannot be liable as a control person for the period following his departure from the Company" in November 2022, and that "Larson continued to control the Company even after he stepped down as its officer at least into fiscal year 2024, as more fully set forth in the falsity section at II.B.1.a."  Opp. at 81.  But "section [] II.B.1.a" of Plaintiffs' Opposition has no specific allegations or citations to any "continued [] control" after Mr. Larson's November 2022 departure from the Company.  *See* Opp. at 32–33 (referencing fiscal years 2022 and 2023).  Nor does the Amended Complaint.  In other words, *Maverick Fund v. Comverse Technology*, 801 F. Supp. 2d 41 (E.D.N.Y. 2011) and the other cited authority in Mr. Larson's Motion are directly on point.  *See* Mot. at 18 (collecting authority).  Absent any allegations of "continued control" after November 2022, Mr. Larson "cannot be liable as control person[] for the period after [he] left the Company."  *Maverick Fund*, 801 F. Supp. 2d at 61; *see also In re Braksem S.A. Sec. Litig.*, 246 F. Supp. 3d 731, 771 (S.D.N.Y. 2017) (same).

For any or all of the reasons set forth above—whether subject to Rule 8 or 9(b)—dismissal of the Section 20(a) claim against Mr. Larson is warranted.

## CONCLUSION

Accordingly, the Court should grant Mr. Larson's Motion and dismiss him from this action with prejudice because Plaintiffs failed to state a claim upon which relief can be granted, and any additional amendment from Plaintiffs would be futile.

---

[4] Plaintiffs' conclusory "puppet" allegations (*see* Am. Compl. ¶ 40; Opp. at 82 n.35) likewise does not plausibly allege Mr. Larson was a control person.  *See In re Tezos Sec. Litig.*, 2018 WL 4293341, at *10 (N.D. Cal. Aug. 7, 2018) (rejecting similar threadbare "puppet" allegation).

DLA PIPER LLP (US)
ATTORNEYS AT LAW

11

Dated: March 5, 2026.

**DLA PIPER LLP (US)**

Respectfully submitted,

*s/ Kyle T. Orne*
Kyle T. Orne (SBN 032438)
kyle.orne@us.dlapiper.com
2525 East Camelback Road Suite 1000
Phoenix, Arizona 85016
Tel: 480.606.5100
Fax: 480.606.5101

Jason S. Lewis (*pro hac vice*)
jason.lewis@us.dlapiper.com
Jason M. Hopkins (*pro hac vice*)
jason.hopkins@us.dlapiper.com
1900 North Pearl Street, Suite 2200
Dallas, Texas 75201
Tel: 214.743.4546
Fax: 214.743.4545

*Attorneys for Defendant*
*Chris Larson*

DLA Piper LLP (US)
Attorneys at Law

12

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2026 a true and correct copy of foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

Gary A. Gotto
**KELLER ROHRBACK LLP**
3101 North Central Ave., Ste. 1400
Phoenix, AZ 85012-2600
Tel: 602.230.6322
ggotto@kellerrohrback.com

*Liaison Counsel for Lead Plaintiffs*

Joshua B. Silverman (*pro hac vice*)
Brian P. O'Connell (*pro hac vice*)
Jianan Jiang (*pro hac vice*)
**POMERANTZ LLP**
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Tel: 312.377.1181
Fax: 312.229.8811
jbsilverman@pomlaw.com
boconnell@pomlaw.com
ajiang@pomlaw.com

*Co-Lead Counsel for Plaintiffs*

Peretz Bronstein (*pro hac vice*)
Michael Boyle (*pro hac vice*)
**BRONSTEIN GEWITZ & GROSSMAN LLC**
60 East 42nd St., Ste. 4600
New York, NY 10165
Tel: 212.697.6484
peretz@bgandg.com
mboyle@bgandg.com

*Co-Lead Counsel for Plaintiffs*

James D. Sallah (*pro hac vice*)
Jeffrey L. Cox (*pro hac vice*)
**SALLAH ASTARITA & COX, LLC**
3010 N. Military Trail, Ste. 210
Boca Raton, Florida 33431
Tel: 561.989.9080
Fax: 561.989.9080
jds@sallahlaw.com
jlc@sallahlaw.com

*Counsel for Defendant Fred. W. Wagenhals*

Brian Schulman
**BALLARD SPAHR LLP**
1 East Washington Street, Suite 2300
Phoenix, AZ 85004
Tel: 602.798.5400
Faz: 602.798.5595
schulmanb@ballardspahr.com

*Counsel for Defendants Ammo, Inc. and Jared R. Smith*

William B. Igoe (*pro hac vice*)
Norman M. Goldberger (*pro hac vice*)
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Tel: 215.665.8500
Fax: 215.864.8999
igoew@ballardspahr.com
goldbergerm@ballardspahr.com

*Counsel for Defendants Ammo, Inc. and Jared R. Smith*

DLA PIPER LLP (US)
ATTORNEYS AT LAW

13

Andrey Spektor (*pro hac vice*)
Maryclaire Kennedy (*pro hac vice*)
**NORTON ROSE FULBRIGHT US LLP**
1301 Avenue of the Americas
New York, New York 10019
Tel: 212.318.3130
Andrey.Spektor@nortonrosefulbright.com
Maryclaire.Kennedy@nortonrosefulbright.
com

*Counsel for Defendant Robert D. Wiley*

Laura Perlov (*pro hac vice*)
K. Austin Hartley (*pro hac vice*)
**NORTON ROSE FULBRIGHT US LLP**
1225 Seventeenth Street, Suite 3050,
Denver, Colorado 80202
Tel: (303) 801-2682
Fax: (303) 801-2777
Laura.Perlov@nortonrosefulbright.com
Austin.Hartley@nortonrosefulbright.com

*Counsel for Defendant Robert D. Wiley*

*s/ Marlena Soto*
_____

DLA Piper LLP (US)
Attorneys at Law

14