**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.**
Therese M. Doherty (*pro hac vice*)
TDoherty@mintz.com
LisaMarie Collins (*pro hac vice*)
LCollins@mintz.com
James Ingram (*pro hac vice*)
JIngram@mintz.com
919 Third Avenue
New York, New York 10022
Telephone:    212.935.3000
Facsimile:    212.983.3115

*Attorneys for Defendant John P. Flynn*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Dmitry Cherches; Irene Zvagelsky; and Hideyoshi Delgado; Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br> v. <br><br> AMMO, Inc.; Fred W. Wagenhals; Christopher D. Larson; Jared R. Smith; Robert D. Wiley; and John P. Flynn, <br><br> Defendants. | Case No: CV-24-02619-PHX-DJH <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF DEFENDANT JOHN P. FLYNN'S MOTION TO DISMISS THE AMENDED COMPLAINT** <br><br> **(Oral Argument Requested)** |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT.........................................................................................1

ARGUMENT ...................................................................................................................2

I.   PLAINTIFFS FAIL TO PLEAD AN ACTIONABLE MISSTATEMENT BY FLYNN CONCERNING THE CONSTRUCTION COST. ...................................2

    A.   Judicial Notice of Ammo's SEC Filings Is Proper and Dispositive..............2

    B.   The Complaint Fails to Plead an Actionable Omission by Flynn. ...............4

II.  PLAINTIFFS FAIL TO PLEAD AN ACTIONABLE MISSTATEMENT BY FLYNN CONCERNING AMMO'S PRODUCTION CAPACITY. ........................5

    A.   PSLRA's Safe Harbor Protects Flynn's Forward-Looking Statement. .........5

    B.   Flynn Had No Duty to Disclose Production Constraints..............................6

III. PLAINTIFFS FAIL TO PLEAD AN ACTIONABLE MISSTATEMENT BASED ON FLYNN'S USE OF THE TERM "WORLD CLASS" .......................7

IV.  FLYNN'S ALLEGED MISREPRESENTATIONS WERE NOT MATERIAL......7

V.   PLAINTIFFS FAIL TO PLEAD SCIENTER. ........................................................8

VI.  PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION. .......................................10

VII. PLAINTIFFS FAIL TO ESTABLISH SCHEME LIABILITY. ...........................11

CONCLUSION ..............................................................................................................11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baird v. BlackRock Institutional Trust Co.*, 403 F. Supp. 3d 765 (N.D. Cal. 2019) ...........3

*Brookman v. Webtoon Entertainment Inc.*, 2025 WL 3484589
   (C.D. Cal. Dec. 2, 2025) .......................................................................................7

*Brooks v. Y.Y.G.M. SA*, 2021 U.S. Dist. LEXIS 225412 (E.D. Cal. Nov. 22, 2021)...........3

*Cutler v. Kirchner*, 696 F. App'x 809 (9th Cir. 2017).......................................................6

*Esfandiari v. Edgio Inc.*, 2025 WL 2444072 (D. Ariz. Aug. 25, 2025) .............................7

*Green v. Maison Solutions Inc.*, 2025 WL 2817550 (C.D. Cal. Sept. 30, 2025)............. 4-5

*Hershewe v. Joyy, Inc.*, 2023 U.S. App. LEXIS 11336 (9th Cir. May 9, 2023).................4

*In re Cutera, Inc. Litig.*, 2025 U.S. Dist. LEXIS 193930 (N.D. Cal. Sept. 30, 2025).........3

*In re Facebook, Inc. Secs. Litig.*, 87 F.4th 934 (9th Cir. 2023) ....................................7, 8

*In re Genius Brands Int'l, Inc. Sec. Litig.*, 2021 U.S. Dist. LEXIS 274088
   (C.D. Cal. Aug. 30, 2021)....................................................................................11

*Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397
   (9th Cir. 2021) .....................................................................................................10

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 403 F.3d 1050 (9th Cir. 2005)...........8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) .................................10

*Wochos v. Tesla, Inc.*, 2018 U.S. Dist. LEXIS 145696 (N.D. Cal. Aug. 27, 2018) ........3, 6

**Statutes and Rules**

15 U.S.C. § 78j(b) ....................................................................................... 1, 2, 5

15 U.S.C. § 78u-5(i)(1) .......................................................................................5

17 C.F.R. § 240.3b-7.............................................................................................9

17 C.F.R. § 240.10b-5.................................................................................1, 2, 5, 11

**Other Authorities**

SEC Staff Accounting Bulletin No. 99, 64 Fed. Reg. 45, 1999 WL 1123073 (1999)..... 7-8

**PRELIMINARY STATEMENT**

Flynn has no place in this lawsuit because Flynn's challenged statement is not false or misleading; it was accurate and forward-looking.  Tacitly recognizing that their claims cannot survive dismissal, Plaintiffs resort to relying on scant and conclusory allegations, mischaracterizing the factual allegations, and refusing to acknowledge the public disclosures that are dispositive of those claims against Flynn.  Plaintiffs' tactics are in vain and fail to cure the fatal deficiencies in the claims against Flynn.[1]

Plaintiffs cannot point to a false or misleading statement by Flynn.  With respect to the Manitowoc facility's construction costs, Plaintiffs urge this Court to ignore four publicly filed SEC disclosures that establish that Ammo informed investors of the actual construction expenditures and evolving project budget throughout the construction process and well before Flynn stated that the facility was completed "within budget."  Plaintiffs offer no legitimate basis for excluding these documents and no meaningful response to the fact that Flynn's statement was consistent with Ammo's public disclosures.  Their theory that Flynn's alleged failure to disclose a related-party contractor rendered the statement misleading fares no better.  The Complaint lacks a single factual allegation that Larson Building actually inflated costs or the use of a related party made Flynn's "within budget" statement false.

Plaintiffs do not establish that Flynn's statement concerning Ammo's plan to increase production is actionable.  Flynn's statement regarding Ammo's "***plan*** to elevate loaded ammunition moving out of the…shipping docks…to 1 billion" rounds (Compl. ¶ 106) is a textbook forward-looking statement protected by the PSLRA's safe harbor.  Plaintiffs' argument that the statement "had both present and future components" rendering it unprotected and actionable is dead wrong because any present statement was *accurate*.

Beyond falsity, Plaintiffs fail to establish the remaining elements of their § 10(b) and Rule 10b-5(b) claim against Flynn.  Their materiality argument collapses in light of Ammo's

---

[1]    The defined terms set forth in Flynn's moving memorandum of points and authorities ("Br.") have the same meanings herein.  Flynn joins and adopts the legal arguments set forth in the reply memoranda filed by each of the other defendants.

public SEC disclosures, which kept investors apprised of construction costs and the evolving budget throughout the project, and Ammo's disclosure of production constraints on the very same earnings call in which Flynn's statement was made.  Regarding scienter, Plaintiffs do not allege facts that give rise to a strong inference that Flynn acted with the requisite fraudulent intent or deliberate recklessness.  Plaintiffs offer nothing beyond generalized allegations of Flynn's purported managerial involvement.  Plaintiffs concede that they allege no motive or insider trading.  On loss causation, Plaintiffs do not even mention Flynn, much less connect any alleged loss to his statement.

Finally, Plaintiffs' scheme liability claim—premised solely upon the conduct of third parties and not any deceptive conduct by Flynn himself—falls woefully far short of stating a viable claim for violation of § 10(b) and Rule 10b-5(a) and (c).

## ARGUMENT

### I.    PLAINTIFFS FAIL TO PLEAD AN ACTIONABLE MISSTATEMENT BY FLYNN CONCERNING THE CONSTRUCTION COST.

#### A.    Judicial Notice of Ammo's SEC Filings Is Proper and Dispositive.

Plaintiffs object to the Court taking judicial notice of the disclosures made by Ammo in three Forms 10-Q and a 10-K filed with the SEC ("SEC Disclosures") and urge the Court to *ignore* these dispositive documents.  Opp. 25.  The SEC Disclosures establish that Ammo informed investors:  (1) of the *actual* costs and expenditures Ammo incurred to construct the Manitowoc facility, and (2) that the final cost of construction was $26 million, thus exceeding the $12 million estimated budget in Ammo's January 2021 press release.  Br. 5-6, Exs. 2-5.  Plaintiffs do not dispute the accuracy of the SEC Disclosures, which updated investors throughout the construction process on the capital expenditures and total construction costs.  Plaintiffs do not dispute that the SEC Disclosures informed investors of these facts well ***before*** Flynn stated that construction was completed "within budget."  The truth or falsity of Flynn's statement as to the "budget" must by assessed against these SEC Disclosures.

Plaintiffs' reason for attempting to hide the SEC Disclosures is obvious:  Plaintiffs cannot reconcile their conclusory allegation that Flynn's "within budget" statement was false

or misleading with the SEC Disclosures that indisputably establish that Flynn's challenged statement was entirely consistent with the cost information Ammo publicly disclosed to investors. Opp. 24-25. Plaintiffs' tactic finds no support in law and should be rejected. *See In re Cutera, Inc. Litig.*, 2025 U.S. Dist. LEXIS 193930, at *6-7 (N.D. Cal. Sept. 30, 2025) (taking judicial notice of 26 documents and explaining that "[i]t is routine for a court to take judicial notice of SEC filings, press releases, and transcripts of calls with analysts and investors for the purpose of determining what information was available to the market").[2]

*Wochos v. Tesla, Inc.*, 2018 U.S. Dist. LEXIS 145696 (N.D. Cal. Aug. 27, 2018), is on point. Plaintiffs alleged that Tesla made materially false and misleading statements about its production capabilities. *Id.* at *2-3. Against plaintiffs' objection, the court took judicial notice of Tesla's SEC filings "for the sole purpose of determining what representations Tesla made to the market." *Id.* at *6. Based on those judicially noticed filings, the court concluded that plaintiffs failed to allege a false or misleading statement by Tesla because, *inter alia*, the challenged statements were consistent with Tesla's public disclosures. *Id.* at *16-17. The same reasoning applies here. *Compare Baird v. BlackRock Institutional Trust Co.*, 403 F. Supp. 3d 765, 776 (N.D. Cal. 2019) (Opp. 25) (declining to take judicial notice of SEC filings where the defendants, unlike Flynn here, "request[ed] that the Court consider the documents for the truth of the information contained in them to rebut Plaintiff's allegations").[3]

Plaintiffs attempt to reframe Flynn's request that the Court take judicial notice of the SEC Disclosures by arguing that Flynn improperly asks the Court to "assum[e] the truth of

---

[2]     Plaintiffs request this Court to take judicial notice of a complaint filed by the SEC in a separate civil action, thereby conceding that judicial notice of SEC-related materials is proper. Opp. 3 nn.2-3. However, it is not proper to take judicial notice of the SEC's complaint because "it is well settled that allegations in pleadings are not evidence." *Brooks v. Y.Y.G.M. SA*, 2021 U.S. Dist. LEXIS 225412, at *2-4 (E.D. Cal. Nov. 22, 2021) (taking judicial notice only "of the fact that Defendant filed a complaint" but *not* "of any allegations contained within the complaint for the truth of the facts asserted").

[3]     The Court can consider Ammo's June 2022 10-K (Ex. 5) also because Plaintiffs incorporated it by reference into the Complaint. Compl. ¶¶ 89-98. Based on that disclosure alone, investors knew months before Flynn's challenged statement that the cost of the Manitowoc facility had increased to $26 million.

his statement regarding the budget, despite well-pled allegations in the Complaint demonstrating why Flynn's statement was false." Opp. 24. This argument misses the mark. Plaintiffs' allegations are not "well-pled" but instead consist of a baseless, conclusory allegation that Flynn's November 2022 "within budget" statement referred to the January 2021 press release of a "$12 million" estimate (Compl. ¶¶ 32, 107), and not the June 2022 10-K's disclosure of a $26 million cost. Flynn does not ask the Court to "assume" anything. Flynn simply asks the Court to evaluate his challenged statement in light of the SEC Disclosures with which his statement is consistent. Br. 5-6. Plaintiffs' contrary conclusion lacks credibility and defies common sense. The Court need not credit a conclusory allegation that is contradicted by materials properly subject to judicial notice, like the SEC Disclosures. *See Hershewe v. Joyy, Inc.*, 2023 U.S. App. LEXIS 11336, at *2 (9th Cir. May 9, 2023) ("The court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.") (dismissing securities fraud claim).

**B.     The Complaint Fails to Plead an Actionable Omission by Flynn.**

Plaintiffs allege that Flynn's "within budget" statement was misleading because it failed to disclose that construction costs were "inflated." Compl. ¶ 107. Flynn demonstrated that this conclusory allegation does not plead an actionable omission because the Complaint alleges no facts to establish that construction costs were inflated, Larson Building inflated costs, or costs were inflated because the contractor was a related party. Br. 9. Plaintiffs' Opposition does nothing to cure these fatal defects. Opp. 32. Plaintiffs do not, and cannot, point to any allegation that Ammo paid Larson Building above-market rates, costs were inflated relative to industry standards, or the project would have been completed by another contractor for less.

Instead, Plaintiffs baldly proclaim that "[t]he fact that an undisclosed related-party transaction gave rise to such a huge expense is sufficient to survive a motion to dismiss." Opp. 32, citing *Green v. Maison Solutions Inc.*, 2025 WL 2817550 (C.D. Cal. Sept. 30, 2025). Plaintiffs' proclamation is not supported by *Green*, has no basis in law, and should be rejected. In *Green*, plaintiff sued a retailer for failing to disclose significant related-party transactions

in its registration statements.  The court found that plaintiff sufficiently alleged that the registration statements had misled investors by disclosing only a partial list of related-party transactions that omitted the significant related-party transactions at issue but ultimately dismissed plaintiff's §10(b) claim for failing to plead scienter and loss causation.  *Id.* at \*9-10.  *Green* lends no support to Plaintiffs because, unlike a registration statement that requires disclosure of related party transactions, Flynn's statement was not directed to related party transactions but simply noted that the project was completed "within budget."

## II.    PLAINTIFFS FAIL TO PLEAD AN ACTIONABLE MISSTATEMENT BY FLYNN CONCERNING AMMO'S PRODUCTION CAPACITY.

Flynn's statement that the facility allows Ammo to "strategically and incrementally increase production with the ***plan*** to elevate loaded ammunition moving out of…shipping docks" to 1 billion rounds is not an actionable misrepresentation as a matter of law.  Br. 7-8.

### A.    PSLRA's Safe Harbor Protects Flynn's Forward-Looking Statement.

Plaintiffs argue that Flynn's statement regarding AMMO's "plan" to increase production capacity is not protected by the PSLRA safe harbor because it allegedly "had both present and future components."  Opp. 30.  This argument fails.  As a threshold matter, Flynn's statement about AMMO's "plan" to increase production capacity is a textbook forward-looking statement entitled to safe harbor protection.  *See* 15 U.S.C. § 78u-5(i)(1) (covering statements of the "plans and objectives of management for future operations"); Br. 7-8.  Plaintiffs do not dispute that statements of "plans" fall within the statutory safe harbor.  Nor do they specifically identify any portion of Flynn's statement that misstates a present or past fact.  The only present-tense reference in Flynn's remarks is that the facility "now hous[es] equipment and machinery we have been acquiring over the past couple of years, all of which allows us to strategically and incrementally increase production."  Compl. ¶ 106.  Flynn made no statement regarding the present status of the equipment or machinery or that it was presently fully operational.  Rather, it is a straightforward statement about the existence of equipment and machinery at the facility and a forward-looking expression of Ammo's anticipated ability to scale production in the future.  The Complaint is devoid of any

allegations of fact rendering this statement false or misleading and Plaintiffs point to none.

To remove safe harbor protection from Flynn's forward-looking statement about Ammo's plans for production capacity, Plaintiffs must show that the statement goes "beyond" plans or objectives and contains an express or implied "concrete" assertion about a specific "current or past fact." *Wochos*, 985 F.3d at 1191. Flynn's statement does no such thing. Plaintiffs' reliance on *Cutler v. Kirchner*, 696 F. App'x 809, 814 (9th Cir. 2017) (Opp. 29-30) is grossly misplaced for this reason. In *Cutler*, the court found that statements made during an investor call were not forward-looking because each incorporated an opinion about then-existing capabilities that defendants knew to be false. *Id.* at 815. No analogous concrete statement is alleged here. Flynn's statement about a present circumstance described that "the facility now houses equipment and machinery" Ammo had been acquiring. Compl. ¶ 106. Nothing about that statement renders false or misleading his forward-looking statement about Ammo's plans for production capacity.

Flynn's forward-looking statement was accompanied by specific cautionary language at the beginning of the earnings call (Ex. 6), as required for safe harbor protection. Br. 8. Plaintiffs ignore this language that expressly cautioned against reliance upon about managements' forward-looking statements that "address Ammo's expectations for future performance or operational results." *Id.* at 2. Plaintiffs' misleading reference to "hypothetical boilerplate" cautionary language from "periodic filings" (Opp. 30) should be ignored.

**B.    Flynn Had No Duty to Disclose Production Constraints.**

Flynn demonstrated that Plaintiffs' allegations do not establish a duty by Flynn to disclose production constraints because this omission does not render anything about Flynn's statement misleading. Br. 9-10. Flynn's statement regarding Ammo's plan to strategically and incrementally increase production to 1 billion rounds was not a guaranty of such production or a commitment of when such plan would be implemented. Plaintiffs do not (and cannot) point to any factual allegation regarding how Flynn's omission misled investors as to Ammo's plan. Plaintiffs mischaracterize Flynn's argument as asserting that "Defendants were free to hide [production constraints] from investors." Opp. 31. Flynn does no such thing. As

Plaintiffs concede, "[d]uring the earnings call on the same day," Ammo "admitt[ed] a 21% decrease in net revenue attributed in large part to 'performance of our manufacturing operations' and offline production," and "attributed the 27% decrease in loaded ammunition sales…to production constraints at the new Manitowoc facility."  Compl. ¶¶ 100-01.  Thus, because investors were "aware of the allegedly concealed information," they were not misled by Flynn's statement.  *See In re Facebook, Inc. Secs. Litig.*, 87 F.4th 934, 948 (9th Cir. 2023).

## III.    PLAINTIFFS FAIL TO PLEAD AN ACTIONABLE MISSTATEMENT BASED ON FLYNN'S USE OF THE TERM "WORLD CLASS"

Having abandoned the theory that the facility was not "state of the art" (Br. 10-11; Compl. ¶ 107(c)), Plaintiffs attempt to twist puffery into an actionable misrepresentation by arguing that Flynn's use of the phrase "world class" was tied to a "false statement by Flynn and AMMO that the facility had opened on time and within budget" and was therefore part of a broader statement that makes "concrete representations about Ammo's financial position and the Manitowoc facility."  Opp. 35.  Neither the facts nor the law support Plaintiffs' attempt to shoehorn a puff statement of "world-class work our contractor and subs did" (Compl. ¶ 106) into such a concrete, actionable misrepresentation.[4]

## IV.    FLYNN'S ALLEGED MISREPRESENTATIONS WERE NOT MATERIAL.

Plaintiffs misplace reliance on SEC Staff Accounting Bulletin No. 99, 64 Fed. Reg. 45, 150, 1999 WL 1123073 (1999), to argue that Flynn's alleged misrepresentations were material.  Opp. 34.  The Bulletin concerns financial statements and has no bearing on whether Flynn's alleged misrepresentations were material.  Moreover, the SEC Staff expressly *rejected* the use of quantitative benchmarks—like the 5% presumption Plaintiffs invoke—as the appropriate measure of materiality, cautioning that "exclusive reliance on this or any

---

[4]    Plaintiffs' argument finds no support in *Esfandiari v. Edgio Inc.*, 2025 WL 2444072, at \*8 (D. Ariz. Aug. 25, 2025), where, unlike here, defendant's statements were indisputably related to the company's financials, "such as its reported revenue, gross profit, net loss, and net loss per share."  Opp. 35.  Contrary to Plaintiffs' contention (Opp. 35), this also sharply differs Flynn's statement from the statements in *Brookman v. Webtoon Entertainment Inc.*, 2025 WL 3484589 (C.D. Cal. Dec. 2, 2025), which involved false representations of quantifiable monthly active user levels.

percentage or numerical threshold has no basis in the accounting literature or the law." *Id.* Accordingly, the "relevant inquiry" remains whether Flynn's disclosure of the allegedly omitted information would have "*significantly* altered the 'total mix' of information" available to investors.  Br. 8-9.  It did not.

In light of Ammo's SEC Disclosures about its capital expenditures and evolving construction budget in the construction of the facility (*see* § I.A, *supra*), Flynn's failure to disclose that the actual (and previously disclosed) cost of the project exceeded the estimated budget set forth in an earlier press release cannot have altered the total mix of information available to investors.  The omitted information was available to investors.  The same is true of Flynn's failure to disclose production constraints, given that Ammo disclosed that very issue during the same earnings call.  *See* § II.B, *supra*.  Materiality cannot be shown where, as here, the omitted information was in the public domain.  *See Facebook*, 87 F.4th at 948.

Plaintiffs' citation to *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 403 F.3d 1050 (9th Cir. 2005), only underscores the weakness of their materiality argument.  Opp. 33.  There, the court found defendants' misstatement material where it "radically altered the picture" of the company's "overall economic health and viability" by causing investors to believe the company's net worth was approximately $24.2 million rather than negative $743,646. 403 F.3d at 1056.  By contrast, Flynn's "within budget" statement is not alleged to have impacted the overall picture of Ammo's economic viability, much less radically altered it.

## V.    PLAINTIFFS FAIL TO PLEAD SCIENTER.

Plaintiffs fail to rebut Flynn's showing that the Complaint is devoid of facts sufficient to give rise to a "*strong* inference" of scienter and falls woefully short of establishing that Flynn acted with intent to deceive or deliberate recklessness.  Br. 11-15; Opp. 35-56.  While devoting 21 pages including 13 footnotes to scienter, the Opposition barely focuses on Flynn.

First, Plaintiffs contend that "Defendants Admitted" they concealed material information thereby establishing that they were deliberately reckless.  Opp. 37-39, citing Compl. ¶¶ 150-52.  However, none of these purported admissions are alleged to have been made by Flynn.  Plaintiffs offer no basis for imputing to Flynn any purported admission

allegedly made by Smith in 2023 or Ammo in 2023 or 2025. Flynn is not alleged to have formally been employed by Ammo, but only to have "served as Vice President" through November 2022 and was an "independent contractor" in fiscal year 2023. Compl. ¶ 26.

Second, Plaintiffs argue that "Defendants had access to and actual knowledge of the concealed information" (Opp. 39-44), but do not point to specific facts actually alleged in the Complaint that may give rise to an inference that *Flynn* has such actual knowledge. Plaintiffs argue that Flynn had access to the allegedly omitted information because he was a "'Key Employee' in the leadup to the Merger agreement," he had a "leading role in negotiating the Merger," he "led the negotiation over the Manitowoc facility" and "regularly answered analyst questions regarding core business operations." Opp. 43 n.22, citing Compl. ¶¶ 165-68. These facts however are not alleged in the paragraphs Plaintiffs cite (or elsewhere in the Complaint). The Complaint alleges that Flynn was listed as a "Key Employee" in the 2021 merger agreement, which merely imputed Flynn's knowledge to Ammo, and not vice-versa. Compl. ¶ 165. The Complaint alleges that "Flynn personally *participated* in negotiations with Urvan and the Merger (Compl. ¶ 164), which is a far cry from "*leading*" merger negotiations. The Complaint alleges that "Flynn negotiated with the local government regarding the construction of the Manitowoc Facility" (Compl. ¶ 166), which does nothing to suggest that Flynn was involved in hiring Larson Building, budgeting the construction costs, managing equipment or machinery, or production. The Complaint's conclusory allegation that "Flynn answered analyst questions regarding Ammo's core business operations" (Compl. ¶ 165) is far too vague to create a strong inference of actual knowledge of any omitted information. Similarly, the allegation that Wiley stated that Flynn "heads [AMMO's] military sales" (Compl. ¶ 166) does not lead to the strong inference that Flynn had actual knowledge of omitted information.

Moreover, none of these alleged activities amount to controlling a business unit, making company-wide decisions, or performing a policy-making function, as is required to qualify as an officer under Rule 3b-7, 17 C.F.R. § 240.3b-7. Br. 13-14. Plaintiffs do not rebut the settled case law holding that generalized allegations of managerial status or hands-on involvement are patently insufficient to plead scienter. *See* Br. 12-13.

Third, Plaintiffs argue that the alleged misrepresentations involved Ammo's "core operations" which "bolsters scienter." Opp. 44-48. The only mention of Flynn in this argument is a passing reference to Flynn negotiating with the local government regarding the construction of the facility. Opp. 46. This scant allegation does not demonstrate Flynn's actual knowledge of omitted information or support a core operations inference of scienter.

Fourth, Plaintiffs argue that accounts of so-called confidential witnesses "bolster the inference of scienter." Opp. 48-53. But the Complaint does not allege that a single one of these witnesses has personal knowledge of facts that give rise to a strong inference of scienter by *Flynn*. Unsurprisingly, the Opposition cites no such allegations specific to *Flynn*.

Fifth, Plaintiffs make no attempt to point to factual allegations establishing that Flynn had a motive to defraud or rebut the case law cited by Flynn holding that, without allegations of "contemporaneous or unusual trading" or some other "plausible motive for the allegedly fraudulent action," there can be no finding of scienter. Br. 14; Opp. 54-56. The Opposition makes no mention of trading by Flynn whatsoever, thus abandoning that far-fetched theory.

Finally, the allegations fail to create a strong inference of scienter that is "at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). The readily apparent non-fraudulent inference is that Flynn stated that the facility was completed "within budget" based on Ammo's having recently disclosed its actual construction costs and updated $26 million budget estimate before the November 2022 earnings call. This is at least as compelling as any inference of fraud.

## VI.    PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION.

The claims against Flynn fail for the independent reason that the Complaint fails to plead loss causation as to Flynn. Br. 15-16. The Opposition does nothing to cure this fatal pleading defect. Plaintiffs do not dispute that, to plead loss causation, a plaintiff must connect the alleged misstatement to a corrective disclosure that revealed its falsity and thereby caused economic loss. *See, e.g.*, *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 407 (9th Cir. 2021). Plaintiffs go to great lengths to catalogue each alleged corrective disclosure that purportedly revealed the specific alleged misstatements. Opp. 57-58. Yet,

when it comes to Flynn, the Opposition is silent.  Plaintiffs do not and cannot identify a single corrective disclosure that purports to reveal the alleged falsity of Flynn's statement regarding the facility being "within budget" or Ammo's "plan" to increase production.  Plaintiffs do not even attempt to connect Flynn's statement to any resulting economic loss.  Indeed, the Opposition's loss causation argument never even mentions Flynn.  Opp. 56-61.  That silence is not an oversight but dispositive of the nonviability of the claims against Flynn.

**VII.    PLAINTIFFS FAIL TO ESTABLISH SCHEME LIABILITY.**

Plaintiffs' Opposition does nothing to save their scheme liability claim against Flynn.  Br. 16-17; Opp. 61-65.  The Complaint does not allege any actionable deceptive conduct by Flynn and Plaintiffs cite to none.

Plaintiffs try to cobble together a scheme liability theory from allegations having nothing to do with Flynn's own conduct.  Opp. 63.  They point to a confidential witness who allegedly heard Urvan refer to Flynn and others as a "criminal triumvirate" (Compl. ¶ 40) and who allegedly looked for Larson in a hotel room "at Flynn's request" and found Larson intoxicated.  Compl. ¶ 41.  Neither allegation comes close to pleading with particularity that *Flynn himself* committed a deceptive act in furtherance of the alleged scheme.  Name-calling by a third party is not a deceptive act by Flynn.  Nor is asking someone to check on a colleague a deceptive act by Flynn.  Plaintiffs cite no authority to the contrary because none exists.

The only conduct by Flynn that Plaintiffs rely upon to support their scheme liability claim is the allegation that Flynn made "oral statements to conceal related-party dealings with Larson Building in investor calls."  Opp. 63-54, citing Compl. ¶¶ 106-07.  However, scheme liability under Rules 10b-5(a) and (c) "cannot be based solely on false or misleading statements but *must instead involve deceptive conduct beyond* those misrepresentations or omissions."  *In re Genius Brands Int'l, Inc. Sec. Litig.*, 2021 U.S. Dist. LEXIS 274088, at *37 (C.D. Cal. Aug. 30, 2021).  None is alleged and the scheme liability claim should be dismissed.

**CONCLUSION**

For all of the foregoing reasons, Flynn respectfully requests the Court to dismiss the amended complaint as against Flynn with prejudice.

Dated:  March 5, 2026

**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.**

By: /s/ Therese M. Doherty
Therese M. Doherty (*pro hac vice*)
LisaMarie Collins (*pro hac vice*)
James A. Ingram (*pro hac vice*)
919 Third Avenue
New York, NY  10022
Tel:  212.935.3000

*Attorneys for Defendant John P. Flynn*

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2026, a true and correct copy of the foregoing document was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

**KELLER ROHRBACK LLP**
Gary A. Gotto
3101 North Central Ave., Ste. 1400
Phoenix, AZ 85012-2600
Tel: 602.230.6322
ggotto@kellerrohrback.com

*Liaison Counsel for Plaintiffs*

**POMERANTZ LLP**
Joshua B. Silverman (*pro hac vice*)
Brian P. O'Connell (*pro hac vice*)
Jianan Jiang (*pro hac vice*)
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Tel: 312.377.1181
jbsilverman@pomlaw.com
boconnell@pomlaw.com
ajiang@pomlaw.com

*Co-Lead Counsel for Plaintiffs*

**BRONSTEIN GEWITZ & GROSSMAN LLC**
Peretz Bronstein (*pro hac vice*)
Michael Boyle (*pro hac vice*)
60 East 42nd St., Ste. 4600
New York, NY 10165
Tel: 212.697.6484
peretz@bgandg.com
mboyle@bgandg.com

*Co-Lead Counsel for Plaintiffs*

**BALLARD SPAHR LLP**
Brian Schulman
1 E Washington St., Ste. 2300
Phoenix, AZ 85004-2555
(602) 798-5419
SchulmanB@ballardspahr.com

M. Norman Goldberger (*pro hac vice*)
William B. Igoe (*pro hac vice*)
1735 Market St., 51st Floor
Philadelphia, PA 19103
Telephone: 215-864-8850
Email: goldbergerm@ballardspahr.com
Email: igoew@ballardspahr.com

*Attorneys for Defendants AMMO, Inc. and Jared R. Smith*

**DLA PIPER LLP (US)**
Kyle Orne
kyle.orne@us.dlapiper.com
2525 East Camelback Road Suite 1000
Phoenix, Arizona 85016
Tel: 480.606.5100

Jason S. Lewis (*pro hac vice forthcoming*)
jason.lewis@us.dlapiper.com
Jason M. Hopkins (*pro hac vice forthcoming*)
jason.hopkins@us.dlapiper.com
1900 North Pearl Street, Suite 2200
Dallas, Texas 75201
Tel: 214.743.4546

*Attorneys for Defendant Chris Larson*

**SALLAH ASTARITA & COX LLC**
  James D Sallah (*pro hac vice*)
  Jeffrey L Cox (*pro hac vice*)
  3010 N Military Trail, Ste. 210
  Boca Raton,FL 33431
  (561) 989-9080
  jds@sallahlaw.com
  jlc@sallahlaw.com

  *Attorneys for Defendant Fred W.*
  *Wagenhals*

**NORTON ROSE FULBRIGHT US LLP**
  Laura Perlov (*pro hac vice*)
  Laura.perlov@nortonrosefulbright.com
  Tel: (303) 801-2682
  K. Austin Hartley (*pro hac vice*)
  Austin.hartley@nortonrosefulbright.com
  1225 Seventeenth Street, Suite 3050,
  Denver, Colorado 80202

  Andrey Spektor (*pro hac vice*)
  Andrey.Spektor@nortonrosefulbright.com
  Tel: (212) 318-3130
  Maryclaire Kennedy (*pro hac vice*)
  Maryclaire.Kennedy@nortonrosefulbright.com
  1301 Avenue of the Americas
  New York, New York 10019

  *Attorneys for Defendant Robert D. Wiley*


  /s/ *Therese M. Doherty*